UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

HOWARD NORTON,

**MEMORANDUM & ORDER**

**04-cv-3079 (NGG) (WDW)**

Plaintiff,

-against-

TOWN OF ISLIP, et al.,

Defendants.
----------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

In a previous case before this court, Plaintiff Howard Norton ("Plaintiff" or "Norton")

successfully sued the Town of Islip (the "Town") and Town officials Thomas Isles and Carl P.

Maltese for violating his procedural due process rights when they revoked his right to maintain a

legal nonconforming use of his property. See Norton v. Town of Islip, 239 F. Supp. 2d 264

(E.D.N.Y. 2003) ("Norton I"). The Town's actions culminated in an enforcement proceeding

against Norton in the Fifth District Court for the County of Suffolk (the "Suffolk District

Court"), charging that his use of the property was unauthorized (the "Criminal Action"). The

Criminal Action was ultimately dismissed following this court's decision in Norton I.[1]  In this

case, Norton raises new claims related to the Criminal Action for malicious prosecution and

malicious abuse of process under 42 U.S.C. § 1983 against the Town, Town officials Vincent J.

Messina, Richard Hoffman, Richard C. Sherman, Joanne Huml, J. Timothy Shea, Jr., Ronald P.

---

[1] The Criminal Action was repeatedly adjourned on consent during the simultaneous litigation of Norton's civil rights claims in Norton I.  See Norton I, 239 F. Supp. 2d at 275.  Norton I was litigated for five years in this court before the Town invoked Younger v. Harris, 401 U.S. 37 (1971), in opposition to Norton's motion for summary judgment.  The court declined to abstain, finding that the Town had willingly submitted to a federal forum by delaying the Criminal Action for five years "with the apparent intention of allowing this court to first rule on Plaintiff's constitutional claims."  Norton I, 239 F. Supp. 2d at 275-76 (adding that "[t]his eleventh-hour request strikes the court as a dilatory tactic intended to further prolong a course of litigation that has needlessly consumed a vast amount of resources.").

Stabile, Jr., and Carl Maltese (the "Individual Defendants," together with the Town, the "Town Defendants"), and the County of Suffolk (the "County") (collectively, "Defendants").

Defendants have moved for summary judgment. (See Docket Entry # 101, County Mot.; Docket Entry # 95, Town Mot.; Docket Entry # 96, Indiv. Def. Mot.). For the reasons set forth below, the Motions of the Town and Individual Defendants are GRANTED in part and DENIED in part. The County's Motion is DENIED.

## I.     Background

The parties have not yet conducted discovery in this case. The parties do not dispute, however, the underlying facts set forth in Norton I. Plaintiff owns a house located at 725 Ferndale Boulevard (the "Premises") in Central Islip which was converted by previous owners into a two-family dwelling in 1933. Norton I, 239 F. Supp. 2d at 266. At the time of the conversion, the two-family use was maintainable as a matter of right under the laws of the Town of Islip (the "Town"). Sometime after 1933, the Town adopted a zoning ordinance providing that the area encompassing the Premises would be restricted to single-family detached dwellings. Id. The Town also issued a letter on April 27, 1965, however, recognizing the two-family dwelling located at the Premises as a legal nonconforming use. Id. On November 21, 1986, Plaintiff purchased the Premises in reliance upon a certificate of occupancy ("C/O") in the Town's records that certified the Premises as a legal nonconforming two-family dwelling. Id. After Plaintiff's purchase, a Town official advised him that he needed to obtain a rental permit in order to rent the Premises. Id. On March 23, 1988, Plaintiff submitted an application to the Town for a rental permit. On April 13, 1988, the Town issued a new C/O certifying the Premises' status as a legal nonconforming two-family dwelling. Id. The Town denied the application for a rental permit and also sent a brief letter dated May 14, 1988 to Plaintiff

informing him that the Town "had studied your file and has determined that you must go before the Board of Appeals, with regard to your non-conforming use." Id. at 266-67. Following the issuance of that letter, the Town again issued at Plaintiff's request two C/O's on May 23, 1988 and October 28, 1988, certifying the Premises as a legal nonconforming two-family dwelling. Id. at 267.

In September 1988, Norton commenced an Article 78 proceeding to compel the Town to issue a rental permit for the Premises. Id. The Town defended its denial of the rental permit on the grounds that the Premises had forfeited its nonconforming status after a fire damaged the home in 1984, prompting the previous owners to leave it vacant for over a year. Id. (citing Town Code § 68-15 ("Discontinuance of any non-conforming use for a period one (1) year or more terminates such nonconforming use . . . .")). However, the Town also acknowledged that it had never officially revoked the nonconforming use of the Premises, a determination still left to the Town Zoning Board of Appeals. Id. The New York Supreme Court denied Plaintiff's Article 78 petition to compel the Town to issue a rental permit, but offered no opinion as to the status of the Premises' legal nonconforming use. Id.

The Town never undertook further steps to discontinue the nonconforming status of the Premises, and no party initiated a proceeding before the Town Zoning Board of Appeals. Id. In 1990, the Town again issued, at Plaintiff's request, a C/O certifying the Premises established status as a legal conforming two-family dwelling (the "1990 C/O"). Id.

On March 20, 1997, the Town Attorney's Office commenced the Criminal Action against Plaintiff by issuing an accusatory instrument (the "Accusatory Instrument") charging Plaintiff with violating Section 68-40 of the Town Code for allegedly using the Premises as a two-family dwelling in violation of the "last issued" C/O for the building. (See Accusatory Instrument dated

March 20, 1997, Docket Entry # 93, Town Defendants' Joint Appendix ("JA") 112.) The

Accusatory Instrument did not specify or attach the C/O to which it referred. (Docket Entry # 5,

Am. Compl. ¶¶ 30-31.) On April 17, 1997, the Fifth District Court for the County of Suffolk

(the "Suffolk District Court") issued a criminal summons to Plaintiff on the basis of these

charges. (Suffolk District Court Summons, dated April 17, 1997, JA 113.) The Accusatory

Instrument threatened penalties of a fine up to $1,000 and up to fifteen days imprisonment.

(Accusatory Instrument, JA 112.) Plaintiff appeared, and following arraignment, he was released

on his own recognizance pending trial. (Am. Compl. ¶ 33.) In support of the criminal

allegations, Defendant Joanne Huml, Assistant Town Attorney, faxed an unsigned and undated

document purporting to be the "last issued" C/O for the Premises to Plaintiff's counsel on

September 12, 1997 (the "File Copy C/O"). (Id. ¶ 77; Facsimile Cover Sheet and File Copy

C/O, JA 114-115.) The File Copy C/O was stamped "DEPT. COPY" contained additional

notations (the "Revoking Notations") not found in the 1990 C/O that stated, in pertinent part:

> *Fire to Structure 26 Mar 84 Premises Vacated Repaired Fr Damage
> Permit Required Prior to Reoccupancy
>
> *Rental permit for two-family DENIED 23 Mar 88  Non-conforming
> use of two-family lost due to non-use in excess of one consecutive
> year and failure to apply for repair permits.  Denial sustained by SCS
> court 27 Feb 89.  Withdrawal from Court of Appeals 23 Mar 90.

(Id.) Discovery in Norton I revealed that Rim Giedraitis, the former Commissioner of the Town

Department of Building and Engineering, added these notations to the C/O in the Town's files

sometime in 1990. (Town Def. 56.1 Statement & Pl. Response ¶¶ 2, 3; Giedraitis Dep., JA 275,

288-89.) The Revoking Notations were based upon his review of the prior Article 78 proceeding

which upheld the Town's denial of a rental permit to Plaintiff. (Id.)  Plaintiff was never notified

of the Revoking Notations prior to the commencement of the Criminal Action. See Norton I, 239 F. Supp. 2d at 278.

Plaintiff moved to dismiss the Criminal Action on or about October 8, 1997, on the ground that the operative "last issued" C/O was the 1990 C/O, which expressly certified the Premises as a legal nonconforming dwelling and permitted its use as a two-family home. (See Declaration of Erin A. Sidaris in Support of Town Motion for Summary Judgment, dated Oct. 26, 2007 ("Sidaris Decl."), Ex. C., Motion to Dismiss Accusatory Instrument ("Suffolk Motion to Dismiss") and Affidavit of Howard Norton in Support, dated Oct. 8, 1997 ("First Norton Aff.")) Citing the 1990 C/O, Plaintiff contended that his use of the Premises as a two-family dwelling could not constitute a violation of the Town Code. (First Norton Aff. ¶¶ 11-13.) In response, the Town produced a new "last issued" C/O signed and dated October 21, 1997 (the "1997 C/O") by Carl Maltese, the Director of the Building Department of the Town of Islip. (Sidaris Decl. Ex. C., Affirmation of Richard C. Sherman in Opposition to Norton's Suffolk Motion to Dismiss, dated Oct. 27, 1997 ("Sherman Aff."), ¶¶ 5-6 & Ex. A.) The 1997 C/O featured the Revoking Notations first seen on the File Copy C/O. (Id.; see also Am. Compl. ¶ 36.)

While contesting the Criminal Action, Plaintiff filed Norton I, a Section 1983 action in this court seeking, inter alia, to vindicate his right to procedural due process and to obtain a declaratory judgment that the 1990 C/O was the last valid C/O for the Premises. (Id. ¶ 40.) Plaintiff asserted claims for money damages as well, but they were eventually withdrawn. (Town Def. 56.1 Statement & Pl. Response, ¶ 14.) During the pendency of Norton I, Plaintiff requested and obtained approximately 30 consent adjournments to defer the criminal proceeding in Suffolk District Court. (Am. Compl. ¶ 43.)

On January 2, 2003, I issued a judgment for Plaintiff holding that the Town had denied his rights to procedural due process when it issued the revised 1997 C/O for the Premises without providing Plaintiff any notice or an opportunity to be heard. Norton I, 239 F. Supp. 2d at 274 & n.6. I also granted Plaintiff's application for a declaratory judgment recognizing the 1990 C/O as the last validly issued C/O for the Premises, and ordered that the Premises would retain its status as a legal nonconforming use, until the Town revoked that status in a manner conforming with the requirements of due process. Id. at 276.

After my ruling in Norton I, Plaintiff requested that the Town withdraw the Criminal Action against him. The Town declined and instead sought to stay the Criminal Action on the grounds that the Town was appealing the decision in Norton I. (Sidaris Decl. Ex. K, Declaration of Timothy J. Shea, dated March 20, 2003 ("Shea Decl."), ¶¶ 5-8, 12-13.) Norton moved to dismiss. (Sidaris Decl. Ex. K, Motion to Dismiss the Accusatory Instrument, dated February 10, 2003.) On April 23, 2003, the Suffolk District Court dismissed the Criminal Action because the due process violation established in Norton I constituted a "legal impediment to conviction of the defendant for the offense charged," and because the Town had failed to put forth either "a legal or a factual predicate" to support the prosecution. (Sidaris Decl. Ex. K, Suffolk District Court Order (Toomey, J.).) The court rejected the Town's request to stay the Criminal Action as an alternative to dismissal, finding that "no statutory or case law authority has been proffered upon which this court could impose such a stay." (Id.) The Town's appeal of the federal civil rights action was ultimately unsuccessful, and the Town's petition for certiorari to the United States Supreme Court was denied. See Norton v. Town of Islip, No. 03-7066, 2003 WL 22318570 (2d Cir. Oct. 9, 2003), cert. denied, 124 S. Ct. 2838 (2004).

## II.        Standard of Review

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment.  See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The substantive law governing the case will identify those facts that are material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-252.  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.  "Therefore, summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." Lucente v. Int'l Bus. Machines Corp., 310 F.3d 243, 254 (2d Cir. 2002) (citation omitted).

In ruling on a motion for summary judgment, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments . . . ." Weyant v. Okst, 101 F.3d 845, 854 (2d Cir. 1996) (citations omitted).  As such, the non-movant "will have [his or her] allegations taken as true, and will receive the benefit of the doubt when [his or her] assertions conflict with those of the movant." Samuels v. Mockry, 77 F.3d 34, 35 (2d Cir. 1996) (internal quotation marks and citation omitted).

### III. Claims in the Current Action

Plaintiff's current action alleges malicious prosecution and malicious abuse of process in violation of 42 U.S.C. § 1983 and New York law. (Am. Compl. ¶ 1.)[2] These causes of action primarily concern the commencement of the Criminal Action and its maintenance despite the litigation and ultimate outcome in <u>Norton I</u>. Norton claims that "[i]n order to pursue its single-minded policy of eliminating non-conforming uses in the Town of Islip, the Town and its officials consciously and with malice commenced a criminal prosecution without probable cause, and manufactured false evidence of the revocation of a Certificate of Occupancy, on specious grounds." (<u>Id</u>. ¶ 2.) Plaintiff also seeks attorney's fees pursuant to 42 U.S.C. § 1988 and a declaratory judgment vindicating his claims.

The elements of a Section 1983 action are borrowed from analogous state law. <u>See</u> <u>Cook v. Sheldon</u>, 41 F.3d 73, 79 (2d Cir. 1994). To prevail on a malicious prosecution claim under § 1983, a plaintiff must show a deprivation of his liberty under the Fourth Amendment, such as detention following arraignment, and establish the elements of a state law malicious prosecution claim. <u>Fulton v. Robinson</u>, 289 F.3d 188, 195 (2d Cir. 2002); <u>Rohman v. New York City Transit Auth.</u>, 215 F.3d 208, 215 (2d Cir. 2000) (requiring "a sufficient post-arraignment liberty restraint to implicate plaintiff's Fourth Amendment rights"); <u>Murphy v. Lynn</u>, 118 F.3d 938, 944 (2d Cir. 1997). Under New York law, a plaintiff must demonstrate: "(1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice." <u>Kinzer v. Jackson</u>, 289 F.3d 188, 143 (2d Cir. 2003).

---

[2] Plaintiff's Complaint also asserts "violation of his right to be free from prosecution based on fabricated evidence," but Plaintiff has since clarified that this allegation is subsumed within his claim for malicious prosecution. (Docket Entry # 98, Pl. Opp. 20.)

Plaintiff's malicious prosecution claim alleges that the criminal proceeding against him was commenced and maintained in the absence of probable cause because the 1997 C/O he purportedly violated was invalid.  (Id. ¶¶ 126-134.)  Plaintiff contends that Defendants issued the 1997 C/O to maliciously "manufacture[] false evidence" once "[c]onfronted with the lack of a validly issued C/O to support the [criminal] allegations."  (Id. ¶¶ 82-89.)  Further, he states that "malicious and improper motives" drove Defendants to maintain the criminal proceeding for "nearly four months" after this court's Norton I decision invalidated the 1997 C/O on which the prosecution relied.  (Id. ¶ 136.)   These events restrained Plaintiff's liberty because Section 510.40 of the New York Criminal Procedure Law required him to "render himself at all times amenable to the orders and processes of the court" once the Criminal Action was commenced. See Rohman, 215 F.3d at 215-16 (determining this same allegation sufficient to state a claim where defendant was required to return to court on "at least five occasions"); (Docket Entry # 97, Affidavit of Howard Norton in Opp. to Mot. Summ. J., dated Feb. 27, 2008 ("Second Norton Aff."), ¶ 2 (noting that he was required to return to Suffolk District Court on "four or five occasions")).

Plaintiff argues that these facts also give rise to a malicious abuse of process claim. Malicious abuse of criminal process is actionable under Section 1983 where the elements under New York law are met.  Savino v. City of New York, 331 F.3d 63, 76-77 (2d Cir. 2003).  New York law dictates that "a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process."  Id. at 76.

Plaintiff alleges two theories of ulterior motives for the Criminal Action "outside the legitimate ends of process." (Am. Compl. ¶ 146.) First, he claims that "Defendants' motives in commencing the criminal proceeding against [him] were improper in that Defendants sought to have the criminal court assist in the Town's unlawful deprivation of the Plaintiff's property right without due process of law." (Id. ¶ 150.) Second, Plaintiff claims that Defendants sought "to provoke Plaintiff, through settlement of the criminal prosecution, to submit to a de novo review before the Town of Islip Zoning Board of Appeals to 're-establish' the non-conforming use of Plaintiff's Premises" in order "to shift to Plaintiff the burden of proving . . . the legitimacy of his Premises' non-conforming status, rather than allowing the burden to remain on the Town." (Id. ¶¶ 150-51.) Plaintiff asserts that this abuse of process violated his constitutional rights, including his rights to be free from unreasonable search and seizure, criminal prosecution without probable cause, or criminal prosecution based upon falsified evidence, unreasonable interference with his right to travel, and unreasonable interference with his right to privacy. (Id. ¶ 148; see also Pl. Opp. 25 n.4.)

Defendants move for summary judgment, arguing: (1) Plaintiff's claims are largely precluded by Norton I; (2) Plaintiff's claims are barred by the relevant statute of limitations, with the exception of the malicious prosecution claim; (3) the Individual Defendants who served as counsel for the Town Attorney's Office are entitled to absolute prosecutorial immunity; (4) the Complaint fails to state a claim against Defendant Maltese; (5) the Complaint fails to state a claim against Defendant Stabile; (6) all Individual Defendants are entitled to qualified immunity; (7) the County cannot be held liable for the acts of the Town Attorneys; (8) the Town cannot be held liable for the acts of the Town Attorneys; and (9) Plaintiff's claims for declaratory judgment should be dismissed because such relief would be inappropriate in these circumstances.

No discovery has occurred in this action, though the parties have submitted documentary evidence that was obtained in connection with Norton I in support of their positions. (See Second Norton Aff. ¶¶ 4-6; Docket Entry # 83, Order of Magistrate Judge Wall dated Sept. 6, 2007 (staying discovery pending decision on Defendants' motions for summary judgment).) Plaintiff opposes the Defendants' Motions on the merits, and has submitted an affidavit pursuant to Rule 56(f) of the Federal Rules of Civil Procedure detailing his outstanding discovery needs. (See Second Norton Aff.); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ("[P]remature motions can be adequately dealt with under Rule 56(f), which allows a summary judgment motion to be denied, or the hearing on the motion to be continued, if the nonmoving party has not had an opportunity to make full discovery.").

## IV. Discussion

### A. Preclusion Based on Norton I

The Town Defendants argue that Plaintiff's "claims for relief premised on conduct which plainly occurred prior to the January 2, 2003 date when this Court issued its summary judgment order in Norton I" are precluded because Plaintiff presented and withdrew claims "concerning the very same transactions and occurrences" in Norton I. (Town Mot. 12.) They urge the court to dismiss nearly all of Plaintiff's claims on the basis of "the doctrine of res judicata, the related rule against claim-splitting, and the doctrine of collateral estoppel." (Id. at 13.)[3] The court reviews the history of Plaintiff's Norton I claims, then turns to the preclusion analysis.

---

[3] The "rule against claim-splitting" cited by the Town Defendants does not warrant separate analysis because it merely restates a principle of res judicata. It captures the idea that "a plaintiff cannot avoid the effects of res judicata by 'splitting' his claim into various suits, based on different legal theories (with different evidence 'necessary' to each suit)." Waldman v. Village of Kiryas Joel, 207 F.3d 105, 110 (2d Cir. 2000).

### i.  The <u>Norton I</u> Stipulation

Plaintiff's complaint in <u>Norton I</u> included the following allegations concerning the

Criminal Action:

> 3.    Despite the fact that plaintiff was given no notice of this purported
> revocation of the nonconforming use, defendants charged plaintiff criminally
> for continuing to use the two-family dwelling as such, and they continue to
> prosecute that action, which could result in plaintiff being imprisoned for up
> to 15 days, fined up to $1,000, or both.

> 4.    In this action, plaintiff not only seeks damages as a result of defendants'
> unlawful acts, but a declaration from the Court that the 1990 certificate of
> occupancy was the last validly issued certificate of occupancy . . . In
> accordance with the declaration, plaintiff also seeks an injunction against
> defendants preventing them from punishing plaintiff for, or prohibiting
> plaintiff from, using his property as a two-family dwelling.

(<u>See</u> Town Def. 56.1 Statement & Pl. Response ¶ 15.)  Plaintiff's first cause of action sought

damages based upon his deprivation of due process.  The accompanying allegations included the

following:

> 38.  In addition [to the deprivation of Plaintiff's property interest], plaintiff's
> liberty is threatened since defendants continue to prosecute the Criminal
> Proceeding, which may result in plaintiff being imprisoned for up to 15 days,
> fined up to $1,000, or both.

> 39.  Defendants unlawful actions . . . (iii) have caused and will continue to
> cause plaintiff to be threatened with fines and imprisonment in both the
> Criminal Proceeding and possible future criminal proceedings; and (iv) has
> forced and will continue to force plaintiff to expend substantial sums of
> money for attorney's fees, costs and expenses in defending the Criminal
> Proceeding.

(<u>Id</u>. ¶ 17.)  Plaintiff's third cause of action referred again to the continued prosecution of the

Criminal Action and sought an injunction preventing the <u>Norton I</u> defendants "from taking any

action against plaintiff under §§ 68-15, 68-40, or any other provision of the [Town] Code to

punish plaintiff for, or prohibit plaintiff from, using the premises as a two-family dwelling."  (<u>Id</u>.

¶ 18.)

In <u>Norton I</u>, Plaintiff withdrew his first cause of action through an oral stipulation entered

at his deposition (the "Oral Stipulation"). (Town Mot. 12.) At Plaintiff's deposition in <u>Norton I</u>,

he invoked the Fifth Amendment in response to questions concerning his rental of the Premises

without a permit. (<u>See</u> Town Def. 56.1 Statement & Pl. Response ¶ 20.) At this point, the

parties entered into an oral stipulation on the deposition record withdrawing with prejudice "any

claim for economic relief based upon the first claim in the action," deprivation of due process, in

exchange for the Town's agreement to adjourn the Criminal Action pending the outcome of

<u>Norton I</u>. <u>Id.</u>; (Dep. of Howard Norton ("Norton Dep.") dated Oct. 26, 2000, JA 343-44).

The parties dispute whether the Oral Stipulation was broad enough to withdraw, with

prejudice, any claim by Plaintiff concerning the Criminal Action. (<u>See</u> Town Mot. 14; Pl.

Response to Town Def. 56.1 Statement ¶ 19.)

### ii. Res Judicata

Under res judicata, or claim preclusion, "a final judgment on the merits of an action

precludes the parties or their privies from relitigating issues that were or could have been raised

in that action." <u>Allen v. McCurry</u>, 449 U.S. 90, 94-96 (1980). The doctrine bars successive suits

involving the same "claim" or "nucleus of operative fact." <u>See</u> <u>Waldman v. Village of Kiryas</u>

<u>Joel</u>, 207 F.3d 105, 108 (2d Cir. 2000). In evaluating the identity of the claims, "the fact that

both suits involved essentially the same course of wrongful conduct is not decisive; nor is it

dispositive that the two proceedings involved the same parties, similar or overlapping facts, and

similar legal issues." <u>S.E.C. v. First Jersey Securities, Inc.</u>, 101 F.3d 1450, 1463-64 (2d Cir.

1996). To ascertain whether the second suit is barred, courts inquire whether "the transaction or

connected series of transactions at issue in both suits is the same," that is, "whether the same

evidence is needed to support both claims, <u>and whether the facts essential to the second were</u>

present in the first." Id. (emphasis added); NLRB v. United Tech. Corp., 706 F.2d 1254, 1260 (2d Cir. 1983).

Res judicata will not bar a suit, however, "based upon legally significant acts occurring after the filing of a prior suit that was itself based upon earlier acts." Waldman, 207 F.3d at 113. The principle stands that a prior judgment "cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." Lawlor v. Nat'l Screen Serv. Corp., 349 U.S. 322, 328 (1955) (refusing to confer on defendants "a partial immunity from civil liability for future violations.").

### a. Malicious Prosecution

Plaintiff argues that his malicious prosecution claim cannot be barred by res judicata because it did not accrue until after the litigation in Norton I and so could not have been raised there. (Pl. Opp. 22.) A plaintiff's ability to show that the challenged proceeding was terminated in his favor is a prerequisite to maintaining a claim for malicious prosecution under both Section 1983 and New York law. See Heck v. Humphrey, 512 U.S. 477, 484 (1994); Lowth v. Town of Cheektowaga, 82 F.3d 563, 571 (2d Cir. 1996). The Criminal Action was not dismissed until April 23, 2003, four months after the court's decision in Norton I. (See Order of Suffolk County District Court, Def. Ex. K.) Plaintiff cannot be precluded from pursuing a claim now that had not yet accrued at the time of Norton I. As Plaintiff notes, "[u]nder defendants' argument there is no time when Norton could have brought a claim for malicious prosecution." (Pl. Opp. 22.) The court agrees, and finds that Plaintiff's malicious prosecution claim is not precluded. See, e.g., Skinner v. Chapman, 489 F. Supp. 2d 298, 303 (W.D.N.Y. 2007) (res judicata could not bar malicious prosecution claim, where termination in plaintiff's favor could not have been alleged in prior action.)

14

In support of its position, the Town claims that Magistrate Judge Boyle's Report and Recommendation regarding attorneys' fees in <u>Norton I</u> "specifically interpreted" and "bindingly construed" the Oral Stipulation as "having withdrawn and barred any claims for monetary damages concerning the parallel code enforcement action," including unaccrued claims. (Town Mot. 14-15; Reply Mot. 19; <u>see</u> Sidaris Decl. Ex. I, <u>Norton I</u> Report and Recommendation, dated August 11, 2004, at 10-11.) The Town argues that this court "adopted" this purported finding with the Report and Recommendation. (Town Mot. 15; <u>see also</u> Sidaris Decl. Ex. H, <u>Norton I</u> Order on Attorney's Fees dated September 27, 2004 (adopting Report and Recommendation in part).) Further, the Town claims that the written stipulation ultimately entered to satisfy the judgment in <u>Norton I</u> similarly supported its position because it stated that it "will constitute the final and non-appealable determination and resolution of the above-captioned action" and that "[t]he parties hereby waive any and all appeals or appellate rights which any of them may have in the above captioned action." (<u>Id.</u>; Sidaris Decl. Ex. H, <u>Norton I</u> Stipulation dated November 9, 2004.) These arguments have no merit. The content of the Oral Stipulation speaks for itself, and clearly withdraws only those claims raised in <u>Norton I</u>. It did not serve as a general release. It makes no reference to withdrawing all future claims "concerning" the Criminal Action, and it does not foreclose any unaccrued claims.

### b. Malicious Abuse of Process

While res judicata does not bar Plaintiff's malicious prosecution claim, Plaintiff's argument that his malicious abuse of process claim must survive because it did not accrue until the dismissal of the Criminal Action is unavailing. As reviewed above, to state a claim for malicious abuse of process under Section 1983 and New York law, Plaintiff must allege that a defendant "(1) employs regularly issued legal process to compel performance or forbearance of

some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of process." Shain v. Ellison, 273 F.3d 56, 68 (2d Cir. 2000) (citation omitted). In contrast to a claim for malicious prosecution, termination of the challenged proceeding is not an element of the claim. See Cunningham v. State of New York, 53 N.Y.2d 851, 853 (1981); Keller v. Butler, 246 N.Y. 249, 255 (N.Y. 1927) (holding that the actions can appear to be the same because "both in malicious prosecution and in the malicious abuse of process, malice and want of probable cause must be shown . . . [but] the difference being that in the one the initial litigation must be terminated, while in the other it is the abuse of an incidental process which has caused the unjustifiable damage and the initial proceedings need not be terminated to give a cause of action."); see also V.S. ex rel. T.S. v. Muhammad, 581 F. Supp. 2d 365, 391 n.9 (E.D.N.Y. 2008) (reiterating this distinction in New York law).

Plaintiff relies upon a decision of the Third Department of the Appellate Division, Dobies v. Brefka, 694 N.Y.S.2d 499 (App. Div. 1999), to argue that "Norton was unable to show that his injuries were without justification until the criminal proceeding was terminated in his favor." (Pl. Opp. 23.) In Dobies, the Third Department of the Appellate Division crafted an exception to the long-standing rule of the New York Court of Appeals that "accrual of a cause of action for abuse of process need not await the termination of an action in claimant's favor." Dobies, 694 N.Y.S.2d at 501 (quoting Cunningham, 53 N.Y.2d at 853). The alleged abuse of process in Dobies was a series of complaints filed by the mother of the plaintiff's children and her parents involving criminal charges or child abuse allegations against Dobies, all of which were later dismissed or determined to be unfounded. Id. at 500. Under these particular circumstances, the court held that "the abuse of process would not have been actionable until the proceeding was

concluded since plaintiff would not have been able to allege that he suffered an injury without justification until the proceeding was terminated." Id. at 501-2.

The court declines to extend the Dobies exception to the present case. The general rule is clear that termination of the challenged proceedings is not an element of an abuse of process claim under New York law. In fact, the New York Court of Appeals has explained that the termination requirement is precisely what distinguishes a claim for malicious abuse of process from one for malicious prosecution. See Keller, 246 N.Y. at 255. Here, the Criminal Action first charged Norton with violating an invalid C/O, and then sought to hold him retroactively liable for violating the 1997 C/O, a document created after the Criminal Action was commenced. At the time Norton I was filed, Norton could have stated a claim for malicious abuse of process on the basis of these facts alone. The premise of the Criminal Action was so plainly deficient that the lack of justification was clear.

Norton's first cause of action for deprivation of due process – withdrawn in the Oral Stipulation – in fact encompassed the same essential facts now raised in his abuse of process claim. Assessing the identity of two claims, the court finds that "the transaction or connected series of transactions at issue in both suits is the same," substantially "the same evidence is needed to support both claims," and "the facts essential to the second were present in the first." First Jersey, 101 F.3d at 1463-64. Plaintiff's withdrawn due process claim challenged the legitimacy of the Criminal Action, alleging that as a separate deprivation of his liberty interest, he was threatened with imprisonment for up to 15 days and fines up to $1,000 in order to enforce the revocation of his property interest without due process. (See Town Def. 56.1 Statement & Pl. Response ¶ 15.) Furthermore, he sought an injunction from this court in Norton I to prevent such "punishment" on the basis of the 1997 C/O and sought damages including attorney's fees and

costs expended in the defense of the Criminal Action. (Id.) Plaintiff's malicious abuse of process claim arises from substantially the same facts. The characterization of the claim as a deprivation of liberty without due process rather than a "malicious abuse of process" does not salvage it for res judicata purposes. See Woods v. Dunlop Tire Corp., 972 F.2d 36, 39 (2d Cir. 1992) ("It is this identity of facts surrounding the occurrence which constitutes the cause of action, not the legal theory upon which [plaintiff] chose to form her complaint."); Waldman, 207 F.3d at 110 ("a plaintiff cannot avoid the effects of res judicata by 'splitting' his claim into various suits, based on different legal theories (with different evidence 'necessary' to each suit).").

Plaintiff's withdrawn cause of action in Norton I and his current claim for malicious abuse of process rely upon the same factual underpinnings and evidence, all of which was available to Plaintiff at the time he filed Norton I. Plaintiff could have stated a claim for malicious abuse of process at that time, but opted to proceed on a different legal theory. Therefore the court concludes that Plaintiff's claim for malicious abuse of process is barred by res judicata.[4]

### iii. Collateral Estoppel

The Town Defendants also invoke the doctrine of collateral estoppel. (Town Mot. 13, 15.) The court finds that this doctrine does not bar Plaintiff's surviving claim for malicious prosecution and has no application to the issues raised by the parties. Collateral estoppel, or issue preclusion, bars successive litigation where "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3)

---

[4] In his Complaint, Plaintiff alleges that the Town Attorney improperly sought a stay of the Criminal Action pending appeal of Norton I. The parties have not addressed whether this factual allegation independently states a claim for malicious abuse of process. Out of an abundance of caution, the court notes that while such a claim would survive res judicata and the statute of limitations, it would nonetheless fail on immunity grounds. See Section IV.C.v. supra; Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993) (a prosecutor's actions "which occur in the course of his role as an advocate for the State" receive absolute immunity").

there was [a] full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid judgment on the merits." Flaherty v. Lang, 199 F.3d 607, 613 (2d Cir. 1999) (internal quotation omitted). "Unlike res judicata, collateral estoppel does not bar a litigant from subsequently pursuing issues that were not raised in the first proceeding, but 'could have been.'" Id. (internal quotation omitted). Defendants repeat their arguments in favor of res judicata to argue for issue preclusion, but fail to demonstrate that the issues underlying Plaintiff's malicious prosecution claim were identical to those issues actually, fully and fairly litigated and decided in Norton I.

### B. Statute of Limitations

The Town Defendants further argue that Plaintiff's claims are time-barred, with the exception of his claim for malicious prosecution. (Town Mot. 18-19.) In response, Plaintiff again relies upon Dobies and his argument that the abuse of process claim did not accrue until the termination of the Criminal Action.[5] (Pl. Opp. 19.) Since the court deems Plaintiff's abuse of process claim precluded by Norton I, it need not reach this question. Nonetheless, the court's rejection of the Dobies exception determines that the abuse of process claim accrued prior to Norton I, which was filed in 1998. As a result, it would also be barred by any relevant statute of limitations. See Singleton v. City of New York, 632 F.2d 185 (2d Cir. 1980) (applying three-year statute of limitations for Section 1983 claims); Roper v. Hynes, No. 05-cv-7664(WHP), 2006 WL 2773032, at *11 (S.D.N.Y. Sept. 27, 2006) (dismissing abuse of process claim under Section 1983 three-year statute of limitations); Green v. City of New York, 465 F.3d 65, 86 (2d Cir. 2006) (regarding state law claims, "New York Civil Practice Law and Rules § 215(3) provides a one-year statute of limitations for intentional torts.").

---

[5] Plaintiff further clarifies that his additional allegations of manufacturing false evidence do not constitute a separate tort, but rather are part of his malicious prosecution claim. (Pl. Opp. 20.)

## C. Prosecutorial Immunity

Five Defendants assert that they are entitled to absolute prosecutorial immunity from Plaintiff's claims. These Defendants – Town Attorney Vincent J. Messina, Jr. ("Town Attorney Messina"); Deputy Town Attorney Richard Hoffman ("Deputy Hoffman"); Assistant Town Attorney Richard C. Sherman ("ATA Sherman"); Assistant Town Attorney and Director of the Division of Law Enforcement Joanne Huml ("ATA Huml"); and former Assistant Town Attorney and Director of the Division of Law Enforcement J. Timothy Shea, Jr. ("ATA Shea") (collectively, the "Town Attorney Defendants") – served as counsel in the Town Attorney's Office and represented the Town in its criminal action against Plaintiff.[6] They argue that they are entitled to absolute immunity because they performed prosecutorial functions in this capacity. Plaintiff counters that Defendants cannot avail themselves of absolute immunity because their challenged actions were investigative and not prosecutorial in nature.

"[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993). Since absolute immunity "spares the official any scrutiny of his motives," the court must endeavor to "resolv[e] immunity questions at the earliest possible stage in litigation." Dorman v. Higgins, 821 F.2d 133, 139 (2d Cir. 1987); Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam).

Under the "functional approach" set forth in Buckley, the application of immunity depends on "the nature of the function performed, not the identity of the actor who performed it"

---

[6] Each has been named individually and in their official capacity. A sixth Defendant, Ronald P. Stabile, Jr., served as an Investigator for the Town Attorney's Office ("Investigator Stabile"). The professional titles held by Defendants refer to the positions they held at the time of the relevant events alleged in the Complaint, unless otherwise noted.

or the office he or she holds.  Buckley, 509 U.S. at 269 (quoting Forrester v. White, 484 U.S. 219, 229 (1988)).  Absolute immunity does not cloak every action a prosecutor takes. "[P]rosecutors are absolutely immune from liability under § 1983 for their conduct in 'initiating a prosecution and in presenting the State's case,' insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.'"  Burns v. Reed, 500 U.S. 478, 486 (1991) (quoting Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976)).  Absolute immunity protects these functions of the initiation and conduct of a prosecution "unless [the official] proceeds in the clear absence of all jurisdiction," that is, "without any colorable claim of authority."  Shmueli v. City of New York, 424 F.3d 231, 237 (2d Cir. 2005); Barr v. Abrams, 810 F.2d 358, 361 (2d Cir. 1987).  By contrast, "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings" do not qualify for absolute immunity.  Buckley, 509 U.S. at 273.  Such actions remain eligible for qualified immunity, provided their "conduct does not violate clearly established rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

While absolute immunity bars a civil suit for damages brought under Section 1983, Plaintiff also seeks a declaratory judgment in this action.  The prosecutor's absolute immunity does not extend to claims for injunctive and declaratory relief.  Supreme Court of Va. v. Consumers Union, 446 U.S. 719, 736-37 (1980); Shmueli, 424 F.3d at 239 (immunity from damages does not bar equitable relief).  Plaintiff's claims for declaratory judgment and "other and further relief" against the Town Attorney Defendants will therefore survive any

determinations of immunity; the immunity analysis below addresses Plaintiff's claims only insofar as they seek money damages.[7]

### i. The Prosecutorial Functions of the Town Attorney Defendants

Plaintiff argues that to qualify for absolute prosecutorial immunity, the Town Attorney Defendants would have to show that they were "certified as Special Assistant DAs" by the County District Attorney's office; without the certification, he claims, the Town Attorney's Office proceeded in "the clear absence of all jurisdiction." (Pl. Opp. 36-37.) The court concludes that the Town Attorney Defendants were authorized to perform prosecutorial functions and that they are entitled to absolute immunity with respect to those functions.

Plaintiff's argument fails because immunity attaches to functions, not to offices. Case law makes clear that prosecutorial immunity can be invoked by municipal attorneys who are not technically district attorneys or designated prosecutors. See Spear v. Town of W. Hartford, 954 F.2d 63 (2d Cir.), cert. denied, 506 U.S. 819 (1992) (acting town manager and corporate counsel's authorization to commence a civil RICO suit, and the counsel's institution of the suit, were protected by absolute immunity); see also Shoultes v. Laidlaw, 886 F.2d 114, 118 (6th Cir. 1989) (absolute immunity protected city attorney's decision to bring contempt proceeding, and commencement of action for injunction, to enforce zoning ordinance with criminal sanctions).

The criminal proceeding was filed by the Town Attorney's Office and brought in the name of the "People of the State of New York." (See Criminal Summons, JA 113.) The Town Defendants cite several sources of authority for the Town Attorney's Office to enforce local land use regulations through prosecutions. (See Reply Mot. 16.) For example, under New York

---

[7] Further, this analysis does not apply to Plaintiff's remaining state law claim for malicious prosecution, which is subject to New York immunity law. See, e.g., Downing v. West Haven Bd. of Educ., 162 F. Supp. 2d 19 (D. Conn. 2001). As the Individual Defendants have not argued that they are entitled to state law immunity, the court declines to reach this question.

Town Law § 268, "the proper local authorities of the town . . . may institute any appropriate action or proceedings to prevent" unlawful actions with respect to local land use.  Id.  In People v. Czakja, 11 N.Y.2d. 253 (N.Y. 1962), the defendant challenged the authority of a Deputy Town Attorney to prosecute him for a traffic violation.  The New York Court of Appeals held that "[i]t is no longer open to question that petty crimes or offenses of this nature may be prosecuted in courts of special sessions by administrative officers and attorneys other than the District Attorney."  Id. at 254; see also People v. Soddano, 86 N.Y.2d 727, 728 (N.Y. 1995) (reaffirming this rule).

The court is not persuaded that Town Attorneys must be certified as Special Assistant DAs in order to prosecute violations of local law.  Plaintiff attempts to weave together fragments of New York statutes and case law, generally discussing the authority and responsibility of a district attorney's office, to devise this argument.  (Pl. Opp. 13-17.)  These citations are inapposite.  Plaintiff also submits the Norton I deposition testimony of ATA Shea and a single page of minutes from a Town Board meeting that he received in response to a Freedom of Information Law ("FOIL") request.[8]  (See Second Norton Aff. Exs. 9-11.)  ATA Shea's subjective belief that his designation as a Special Assistant District Attorney was "required for [him] to prosecute any code violation with criminal penalties" is not a dispositive indication of the state of the law.  (Id. at Ex. 10.)  The Town Board minutes, on the other hand, actually undermine Plaintiff's assertion.  In the colloquy, a Mr. De Salvo explains that a "newly elected District Attorney sent out a letter asking any Towns that have their assistant Town Attorneys that prosecute violations, for example, New York State building code, he invites them to be designated [as Special Assistant District Attorneys]."  (Id. at Ex. 9.)  Mr. De Salvo adds

---

[8] The copy of the Town Board minutes produced to the court bears no official date.  It appears that a date of August 6, 1990 was handwritten in the margin of the page.  The origin of this notation is unclear.

explicitly that "it doesn't give us any additional powers" to seek the designation, and characterizes the offer as a "courtesy move by the District Attorneys Office" [sic].  (Id.)  The resolution adopted by the Town Board states:

> Whereas, the Town Attorney's Office has been empowered to handle prosecutions of the Islip Town Code as well as other relevant State Codes; and
>
> Whereas, these prosecutions are brought on behalf of the People of the State of New York; and . . .
>
> Whereas such designation will assist our attorneys in prosecution of State Code violations . . .
>
> Resolved that all attorneys hereby employed by the Town Attorney's Office are hereby authorized to apply . . . to be designated as Special Assistant District Attorneys . . . .

(Id. (emphasis added).)  This glimpse of legislative history suggests that the designation of a Town Attorney as a Special Assistant DA was never deemed necessary to the prosecution of Town Code offenses, and at best, bolstered the credentials of a Town Attorney seeking to prosecute state law violations – a situation that is not presented here.  There is no legal support for Plaintiff's novel proposition that Town Attorneys must be certified as Special Assistant DAs in order to claim authority to prosecute violations of local law. [9]  Consequently, there is no evidence that the Town Attorney Defendants proceeded in the "clear absence of all jurisdiction" in the Criminal Action.

While the actions of the Town Attorney Defendants may be eligible for absolute immunity, the application of immunity depends upon the facts alleged and the nature of the function involved.  While Defendants move for summary judgment, "[i]n determining immunity, we accept the allegations of [a plaintiff's] complaint as true."  Kalina v. Fletcher, 522 U.S. 118,

---

[9] In any event, Plaintiff appears to concede that ATAs Huml and Sherman were certified as Special Assistant District Attorneys, and that ATA Shea, Town Attorney Messina, and Deputy Town Attorney Hoffman were certified during some portion of the relevant time period.  (Pl. Opp. 16.)

122 (1997) (reviewing summary judgment decision); accord Caldarola v. Calabrese, 298 F.3d 156, 161 (2d Cir. 2002). The court considers the allegations against each Town Attorney Defendant in turn.

### ii. ATA Huml

Plaintiff claims that ATA Huml "furnished" Investigator Stabile with the File Copy C/O "with instructions that he investigate the Plaintiff's Premises in light of that document," despite her knowledge or reckless disregard of the fact that the File Copy C/O was invalid. (Am. Compl. ¶¶ 74-75.) She then "condoned, encouraged and insisted that Defendant Stabile rely upon the invalid C/O, and make false statements" based on that invalid document; Investigator Stabile then signed the Accusatory Instrument and allegedly provided it to Huml for "further action." (Id. ¶ 76-77.) On September 12, 1997, ATA Huml represented to Plaintiff's counsel that the invalid File Copy C/O was the "last issued" C/O upon which the criminal prosecution was based. (Id. ¶ 78.)

Based upon the allegations in the Complaint, the court concludes that ATA Huml's challenged actions in advising and guiding Investigator Stabile were undertaken in the course of investigative work. "A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." Buckley, 509 U.S. at 274. Prior to that time, it is clear that a prosecutor operates in the investigatory sphere of law enforcement. The acts of "giving legal advice" to investigatory officers and "render[ing] opinions concerning the legality of conduct" in obtaining evidence and establishing probable cause do not warrant absolute immunity. Burns v. Reed, 500 U.S. at 492-93. Arguably, ATA Huml may invoke qualified immunity for any actions taken to encourage Investigator Stabile to provide a statement

in reliance upon the File Copy C/O, but she is not entitled to absolute immunity for these alleged actions.  See Buckley, 509 U.S. at 273.

### iii.    ATA Sherman

Plaintiff claims that ATA Sherman, in conjunction with Carl Maltese, Director of the Town Building Department, "manufactured evidence with the intention of using it to oppose Plaintiff's first motion to dismiss the Accusatory Instrument in October 1997."  (Am. Compl. ¶ 81.)  Specifically, Plaintiff charges that "[c]onfronted with the lack of a validly issued C/O to support the allegations made in the Accusatory Instrument," ATA Sherman "specifically requested that Defendant Maltese sign and therefore issue a new C/O for the Premises," the 1997 C/O later ruled by this court to violate Plaintiff's right to procedural due process.  (Id. ¶ 83.) ATA Sherman then submitted this "manufactured evidence" by affirmation to the Suffolk District Court in an attempt to substantiate the criminal prosecution with probable cause.  (Id. ¶¶ 85-91.)

To the extent Plaintiff challenges ATA Sherman's actions in submitting or conspiring to submit the 1997 C/O to the Suffolk District Court, and in pursuing and maintaining the criminal prosecution, his claims are barred by absolute prosecutorial immunity under Dory v. Ryan, 25 F.3d 81 (2d Cir. 1994).  Dory confirmed that where a prosecutor was accused of "conspiring to present false evidence at a criminal trial," he would nonetheless be entitled to absolute immunity "regardless of [his] motivation" because the presentation of evidence was a task sufficiently "associated with his function as an advocate."  Id. at 83; see also Daloia v. Rose, 849 F.2d 74, 75 (2d Cir. 1988) (per curiam) (holding that prosecutor was immune from § 1983 liability for knowingly presenting false testimony).  In applying the functional test, the court held that the fact that "such a conspiracy is certainly not something that is properly within the role of a

prosecutor is immaterial, because '[t]he immunity attaches to his function, not to the manner in which he performed it.'" Dory, 25 F.3d at 83, quoting Barrett v. United States, 798 F.2d 565, 573 (2d Cir. 1986).[10]

However, the act of conspiring to create false evidence is an investigatory function, entitled only to qualified immunity. See Hill v. City of New York, 45 F.3d 653, 662 (2d Cir. 1995) (absolute immunity "does not protect efforts to manufacture evidence that occur during the investigatory phase of a criminal case"); Buckley, 509 U.S. at 275 ("a prosecutor's fabrication of false evidence during the preliminary investigation" of a crime is only eligible for qualified immunity); see also id. at 274 n.5 (delineating the fabrication of evidence as an investigatory act that lacked immunity at common law). As the Second Circuit determined in Hill, if evidence is "made to collect or corroborate [other] evidence against [a person] in order to get probable cause to arrest her, the act of making the [evidence] receives only qualified immunity." Hill, 45 F.3d at 662.

Following careful consideration of this narrow distinction in the case law, the court finds that Plaintiff has failed to allege that ATA Sherman conspired to create false evidence. Plaintiff mischaracterizes the 1997 C/O as "falsified evidence." The document was signed and dated accurately. There is no evidence that the 1997 C/O was falsified by ATA Sherman or Defendant Maltese, or that either one of them added false information to the document.

The court notes that in Norton I, Plaintiff challenged the accuracy of the Revoking Notations in the 1997 C/O, particularly, the second notation which reads:

> *Rental permit for two-family DENIED 23 Mar 88  Non-conforming use of
> two-family lost due to non-use in excess of one consecutive year and failure to

---

[10] Although the Dory Court was loathe to countenance such grave allegations, it recognized that the doctrine of absolute immunity was intended to bar even meritorious claims in the service of "a greater societal goal in protecting the judicial process by preventing perpetual suits against prosecutors for the performance of their duties." Dory, 25 F.3d at 83.

> apply for repair permits.  Denial sustained by SCS court 27 Feb 89.
> Withdrawal from Court of Appeals 23 Mar 90.

(1997 C/O, JA 116.)  This notation could have been read to suggest that Plaintiff's

nonconforming use was lost in 1989, either by operation of law or state court decision.  (See

Norton I Compl. ¶ 29, JA-20 (asserting that the notation was a result of an "erroneous

interpretation" of the New York Supreme Court decision in Plaintiff's Article 78 proceeding).  I

firmly rejected that idea in Norton I.  However, it is undisputed that this language was added to

the File Copy C/O in 1990 by Rim Giedraitis, the former Commissioner of the Town Department

of Building and Engineering.  (Town Def. 56.1 Statement & Pl. Response ¶¶ 2, 3; Giedraitis

Dep., JA 275, 288-89.)  Even assuming the 1997 C/O incorporated misleading or inaccurate

statements, the facts are clear that such statements were placed there in 1990.  The language was

not the result of a conspiracy between ATA Sherman and Defendant Maltese to "manufacture

false evidence" in 1997.  Based upon the undisputed facts, Plaintiff's claim targets the

submission of a misleading statement to the Suffolk District Court, not the wholesale fabrication

of the statement.  The rule of Dory v. Ryan governs, and the claim against ATA Sherman is

barred by absolute prosecutorial immunity.

Plaintiff's remaining issues with the 1997 C/O seem to be that (1) the creation of the

document was allegedly solicited by prosecutors and not created in the ordinary course of

business, and (2) it was improperly used as evidence to support the prosecution, because it was

admittedly created five months after the initiation of the Criminal Action.  Neither theory could

support a malicious prosecution claim against ATA Sherman.

The reasons compelling the creation of the document, taken in isolation, are insufficient

to support a claim against ATA Sherman.  Regarding the second point, it is undisputed that the

1997 C/O "post-dated the commencement of the criminal prosecution"; it could not form the

basis for the charges already being prosecuted. (Am. Compl. ¶ 38; Pl. Response to Town Def. 56.1 Statement ¶ 9 ("the certification date of the newly issued certificate of occupancy dated October 21, 1997, was apparent on the document itself").) If ATA Sherman represented that the 1997 C/O could, <u>ex post facto</u>, form the basis for charges brought months earlier, he made an erroneous legal argument to the Suffolk District Court. Decisions to present evidence or legal arguments to the court, however, "occur in the course of his role as an advocate for the State," and are covered by absolute immunity. <u>Buckley</u>, 509 U.S. at 273. Plaintiff's claim for malicious prosecution is against ATA Sherman is therefore barred.

### iv. ATA Shea

Plaintiff claims that ATA Shea's liability derives from his submission of a declaration in the criminal prosecution on March 20, 2003 (the "Shea Declaration"). By that time, he was no longer employed by the Town and acted as a "fact witness," representing to the Suffolk District Court that he "'expected' the criminal prosecution to be held in abeyance until there was a 'final resolution'" of <u>Norton I</u>. (Am. Compl. ¶¶ 92-95.) Plaintiff argues that the Shea Declaration was "false or misleading" and reflected "his bad faith and malice," because one year earlier, the Town had argued in <u>Norton I</u> that this court should abstain from decision while the state criminal prosecution was pending, pursuant to the rule of <u>Younger v. Harris</u>, 401 U.S. 37 (1971). (<u>Id</u>. ¶¶ 96-100.) Essentially Plaintiff states that ATA Shea made misrepresentations in his declaration to the Suffolk District Court, and improperly took inconsistent litigation positions.

Regardless of whether ATA Shea is eligible for absolute <u>prosecutorial</u> immunity, he is entitled to absolute immunity as a witness in a judicial proceeding. Whether ATA Shea gave the testimony in his Declaration as a private citizen or as an Assistant Town Attorney, he is entitled to the absolute immunity accorded to testifying witnesses. <u>Briscoe v. LaHue</u>, 460 U.S. 325, 326,

342 (1983) (functions of an officer witness in a judicial proceeding are the same as those of any other witness). This immunity shields ATA Shea from liability for damages arising from his testimony, even though that testimony is alleged to be misleading, perjured, or supplied in bad faith.[11] Id.; Sykes v. James, 15 F.3d 515, 520 (2d Cir. 1993) (probation officer accused of submitting false affidavit entitled to absolute immunity). Plaintiff's malicious prosecution claim against ATA Shea is therefore dismissed.

### v. Town Attorney Messina and Deputy Hoffman

Plaintiff alleges that Town Attorney Messina and his second in command, Deputy Hoffman, are vicariously liable for these actions because each held "supervisory responsibility over all investigators and Assistant Town Attorneys" during the criminal proceedings. (Am. Compl. ¶ 104.) Plaintiff claims that in their supervisory positions, Town Attorney Messina and Deputy Attorney Hoffman "condoned, encouraged and insisted on the custom and usage" of:

(1) "requiring investigators, such as Defendant Stabile, to rely solely upon unsigned and undated, and therefore unissued, purported 'C/Os' when performing investigations of alleged violations of town ordinances, including the alleged unlawful change of use of Plaintiff's Premises";

(2) "requiring investigators to issue accusatory instruments commencing criminal prosecutions, based entirely on unsigned and undated, and therefore unissued, purported C/Os";

(3) "requiring Assistant Town Attorneys to apply for or procure a newly-issued C/O, signed and dated by the Director of the Building Department or his authorized assistant, when such a document was or is required in court for the furtherance of a criminal prosecution"; and

(4) "[u]pon information and belief, . . . [the practice of] caus[ing] to be issued new C/Os with changes adversely affecting property rights, without providing property owners, and others with a property interest, with notice and an opportunity to be heard, as the Town had done during the criminal prosecution of Howard Norton."

---

[11] If ATA Shea submitted the 2003 Affidavit as a purely private citizen, there would be a question as to whether Plaintiff could show state action as required by Section 1983. See San Filippo v. United States Trust Co., 737 F.2d 246, 256 (2d Cir. 1984), cert. denied, 470 U.S. 1035 (1985) ("a private party giving testimony is not 'acting under color of state law' for purposes of § 1983 . . . and . . . all witnesses, whether private parties or government officials, have absolute immunity from damages liability for their testimony under Briscoe."). Since the court finds that ATA Shea is entitled to absolute immunity as a testifying witness, the court declines to reach the issue of state action.

(Id. ¶¶ 105-107, 109.)  Plaintiff's allegations against Town Attorney Messina and Deputy

Attorney Hoffman essentially charge them with implementing the allegedly unconstitutional

Town enforcement policies and suggest that they are liable for the actions of the other Town

Attorney Defendants and Investigator Stabile under theories of supervisory or conspiratorial

liability.

In the recent case of Van de Kamp v. Goldstein, 129 S. Ct. 855 (2009), the Supreme

Court examined the scope of prosecutorial immunity in the face of failure to supervise and

failure to train claims.  In Van de Kamp, the plaintiff claimed that the district attorney and his

chief assistant failed to adequately train and supervise their deputies on the production of

impeachment material to defendants, and failed to create an information system for their deputies

handling such cases to access such information.  Id. at 861.  The Court found that absolute

immunity barred the claims.  While these claims addressed administrative functions, they

focused on "a certain kind of administrative obligation – a kind that itself is directly connected

with the conduct of a trial."  Id. at 862.  These functions are distinct from "administrative duties

concerning . . . workplace hiring, payroll administration, the maintenance of physical facilities,

and the like."  Id.  The Court reasoned that the failure to supervise and train claims relied upon

underlying misconduct by the deputy prosecutors at trial, who were themselves entitled to

absolute immunity.  Id.  In support of its decision, the Court cited the need to limit the "ease with

which a plaintiff could restyle a complaint charging a trial failure so that it becomes a complaint

charging a failure of training or supervision would eviscerate Imbler [and its rule of prosecutorial

immunity]."  Id. at 863; see also Gil v. County of Suffolk, No. 06-cv-1683(LDW)(ARL), 2007

WL 2027736 at *3 (E.D.N.Y. Jul. 9, 2007) (allegations of failure to train by the district attorney

cannot "circumvent the bar of absolute immunity" applied to the actions of assistant district

attorneys).  In rejecting the information system claim, a "more purely administrative task" operable by less "technically qualified individuals other than prosecutors," the Court went further.  Van de Kamp, 129 S.Ct. at 864.  It found that absolute immunity applied here as well, because "determining the criteria for inclusion or exclusion [of data in an information system] requires knowledge of the law" and expressed its recalcitrance "to review the [District Attorney's] office's legal judgments."  Id.

The court finds that under Van de Kamp, Town Attorney Messina and Deputy Attorney Hoffman are entitled to absolute immunity from Plaintiff's claim that they failed to train and supervise the Assistant Town Attorneys and investigators.  Each allegation pursues liability based on the "office's legal judgments" made in the course of Norton's prosecution.  As in Van de Kamp, the claims alleged here address issues intimately associated with the judicial process – decisions regarding how to enforce local law, when to initiate a prosecution, and how to conduct the ensuing litigation.  Any related failures to train or supervise subordinates involve "a certain kind of administrative obligation – kind that itself is directly connected with the conduct of a trial."  Id. at 862.

Plaintiff additionally alleges that Deputy Attorney Hoffman is liable because he sought an order in February 2003 from the Suffolk District Court to stay the Criminal Action pending the appeal of Norton I.  (Am. Compl. ¶¶ 51-52).  The legal judgment of a Town Attorney to seek a stay, appeal a case, or otherwise pursue a litigation position is "intimately associated with the judicial process."  See Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993) (a prosecutor's actions "which occur in the course of his role as an advocate for the State" receive absolute immunity"); Pinaud v. County of Suffolk, 52 F.3d 1139, 1149-50 (2d Cir. 1995) (applying absolute immunity

to prosecutor's representations before grand jury and in bail application). Accordingly, Deputy Attorney Hoffman is entitled to absolute prosecutorial immunity for his actions in seeking a stay.

### D. Claims Against Defendant Maltese

Defendant Maltese argues that he cannot be sued for malicious prosecution because he is not accused of initiating or continuing the prosecution. (Indiv. Def. Mot. 8.) Maltese is alleged to have signed and certified the 1997 C/O on behalf of the Town Building Department, over five months after the Criminal Action was commenced. (See Am. Compl. ¶¶ 36, 40.) Plaintiff argues that "Maltese's fabrication of evidence in the form of the 'new' C/O and his certification cause the baseless prosecution to continue," and claims that the Suffolk District Court relied upon this 1997 C/O when it refused to grant Plaintiff's first motion to dismiss in the Criminal Action. (Pl. Opp. 42.)

The parties dispute the connection between Maltese's issuance of the 1997 C/O and the Criminal Action. Maltese was deposed in Norton I and testified that he had only learned of the Criminal Action on the day of his deposition, November 13, 2000. (See Maltese Dep., JA 307.) However, Plaintiff counters that Maltese "certified a copy of the 1997 C/O so that it could be used in court" by signing an additional statement certifying the 1997 C/O to be a "true and correct copy" of the document on file with his office. (Pl. Response to Town Def. 56.1 Statement ¶ 8, citing Certification by Maltese, JA 117.) In support, Plaintiff cites to the explanation of the certification document given by Investigator Stabile at his own Norton I deposition. Faced with Maltese's certification, Investigator Stabile testified: "This is used for court. When we have a trial, they will get a certified copy of the building department certificate of occupancy and this gets a stamp to show that it is certified, and Carl Maltese, the director of the building department, signs it and it is sealed." (Stabile Dep., JA 264.) Investigator Stabile

further testified that the certification is used "so he doesn't have to come to court to testify and they can use this paper as the evidence." [12] (Id.)

Maltese's actions could not "commence" or "continue" the Criminal Action, because the 1997 C/O demonstrated no support for the Criminal Action. Even taking Plaintiff's allegations to be true, Maltese's issuance of the 1997 C/O could not serve to "concoct . . . probable cause" for the Criminal Action initiated five months before. (See Pl. Opp. 41.) At most, Maltese is responsible for attempting to validate the (incorrect) statements regarding the loss of the nonconforming use that were added to the File Copy C/O in 1990 by Giedraitis. See Laborde v. City of New York, No. 93-cv-6923(JGK), 1999 WL 38253, at *7 (S.D.N.Y. Jan. 27, 1999) ("Under New York law, a plaintiff can sustain a claim of malicious prosecution on proof that the defendant . . . has misrepresented or falsified the evidence or else kept back evidence which would affect the result.") (internal citations omitted). Nevertheless, the fatal flaw in the Criminal Action was not the validity of the Revoking Notations. Plaintiff was charged simply with violating the "last issued" C/O for his Premises. The 1997 C/O, post-dating the commencement of the Criminal Action, could not possibly provide the support for that charge. If the Town Attorney Defendants argued that the Criminal Action, filed on April 17, 1997, was somehow based upon Norton's violation of the 1997 C/O issued on October 21, 1997, this was an error of legal judgment by the prosecutors that was not attributable to Maltese personally. No reasonable jury could find Maltese liable for commencing or continuing a malicious prosecution on these undisputed facts. Plaintiff's malicious prosecution claim as to Maltese is dismissed.

---

[12] The parties have not briefed whether these actions could entitle Maltese to the absolute immunity accorded to testifying witnesses. See Briscoe, 460 U.S. at 326, 342.

### E.  Claims Against Investigator Stabile

Investigator Stabile signed the Accusatory Instrument that commenced the Criminal Action against Norton.  Plaintiff alleges that "[w]hen Defendant Stabile made factual allegations, based on personal knowledge, in the Accusatory Instrument, Defendant Stabile knew those allegations to be false, or recklessly disregarded the likelihood of their falsehood, when he signed and swore to the truth of the Accusatory Instrument."  (Am. Compl. ¶ 69.)  The Accusatory Instrument stated that Norton had violated Section 68-40 of the Town Code, because:

> As owner did use said premise, a legal one family dwelling as a two family dwelling, said premise contains two separate kitchens, baths, sleeping areas and entrances.  Such use is inconsistant (sic) with the last issued certificate of occupancy.

(Accusatory Instrument dated March 20, 1997, JA 112 (emphasis added).)  Plaintiff alleges that Investigator Stabile "never reviewed or even sought to review an original or a copy of the last-issued C/O for the Premises, contrary to his oath of personal knowledge" and instead relied upon "an unsigned, undated, and therefore unissued copy of a document that purported to be a C/O for the Premises," the File Copy C/O.  (Am. Compl. ¶¶ 72-73.)  Plaintiff charges that the File Copy C/O was plainly invalid, because Section 68-39 of the Town Code requires that "a certificate of occupancy . . . shall have been issued by the Director and signed by him or his authorized assistant."  (Second Norton Aff. Ex. 1 (emphasis added).)  Plaintiff does not contest the veracity of Investigator Stabile's allegation that the Premises were used as a two-family dwelling.  Rather, Plaintiff asserts that by attesting that this use violated the "last issued certificate of occupancy," Investigator Stabile made a knowingly false statement that instigated the Criminal Action.[13]

---

[13] Unlike ATA Shea, Investigator Stabile cannot invoke absolute immunity as a testifying witness.  Since Investigator Stabile's Accusatory Instrument initiated the prosecution, he served as a complaining witness, an exception to absolute immunity under White v. Frank, 855 F.2d 956 (2d Cir. 1988).  White held that where "the

Investigator Stabile argues that these allegations "at most sound in false arrest under § 1983," a cause of action that lacks the "favorable termination" element of malicious prosecution and should therefore be precluded and time-barred under the same analysis applied to Plaintiff's malicious abuse of process claim. (Indiv. Def. Mot. 9-10.) The court disagrees.

A malicious prosecution claim under § 1983 is comprised of the elements of a state law malicious prosecution claim plus a deprivation of liberty under the Fourth Amendment. Rohman v. New York City Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000). The elements of malicious prosecution under New York law are: "(1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice." Kinzer v. Jackson, 289 F.3d 188, 143 (2d Cir. 2003).

Plaintiff has properly alleged a malicious prosecution claim against Investigator Stabile. The Criminal Action restrained Plaintiff's liberty because Section 510.40 of the New York Criminal Procedure Law required him to "render himself at all times amenable to the orders and processes of the court." See Rohman, 215 F.3d at 215-16. There is no doubt that the Accusatory Instrument created by Investigator Stabile and filed with the Suffolk District Court commenced the Criminal Action.[14] See Llerando-Phipps v. City of New York, 390 F. Supp. 2d 372, 382-83 (S.D.N.Y. 2005) (malicious prosecution claim stated against officer who signed the accusatory instrument) (citing Carter v. Port Authority, 2004 WL 2978282, at *8 (S.D.N.Y. Dec.

_____

constitutional tort is the action of a police officer in initiating a baseless prosecution, his role as a 'complaining witness' renders him liable to the victim under section 1983, just as it did at common law, and the fact that his testimony at a judicial proceeding may have been the means by which he initiated the prosecution does not permit him to transpose the immunity available for defamation as a defense to malicious prosecution." Id. at 961.

[14] Investigator Stabile's arguments that the Complaint "does not allege that Stabile did anything after signing the accusatory instrument" and that he did not "conduct[] the prosecution" are wholly unavailing. The "signing of a formal complaint provides a colorable basis for asserting that [an officer] encouraged the filing of charges" for the purposes of a malicious prosecution claim. Spiegler v. City of New York, No. 04-cv-1066(RWS), 2006 WL 2587990, at *4 n.7 (S.D.N.Y. Sept. 8, 2006).

20, 2004) (claim stated as to officer who filled out complaining and corroborating affidavits); Cox v. County of Suffolk, 827 F.Supp. 935, 938 (E.D.N.Y. 1993) (same, as to officer who swore to and signed felony complaint). There was no probable cause for the proceeding because it was premised on an alleged violation of an invalid document. In Norton I, this court found that the "last issued C/O" relevant to Town Code § 68-40 was the 1990 C/O, which actually authorized Norton's use of the Premises as a two-family home. Investigator Stabile's statement that "Such use is inconsistant (sic) with the last issued certificate of occupancy" relied upon charging Norton with violating the File Copy C/O, which had no legal force. As this court reflected in Norton I, "[t]he revoking notations did not carry any legal effect until they became part of a C/O that was signed and formally issued," which did not occur until five months after the Criminal Action was commenced. Norton I, 239 F. Supp. 2d at 274 n.6. The court based this determination on the testimony of Rim Giedraitis, who served as the Commissioner of the Town Department of Building and Engineering from 1990 to 2000, and the Town's own manual, titled "Procedure for Issuing Certificate of Occupancy." Id. The unsigned, unissued File Copy C/O stated on its face that "Official copy must have original seal and signature." (File Copy C/O, JA 115.) Even in this litigation pending twelve years later, Defendants fail to put forth any justification for their reliance on the File Copy C/O in initiating the Criminal Action. The Criminal Action was ultimately terminated in Plaintiff's favor. (Sidaris Decl. Ex. K, Suffolk District Court Order.)

Lastly, Investigator Stabile has failed to demonstrate that no triable issue could exist as to malice. Malice, for the purposes of a malicious prosecution claim, refers to a "wrong or improper motive, something other than a desire to see the ends of justice served." Lowth v. Town of Cheektowaga, 82 F.3d 563, 573 (2d Cir. 1996) (internal quotation omitted). In Lowth,

the Second Circuit found that malice and lack of probable cause were closely linked elements of malicious prosecution. The court held that "[i]n most cases, the lack of probable cause – while not dispositive – 'tends to show that the accuser did not believe in the guilt of the accused, and malice may be inferred from the lack of probable cause.'" Id. (internal quotation omitted). The absence of probable cause for the Criminal Action therefore could permit a reasonable jury to infer malice and find Investigator Stabile liable. Investigator Stabile has failed to show that he is entitled to dismissal on summary judgment. See, e.g., Llerando-Phipps, 390 F. Supp. 2d at 383 (inferring malice in the absence of probable cause and denying summary judgment).

### F.  Qualified Immunity

The Individual Town Defendants argue that they are each entitled to summary judgment because the claims against them are barred by qualified immunity. "Qualified immunity shields government officials from civil suits for damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Higazy v. Templeton, 505 F.3d 161, 169 (2d Cir. 2007), quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is not only a defense, it is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). As with absolute immunity, it is a defense confined to claims for money damages and does not pertain to claims for injunctive or declaratory relief. See Allen v. Coughlin, 64 F.3d 77, 81 (2d Cir. 1995).

When evaluating a motion for summary judgment on the basis of qualified immunity, the court must engage a two-part inquiry to assess whether the officer's conduct violated a clearly established constitutional right. See Pearson v. Callahan, 129 S.Ct. 808, 815-816 (2009). Under Saucier v. Katz, 533 U.S. 194 (2001), the threshold question asked "whether the facts that a

plaintiff has alleged or shown make out a violation of a constitutional right." Id. If a violation of a constitutional right could be demonstrated, then the court would proceed with the second question, "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Id. at 816. In Pearson, the Supreme Court modified the Saucier inquiry, holding that the questions need not proceed in this rigid order. Id. at 818 (deeming the Saucier order "beneficial" but no longer necessary). The court may begin by asking whether a constitutional violation is established by Plaintiff's pleading, or simply "whether the right in question was clearly established at the time the violation occurred, that is, whether 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Poe v. Leonard, 282 F.3d 123, 132 (quoting Saucier, 533 U.S. at 202). In order to successfully invoke qualified immunity, an official must show either that: "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." Tierney v. Davidson, 133 F.3d 189, 196 (2d Cir. 1998) (internal quotation omitted) (emphasis added).

The ultimate determination of whether an official's conduct was "objectively reasonable," that is, "whether a reasonable official would reasonably believe his conduct did not violate a clearly established right," is a mixed question of law and fact. Kerman v. City of New York, 374 F.3d 93, 108-09 (2d Cir. 2004) (citations omitted). While "immunity ordinarily should be decided by the court," such questions are only ripe for judgment "where there is no dispute as to the material historical facts." Hunter v. Bryant, 502 U.S. 224, 228 (1991)); Kerman, at 374 F.3d at 109. In order to assess a qualified immunity defense, a court must consider "what the facts were that the officer faced or perceived" and decide "whether qualified immunity attaches on those facts." Stephenson v. Doe, 332 F.3d 68, 81 (2d Cir. 2003) (emphasis

added); see Saucier, 533 U.S. at 201 ("This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition."); see also Poe v. Leonard, 282 F.3d 123, 134 (2d Cir. 2002) ("The qualified immunity analysis depends upon an individualized determination of the misconduct alleged.").  As a result, qualified immunity analysis embroils the court in a fact-intensive inquiry.

The limited record before the court is inadequate to resolve these questions.  The Individual Defendants have failed to carry their burden to demonstrate that no reasonable jury could find them liable for violating clearly established rights.  Plaintiff's allegations, taken in the light most favorable to him, plead multiple violations of clearly established rights.  In Norton I, this court found that Plaintiff was denied "the most rudimentary elements of due process." Norton I, 239 F. Supp. 2d at 276.  Plaintiff further alleges that his constitutional rights to be free from unreasonable search and seizure, criminal prosecution without probable cause, unreasonable interference with his right to travel, and unreasonable interference with his right to privacy were violated by the actions of the Individual Defendants.  (Am. Compl. ¶ 148.)  In this action, Plaintiff asserts that he was criminally prosecuted for allegedly violating a C/O which in fact had no valid legal effect, and he asserts that government officials pursued this ultra vires course intentionally and with malice.

The Individual Defendants do not dispute that the constitutional rights at stake were "clearly established," and they have failed to put forth sufficient undisputed facts to demonstrate that a reasonable official standing in the shoes of each defendant would believe that his or her actions were objectively reasonable.[15]  There was no probable cause to support the Criminal

---

[15] The Individual Defendants highlight the Second Circuit's passing reference to Norton I as a "complicated case" to suggest that their actions were mired in complexity and should be entitled to qualified immunity.  See Norton v. Town of Islip, et al., 77 Fed. Appx. 56 (2d Cir. 2003).  That the Second Circuit deemed the case "complicated," however, in no way settles the questions raised by qualified immunity analysis.  The Second Circuit also affirmed

Action.  The Individual Defendants put forth no testimony or other evidence to justify the

reasonableness of any particular defendant's actions.  They offer only an erroneous legal

argument that it was categorically "reasonable" "to rely upon the C/O on file with the Building

Department since 1990, and such reliance provided probable cause" when the prosecution was

ultimately initiated in 1997.[16]  (Indiv. Def. Mot. 17.)  In support, the Individual Defendants rely

upon Caldarola v. Calabrese, 298 F.3d 156 (2d Cir. 2002) and the "public document" exception

to the hearsay rule to argue that it is objectively reasonable for a government official to rely upon

"records maintained by the municipality."  (Indiv. Def. Mot. 12-13, 17-18).  In Caldarola, the

Second Circuit found that an officer had reasonably but mistakenly believed there was probable

cause for an arrest, where he based that belief upon a summary of interviews and surveillance

information conducted by a private investigation firm and videotape footage, along with

evidence gathered from various forms of public records.  298 F.3d at 166.  The facts before the

Caldarola court constitute an overabundance of evidence in contrast to the single unsigned,

unissued File Copy C/O supplying the purported probable cause here.

    The Individual Defendants' subsequent citation to the "public document" exception to the

hearsay rule is so outrageous, it warrants separate mention.  The Individual Defendants rely upon

citations to a ninety-two year old New York state case, Richards v. Robin, 178 A.D. 535 (App.

Div. 1917), which itself merely discusses the hearsay exception, to claim that "documents

maintained and on file with a municipal office, when that office is charged with maintaining the

records, even if not bearing an acknowledgment or certification, is competent evidence of the

facts stated therein."  (Indiv. Def. Mot. 17.)  This exception to the rules of evidence in New York

---

the Norton I judgment in favor of Plaintiff on summary order, and found the Town's arguments to be wholly
"without merit."  Id.
[16] No evidence is cited to show that any Individual Defendant knew how long the File Copy C/O had been
maintained in the Town's records, or why it was unearthed after seven dormant years to spur the investigation
against Norton.

state courts offers <u>no</u> explanation whatsoever as to why any Individual Defendant would have believed there was probable cause to prosecute Norton.

To be clear, the primary issue is not whether the Revoking Notations or other facts contained in the File Copy C/O were believable, but whether a reasonable government official could have believed that the File Copy C/O was the valid "last issued" C/O for Norton's property for purposes of a criminal prosecution. Norton was charged with violating the terms of the "last issued" C/O for his property; throughout the investigation, initiation, and continuation of the Criminal Action, the Individual Defendants relied upon the File Copy C/O. That document was facially invalid. In order to invoke the shield of qualified immunity where there is no dispute as to the constitutional violation, the Individual Defendants must offer evidence to show that a reasonable official in their position would have believed that there was probable cause for the prosecution, based on the knowledge available to them at the time. The court will not speculate upon the answer to this question. The Individual Defendants have not met this burden.

In the absence of an adequate factual record, summary judgment on the basis of qualified immunity is premature. <u>See</u> Fed. R. Civ. P. 56(f); <u>Castro v. United States</u>, 34 F.3d 106, 112 (2d Cir. 1994) (in the context of qualified immunity, "[w]here the claimant's description of the events suggests that the defendants' conduct was unreasonable, and the facts that the defendants claim are dispositive are solely within the knowledge of the defendants and their collaborators, summary judgment can rarely be granted without allowing the plaintiff an opportunity for discovery as to the questions bearing on the defendants' claims of immunity."). Plaintiff has submitted a detailed affidavit pursuant to Federal Rule of Civil Procedure 56(f), identifying a multitude of disputed issues of fact and the discovery needed to resolve them. Defendants' motion for summary judgment on the basis of qualified immunity attempts to short-circuit the

discovery process, at a juncture where much remains unknown about their activities.  Summary judgment is improper where the factual record has not been adequately developed and presented to the court.  A qualified immunity defense may remain available to each of the remaining Individual Defendants as the facts are further illuminated.

### G.  **Monell Liability**

Section 1983 liability extends to municipalities where a plaintiff can show both a violation of his or her constitutional rights and that the violation was caused by a municipal policy or custom; that is, that the policy or custom was the actual "moving force" behind the alleged wrongs.  See Monell v. Dep't of Social Servs., 436 U.S. 658, 690-91 (1978); Bd. of the County Comm'rs v. Brown, 520 U.S. 400 (1997).  "The mere assertion, however, that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference."  Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993).  As this court recently discussed in Sheikh v. City of New York, Nos. 03-CV-6326, 05-CV-4718 (NGG), 2008 WL 5146645, at *11 (E.D.N.Y. Dec. 5, 2008), a plaintiff must establish one of the following to establish a municipal policy or custom: (1) a formal policy, promulgated or adopted by the City, Monell, 436 U.S. at 690; (2) that an official with policymaking authority took action or made a specific decision which caused the alleged violation of constitutional rights, Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986); or (3) the existence of an unlawful practice by subordinate officials was so permanent or well settled so as to constitute a "custom or usage" and that the practice was so widespread as to imply the constructive acquiescence of policymaking officials, City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988).

Where liability is based on failure to train or supervise, a plaintiff must show "deliberate indifference to the rights of those with whom the municipal employees will come into contact," City of Canton v. Harris, 489 U.S. 378, 388 (1989); Jenkins v. City of New York, 478 F.3d 76, 94 (2d Cir. 2007). To survive summary judgment on a claim of failure to supervise, a plaintiff must establish that "a policymaking official had notice of a potentially serious problem of unconstitutional conduct, such that the need for corrective action or supervision was 'obvious' . . . and the policymaker's failure to investigate or rectify the situation evidences deliberate indifference, rather than mere negligence or bureaucratic inaction." Amnesty Am. v. Town of West Hartford, 361 F.3d 113, 129 (2d Cir. 2004) (quoting Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995)).

### 1. County Liability

Plaintiff proceeds against the County on the theory of failure to supervise the Assistant Town Attorneys. He alleges the Suffolk County District Attorney's Office (the "Suffolk DA's Office") maintained a policy or custom of "delegating to town attorney's offices the prosecution of petty offenses" and then systematically "abdicating all responsibility" for the supervision and oversight of Town zoning prosecutions, including that maintained against Norton. (Am. Compl. ¶¶ 120, 124.) Specifically, Plaintiff alleges that the Suffolk DA's Office failure to supervise entailed "failing to monitor and review the documents upon which the [Norton] prosecution was founded," failing to supervise the "initiation and continuation" of the Criminal Action, and "failing to monitor and review the Town Attorney's continuation of the prosecution" after the decision in Norton I. (Id. ¶¶ 121-123.) Plaintiff argues that this practice amounted to "deliberate indifference" for the constitutional rights of citizens. (Pl. Opp. 8.)

Relying upon <u>Baez v. Hennessey</u>, 853 F.2d 73, 77 (2d Cir. 1988), the County argues that the Suffolk DA's Office acts in "quasi judicial capacity" to represent the State of New York (the "State"), not the County, when it prosecutes a criminal action. (County Mot. 3.) In <u>Baez</u>, the Second Circuit held that a district attorney acts on behalf of the State because, under New York law, "[e]very indictment constitutes an accusation on behalf of the state as plaintiff and must be entitled 'the people of the state of New York' against a designated person, known as the defendant." <u>Id</u>. at 77 (<u>quoting</u> N.Y. Crim. Proc. § 1.20(1)). This province of the State includes decisions committed to the district attorney's discretion, such as "when and in what matter to prosecute a suspected offender." <u>Id</u>. As <u>Baez</u> explains, under New York law, "[a] county has no right to establish a policy concerning how [the district attorney] should prosecute violations of State penal laws." <u>Id</u>., 853 F.2d at 77. As a result, the County maintains that the prosecutorial conduct of the Suffolk DA's Office is not subject to the County's control, and cannot give rise to County municipal liability.

The County overlooks the accompanying rule that a DA acts as a County official in his administration and management of the district attorney's office. <u>See</u> <u>Walker v. City of New York</u>, 974 F.2d 293, 301 (2d Cir. 1993); <u>Ying Jing Gan v. City of New York</u>, 996 F.2d 522, 536-37 (2d Cir. 1993). Decisions regarding supervision and training relate to the DA's role as "the manager of the district attorney's office," and in that role, "the district attorney acts as a county policymaker" whose actions may give rise to municipal liability. <u>Walker</u>, 974 F.2d at 301. Under this framework, the Second Circuit has limited the DA's role as a New York State official to "specific decision[s] of the District Attorney to prosecute." <u>Id</u>.

In <u>Myers v. County of Orange</u>, 57 F.3d 66 (2d Cir. 1998), the Second Circuit clarified that "[u]nder New York law, DAs and ADAs are generally presumed to be local county officers,

not state officers." Id. at 76 (citing, inter alia, N.Y. Pub. Off. Law § 2 (defining DA and ADA as "local officer [s]," not "state officer[s]")). The Myers Court suggested that Baez recognized "a narrow exception" in New York law "when a prosecutor makes individual determinations about whether to prosecute violations of state penal laws." Id. at 77 (emphasis added). The court then allowed a Section 1983 judgment against the county to stand, where the county was found liable for a DA's office policy directed the police and county assistant Das to "engage in investigative procedures that violated . . . equal protection rights." Id. The court placed its ruling "on a par" with prior precedent permitting municipal liability for "a DA's 'direct[ion to] the police to arrest and detain [plaintiff] without a warrant,' a DA's 'long practice of ignoring evidence of police misconduct and sanctioning and covering up wrongdoing,' and a DA's 'decision not to supervise or train ADAs on Brady and perjury issues,' all of which would result in county liability." Id. (citing Claude H. v. County of Oneida, 626 N.Y.S.2d 933, 935-36 (App. Div. 1995); Walker, 974 F.2d at 301; Gentile v. County of Suffolk, 926 F.2d 142, 152 n.5 (2d Cir. 1991)).

Norton's case presents a close question. Plaintiff's claim that the County maintained a policy or custom of "delegating to town attorney's offices the prosecution of petty offenses" and then systematically "abdicating all responsibility" for the supervision and oversight of Town zoning prosecutions does not directly attack the specific decisions of the DA to prosecute. Yet Plaintiff's more specific allegations – that the County is liable for "failing to monitor and review the documents upon which the prosecution was founded," failing to supervise the "initiation and continuation" of the Criminal Action, and "failing to monitor and review the Town Attorney's continuation of the prosecution" – could be distilled down to a core criticism of the specific decision to prosecute Norton.

On balance, the court cannot rule, at this time, that these allegations purely implicate the role of the Suffolk DA's Office in its capacity representing the State. The alleged policy or custom at issue addresses the interlocking relationship between two tiers of government – the Town and the County – over local prosecutions, and the County's alleged failure to execute its supervisory duties in that relationship. Plaintiff's claim therefore presents a broader question than the "narrow exception" recognized in Baez.

The County further asserts that Plaintiff's arguments against the application of prosecutorial immunity estop him from asserting liability against the Suffolk DA's Office. (Docket Entry #102, County Reply 6.) Specifically, the County points to Plaintiff's arguments that the Town Attorney Defendants "were not engaged in public prosecutorial functions when acting" against Norton, and that several were not "certified or public prosecutors and were acting the absence of all jurisdiction." (Id.) The County cannot be liable, it reasons, for the "DA's failure to supervise persons that by the plaintiff's own admission were not acting in the role of a prosecutor." (Id.) Plaintiff's argument to this effect questioned the authority of some, but not all, of the Town Attorney Defendants because they had not each demonstrated that they were authorized as Special Assistant DAs by the Suffolk DA's Office. Plaintiff has provided evidence to show that at least some of the Town Attorney Defendants were certified by the Suffolk DA's Office during the relevant time period. (See Second Norton Aff. Ex. 9.)

This debate indicates that an issue of fact may persist as to whether the challenged actions of the Town Attorney Defendants fell under the delegated or supervisory authority of the Suffolk DA's office. Determination of this issue, however, could not absolve the County from liability. Under Monell, a municipality may not be held liable under Section 1983 on the basis of respondeat superior. 436 U.S. at 690-91. The employment status of the Town Attorney

Defendants does not conclude the municipal liability inquiry. Plaintiff's failure to supervise claim asserts that the County is liable for "abdicating all responsibility" for the supervision and oversight of Town zoning prosecutions, despite the statutory duty of the Suffolk DA's Office to oversee prosecutions in the County. (See Pl. Opp. 13-17 (citing N.Y. County Law § 700 and various sources of authority).) These allegations attack the County's system as a whole. The County has failed to refute these core allegations with either law or facts.

Summary judgment is denied to the County on Plaintiffs' Section 1983 claims at this time.

### 2. Town Liability

Building upon the argument presented by the County, the Town argues that it cannot be held liable for the actions of the Town Attorney's Office, because the Town Attorney Defendants appear on behalf of the State of New York (the "State"), not the Town, when they prosecute a criminal action. (Town Mot. 17, citing Baez v. Hennessey, 853 F.2d 73, 77 (1988).) The Town oversimplifies this relationship. A prosecutor's role as a State official is limited to "specific decision[s] of the District Attorney to prosecute." See Walker, 974 F.2d at 301. Decisions regarding supervision and training relate to the chief prosecutor's role as "the manager of the district attorney's office," and in that role, the Town Attorney may act as a municipal policymaker whose actions may give rise to municipal liability. Id. Further, while the court has recognized that the Town Attorney Defendants exercise prosecutorial functions, there is insufficient evidence to fully analogize the role of a Town Attorney to that of a district attorney representing the State.

The reasoning of Baez does not eliminate the Monell claims against the Town because Plaintiff's allegations are not confined to the specific decision to prosecute the Criminal Action

against him.  Plaintiff alleges a host of purported customs and policies, including the reliance by investigators on invalid, unissued C/Os, and the prosecution of property owners to enforce internal Building Department changes to C/Os without providing notice and an opportunity to be heard.  (Am. Compl. ¶¶ 101-18.)  In the absence of discovery, the court will not preclude Plaintiff's Monell claims against the Town at this stage.

The Town also argues that it is free from liability because Plaintiff cannot support a claim against any of the Individual Defendants and does not set forth "any viable civil rights violation." (Town Mot. 20.)  These arguments are baseless.  While the court has dismissed some claims against the Individual Defendants on the basis of their immunity defenses, a municipality may not be held liable under Section 1983 on the basis of respondeat superior.  Monell, 436 U.S. at 690-91.  The availability of immunity to a municipal official or policymaker does not necessarily preclude a Plaintiff's claims for municipal liability premised on the same events.  See Leatherman v. Tarrant County Narc. Intelligence & Coordination Unit, 507 U.S. 163 (1993) (protection from respondeat superior liability does not encompass immunity from suit, as the extension of immunity to municipalities was "flatly contradicted" by Monell);  Owen v. City of Independence, 445 U.S. 622, 638 (1980) ("there is no tradition of immunity for municipal corporations, and neither history nor policy supports a construction of § 1983 that would justify" the extension of individual immunity to defend a suit against a municipality); Ying Jing Gan, 996 at 536-37 (finding for purposes of Monell liability that Manhattan District Attorney was a municipal policymaker, although he was entitled to immunity defenses for personal liability). The court has ruled that Plaintiff's constitutional claims survive in part, and his Monell claims against the Town may proceed to discovery.

## H.  The Declaratory Judgment Claims

Finally, the Town Defendants contend that Plaintiff's claims for declaratory relief should be dismissed because Plaintiff "fails to establish any cognizable civil rights violation" and because "declaratory relief is otherwise inappropriate, moot, and fails to raise a live controversy."  (Indiv. Def. Mot. 23.)  The Town Defendants therefore urge the court to decline to hear Plaintiff's declaratory judgment claims.  Plaintiff essentially responds that the wrongs committed against Plaintiff are capable of repetition, and are continuing, insofar as they challenge alleged municipal policies.

The court is not convinced that each of Plaintiff's requests for declaratory relief "show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment" within the confines of the Declaratory Judgment Act and Article III of the Constitution.  Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941).  Yet the argument advanced by the Town Defendants is too cursory to meet Defendants' burden for summary judgment as to these claims. The Town Defendants' Motion is denied with respect to Plaintiff's claims for declaratory relief, subject to further briefing by the parties.

## V.     <u>Conclusion</u>

The Motions of the Town and Individual Defendants are granted in part and denied in part.  The County's Motion is denied.  The parties may proceed to discovery in a manner consistent with this Memorandum & Order.

SO ORDERED.

s/ Nicholas G. Garaufis_____<br>
NICHOLAS G. GARAUFIS<br>
United States District Judge

Dated: Brooklyn, New York<br>
March 27, 2009