UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
   HOWARD NORTON,

                    Plaintiff/Counter-Defendant,

      -against-

TOWN OF ISLIP, COUNTY OF SUFFOLK,
VINCENT J. MESSINA, JR., *individually and in his
official capacity as Town Attorney for the Town of
Islip*, RICHARD HOFFMAN, *individually and in his
official capacity as Deputy Town Attorney for the
Town of Islip*, RICHARD C. SHERMAN,
*individually and in his official capacity as a Town of
Islip Assistant Town Attorney*, JOANNE HUML,
*individually and in her official capacity as a Town of
Islip Assistant Town Attorney and Director of the
Division of Law Enforcement of the Town of Islip
Office of the Town Attorney*, J. TIMOTHY SHEA,
JR., *individually and in his official capacity as a
Town of Islip Assistant Town Attorney and Director
of the Division of Law Enforcement of the Town Of
Islip Office of the Town Attorney*, RONALD P.
STABILE, JR., *individually and in his official
capacity as Investigator for the Town of Islip Office
of the Town Attorney*, and CARL MALTESE,
*individually and in his official capacity as Division
Director of the Division of Building of the Town of
Islip Department of Planning and Development, and
as Town of Islip Director of Building and Housing*,

                Defendants/Counter-Plaintiffs.
------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**04-CV-3079 (NGG) (WDW)**

NICHOLAS G. GARAUFIS, United States District Judge.

      Before the court is a motion filed by Plaintiff/Counter-Defendant Howard Norton ("Plaintiff") under Local Civil Rule 6.3 and Federal Rule of Civil Procedure 54(b) seeking reconsideration of the court's Orders granting summary judgment to Defendants Richard C. Sherman, Joanne Huml, and Ronald P. Stabile, Jr. (together, the "Investigative Defendants"), and Defendant Town of Islip (the "Town"), on the basis of qualified and governmental immunity.

1

For the reasons set forth below, Plaintiff's motion is GRANTED and the court VACATES these Orders in part.

## I. BACKGROUND

The complete account of this long-running saga may pieced together from this court's decision in Norton v. Town of Islip (Norton I), 239 F. Supp. 2d 264 (E.D.N.Y. 2003), those dated March 27, 2009 (Dkt. 104), September 2, 2011 (Dkt. 143), and May 7, 2012 (Dkt. 149), and the Second Circuit's opinion in Norton v. Town of Islip (Norton II), 378 F. App'x 85 (2d Cir. 2010). The court sets forth below only those facts and procedural history that are relevant to the instant motion.

In short, Plaintiff claims that the County of Suffolk (the "County"), the Town, and certain employees violated federal and state law through their investigation and criminal prosecution of Plaintiff for his use of the premises located at 725 Ferndale Boulevard in Central Islip, New York as a two-family dwelling.

To be more complete, in November 1986, Plaintiff purchased the property even though the area had been restricted to single-family dwellings because a certificate of occupancy ("C/O") in the Town's records certified the home as a "legal nonconforming two-family dwelling." See Norton I, 239 F. Supp. 2d at 266. In 1988, Plaintiff wished to rent out the home and submitted a rental permit application to the Town. Id. Although the Town had issued three C/Os in 1988 that again certified the home as a "legal nonconforming two-family dwelling," it denied Plaintiff's application. Id. at 266-67. Plaintiff then filed an Article 78 proceeding in New York state court, which proved unsuccessful. Id. at 267. In 1990, at Plaintiff's request, the Town issued yet another C/O certifying the home as a "legal nonconforming two-family dwelling" (the "1990 C/O"). Id.

2

On March 20, 1997, the Town initiated a criminal action against Plaintiff through an accusatory instrument that charged Plaintiff with violating the Town Code by using the home as a two-family dwelling in violation of the "last issued" C/O. (See Accusatory Instrument (Ex. 6 to Norton Aff. (Dkt. 97-7)) at 11).) On September 12, 1997, Huml, an Assistant Town Attorney, faxed an unsigned and undated document purporting to be the "last issued" C/O to Plaintiff's counsel in support of these allegations (the "File Copy C/O"). (See Am. Compl. (Dkt. 5) ¶ 77; File Copy C/O (Ex. G to Def. Mot. for Summ. J. (Dkt. 93-10)).) The File Copy C/O contained certain notations absent from the 1990 C/O, including: "Non conforming use of two-family [dwelling was] lost due to non-use in excess of one consecutive year and failure to apply for repair permits." (Id.) Plaintiff challenged the validity of this document in the criminal action, and the Town responded by issuing a properly signed and dated C/O that also incorporated these added notations (the "1997 C/O").

While still contesting the criminal action, Plaintiff filed suit in this court under 42 U.S.C. § 1983 to obtain a declaratory judgment stating that the 1990 C/O was the last valid C/O and that the 1997 C/O had been issued in violation of Plaintiff's right to procedural Due Process. (Am. Compl. ¶ 40.) On January 2, 2003, this court issued the declaratory judgment Plaintiff sought, and the criminal action was eventually dismissed. See Norton I, 239 F. Supp. 2d at 274 & n.6.

Plaintiff then filed the instant suit challenging the criminal proceeding itself, alleging malicious prosecution and malicious abuse of process in violation of 42 U.S.C. § 1983 and New York common law. (Am. Compl. ¶ 1.) All Defendants subsequently moved for summary judgment arguing, among other things, that based on the record created in Plaintiff's first § 1983 suit they were entitled to either absolute or qualified immunity. (See Dkt. 93.) On March 27, 2009, the court granted the motion in part and denied it in part. (Mar. 27, 2009, Mem. & Order

3

(Dkt. 104).) As relevant here, the court: (1) held that absolute immunity barred the federal claims seeking money damages from Defendants Sherman, J. Timothy Shea, Jr., Vincent J. Messina, and Richard Hoffman (id. at 26-33); (2) held that qualified immunity barred the federal claims against Huml (id. at 25-26); (3) held that Stabile was not entitled to federal qualified immunity (id. at 35-38); (4) denied the motions filed by the County and the Town in full (id. at 43-49); and (5) denied all Defendants' motions challenging Plaintiff's claim for a declaratory judgment stating that the criminal action violated Plaintiff's rights, (id. at 50). It did not address New York immunity law.

On appeal, the Second Circuit reversed in part. See Norton II, 378 F. App'x at 90. It held that all of the individual defendants were entitled to qualified immunity from Plaintiff's federal claims because it was "objectively reasonable" for them to believe that, based upon the File Copy C/O and the fact that the home was unquestionably being used as a two-family dwelling, there was probable cause to commence a criminal prosecution. Id. at 88. It also stated that the individual defendants would have had "no reason" to doubt that the File Copy C/O was an accurate copy of the operative C/O in the Town's files. Id. at 89. Plaintiff asserted that issues of fact as to the individual defendants' bad faith precluded summary judgment on the federal immunity question. Id. But the court held that Plaintiff's "mere assertions of bad faith 'd[id] not reintroduce into qualified immunity analysis' an 'inquiry into officials' subjective intent.'" Id. (quoting Anderson v. Creighton, 483 U.S. 635, 641 (1987)). The Second Circuit remanded for this court "to address, in the first instance, the individual defendants' argument that they are entitled to immunity with respect to plaintiff's state-law claims." Id. It explicitly "intimate[d] no view on the issue." Id.

4

On remand, the court granted the renewed motions for summary judgment filed by Messina, Hoffman, Huml, Sherman, and Stabile.[1] (Sept. 2, 2011, Mem. & Order (Dkt. 143) ("September Opinion") at 6.) The court held that because Messina and Hoffman had engaged in prosecutorial rather than investigative conduct, they were entitled to absolute immunity under New York state law. (Id.) Relying on its previous summary judgment decision, the court held that Huml, Sherman, and Stabile were entitled to qualified immunity because their investigatory conduct had a "reasonable basis" in law. (Id. (citing Mar. 27, 2009, Mem. & Order at 25-26, 27-29).) The court also denied the summary judgment motions filed by the Town and the County in full. (Id. at 7-10.)

On September 15, 2011, Defendants filed a motion for reconsideration arguing, in part, that the Town and County could not be held liable under Monell v. Department of Social Services, 436 U.S. 658 (1978). (See Def. Mot. for Reconsideration (Dkt. 144); Def. Reconsideration Mem. (Dkt. 145) at 5.) Plaintiff filed a timely opposition. (See Pl. Reconsideration Opp'n Mem. (Dkt. 147).)

On May 7, 2012, the court denied Defendants' motion. (See May 7, 2012, Mem. & Order (Dkt. 149) ("May Opinion").) The court did, however, dismiss "[a]ny remaining state law claim against the Town . . . for malicious prosecution" on the basis of governmental immunity, which applies "'when official action involves the exercise of discretion or expert judgment in policy matters, and is not exclusively ministerial.'" (Id. at 3 n.1 (quoting Haddock v. City of New York, 75 N.Y.2d 478, 483 (1990)).)

On May 23, 2012, Plaintiff filed notice of his own motion for reconsideration. (Pl. Notice of Mot. for Reconsideration (Dkt. 150).) He argues that: (1) in its September and May

---

[1] The court dismissed the malicious prosecution claim against Shea on the basis of absolute witness immunity. (Sept. 2, 2011, Mem. & Order (Dkt. 143) at 7.)

Opinions, the court erroneously failed to apply New York's bad faith exception to qualified immunity with respect to the state malicious prosecution claims against Sherman, Huml, and Stabile; and (2) its subsequent dismissal of those claims against the Town, which was "presumably based on this Court's prior dismissal of Plaintiff's malicious prosecution claims" against those individual defendants, was also erroneous. (Pl. Reconsideration Mem. (Dkt. 155-1) at 2-4.)

## II. STANDARD OF REVIEW

Under Local Civil Rule 6.3, the standard for a motion for reconsideration is "strict." Schrader v. CSX Transp, Inc., 70 F.3d 255, 257 (2d Cir. 1995). Such motions may be granted: (1) if the court overlooks critical facts; (2) if it overlooks controlling decisions that could have changed its decision, see id.; (3) in light of an intervening change in controlling law; (4) in light of new evidence; (5) to correct clear error; or (6) to prevent manifest injustice, see Virgin Atl. Airways v. Nat'l Mediation Bd., 965 F.2d 1245, 1255 (2d. Cir. 1992). See also Rollins v. N.Y. State Div. of Parole, No. 03-CV-5952 (NGG) (RLM), 2007 WL 539158, at *2 (E.D.N.Y. Feb. 16, 2007) ("A motion for reconsideration may be granted only if a court overlooked (1) factual matters that were put before it on the underlying motion or (2) controlling legal authority."). "A motion for reconsideration is 'not intended as a vehicle for a party dissatisfied with the Court's ruling to advance new theories that the movant failed to advance in connection with the underlying motion . . . [n]or . . . a chance for a party to take a 'second bite at the apple.'" WestLB AG v. BAC Fla. Bank, No. 11-CV-5398 (LTS) (AJP), 2012 WL 4747146, at *1 (S.D.N.Y. Oct. 4, 2012) (citations omitted). However, "[i]t is within the sound discretion of the district court whether or not to grant a motion for reconsideration." Markel Am. Ins. Co. v. Linhart, No. 11-CV-5094 (SJF) (GRB), 2012 WL 5879107, at *2 (E.D.N.Y. Nov. 16, 2012).

Similarly, under Federal Rule of Civil Procedure 54(b), the court has the inherent power to modify any decision "that adjudicates fewer than all the claims . . . at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); cf. Transaero, Inc. v. La Fuerza Aera Boliviana, 99 F.3d 538, 541 (2d Cir. 1996) ("[A] district court is vested with the power to revisit its decision before entry of final judgment . . . ."). The moving party must demonstrate that "manifest injustice will result if the court opts not to reconsider its earlier decision." In re Rezulin Prods. Liab. Litig., 224 F.R.D. 346, 350 (S.D.N.Y. 2004); see also Virgin Atl., 956 F.2d at 1255 ("The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" (citation omitted)). One clear error that may justify reconsideration is the court's failure to address a properly raised and meritorious argument. See Murdaugh v. City of New York, No. 10-CV-7218 (HB), 2011 WL 1991450, at *1 (S.D.N.Y. May 19, 2011) (reconsideration appropriate "'where a court overlooks controlling decisions or factual matters that were put before it in the underlying motion . . . and which, had they been considered, might have reasonably altered the result before the court'" (citation omitted)).

## III. DISCUSSION

### A. Timeliness

Plaintiff's first hurdle is that the majority of the instant motion is extremely late.[2] Plaintiff maintains that the court erroneously granted summary judgment on his malicious prosecution claims against the Investigative Defendants in its September Opinion.

Yet on October 17, 2011, Plaintiff opposed Defendants' own motion for reconsideration

---

[2] The portion of Plaintiff's motion challenging the court's grant of summary judgment to the Town in its May Opinion is timely. Although Defendants rightly point out that this decision was "premised on and dictated by" the September Opinion (Def. Reconsideration Opp'n Mem. at 2), the court did not actually decide the issue until its decision dated May 7, 2012, which was filed on May 9, 2012 (see May Op). Plaintiff's motion for reconsideration was noticed within the two-week period dictated by Local Civil Rule 6.3. (See Pl. Notice of Mot. for Reconsideration (filed on May 23, 2012).)

7

and did not challenge the court's decision. (See Pl. Reconsideration Opp'n Mem.) It was not until after the court ruled on that motion on May 7, 2012, that Plaintiff first complained of the September Opinion. (See Pl. Notice of Mot. for Reconsideration (filed May 23, 2012).)

But "regardless of the timeliness" of a Rule 54(b) motion, the court has broad discretion to revisit an issue. See Rockland Exposition, Inc. v. Alliance of Auto. Serv. Providers of N.J., No. 08-CV-7069 (KMK), 2012 WL 4049958, at *36 (S.D.N.Y. Sept. 19, 2012). For the reasons set forth in Part III.B, the court recognizes that it committed clear error and overlooked controlling authority when it failed to apply the bad faith exception to New York qualified immunity law and considers the importance of correcting this error to outweigh the interests served by the deadlines set forth in the Local Rules.

### B. Error in the September and May Opinions

#### 1. Qualified Immunity for Investigative Conduct

To begin, it should be emphasized that no party challenges the court's previous holding that, under New York law, the Investigative Defendants' investigative, as opposed to prosecutorial, conduct is not shielded by absolute immunity; it may be protected only by qualified immunity. (See Sept. Op. at 5-6; see also Mar. 27, 2009, Mem. & Order at 25-26 ("Huml may invoke qualified immunity for any actions taken to encourage Investigator Stabile to provide a statement in reliance upon the File Copy C/O . . . ."), 27 (the allegations against Sherman of "conspiring to *create* false evidence [implicates] an investigatory function, entitled only to qualified immunity"), 35-38 (describing Stabile's role as an investigator).) Although these findings were first made as part of the court's federal immunity analysis, the same distinction between prosecutorial and investigative conduct holds in New York. See Johnson v. Kings Cnty. Dist. Attorney's Office, 763 N.Y.S.2d 635, 640 (N.Y. App. Div. 2d Dep't 2003) ("[P]rosecutors enjoy only qualified immunity when acting in an 'investigative . . . capacity.'"

8

(citation omitted) (alteration in original)); Gardner v. City of New York, 824 N.Y.S.2d 768, 768 (N.Y. Sup. Ct. 2006) ("Only qualified immunity applies . . . when a prosecutor is . . . performing an investigative or administrative function."); cf. Lore v. City of Syracuse, 670 F.3d 127, 165 (2d Cir. 2012) (denying absolute immunity to a government lawyer's comments to the press under New York law because they were "made before there was any pending litigation"); Shapiro v. Town of Clarkston, 656 N.Y.S.2d 682, 684 (N.Y. App. Div. 2d Dep't 1997) (granting absolute immunity to prosecutors because "the criminal charges had already been lodged and the criminal justice process commenced"); Rodrigues v. City of New York, 602 N.Y.S.2d 337, 342 (N.Y. App. Div. 1st Dep't 1993) ("[L]ike the federal courts, the [New York] courts take a functional approach when analyzing claims of immunity.").

However, the qualified immunity standards under federal and New York law are distinct. "In contrast to the federal standard, which is 'objectively reasonable reliance on existing law,' . . . the New York standard for entitlement to qualified immunity has both objective and subjective components." Lore, 670 F.3d at 166 (citation omitted). "The objective component distinguishes between official acts that are 'discretionary' and those that are 'ministerial' . . . , making [qualified] immunity available only with respect to those that are discretionary." Id.; see also Mon v. City of New York, 78 N.Y.2d 309, 313 (1991) ("If a functional analysis of the actor's position shows that it is sufficiently discretionary in nature to warrant immunity, it must then be determined whether the conduct giving rise to the claim is related to an exercise of that discretion."). "The subjective component makes qualified immunity entirely unavailable if there are 'undisturbed findings of bad faith.'" Lore, 670 F.3d at 166 (quoting Della Pietra v. State of New York, 71 N.Y.2d 792, 795 (1988)). A defendant asserting qualified immunity bears the burden of disproving bad faith by a preponderance of the evidence, see id. at 167, which is often

a fact-intensive question best resolved by a jury, see, e.g., id. (reversing for failure to instruct the jury to "make a factual finding as to whether [the defendant] had acted in good faith, a fact that was essential to his state-law defense of qualified immunity"); Rosen v. City of New York, 667 F. Supp. 2d 355, 363 (S.D.N.Y. 2009) ("[Because] the Court cannot determine whether [the defendant] acted unreasonably *or in bad faith*, the Court cannot find as a matter of law that [the employee] or the City are entitled to immunity." (emphasis added)).

Defendants argue that under New York law, if a defendant's conduct was objectively reasonable (as the Second Circuit held, see Norton II, 378 F. App'x at 89-90), it must also have been in good faith. (See Def. Reconsideration Opp'n Mem. (Dkt. 153) at 4.) Although Defendants cite to courts that at first blush seem to grant qualified immunity solely on the basis of reasonableness, a closer look demonstrates that in those instances the plaintiffs did not raise the bad faith issue. See, e.g., Jones v. Parmley, 465 F.3d 46, 64 (2d Cir. 2006) ("Plaintiffs' remaining state-law claims focus on the reasonableness of the [defendants' actions], including whether [their] actions resulted in . . . malicious prosecution . . . ."). In fact, the Second Circuit has recognized that objective reasonableness does not foreclose a finding of bad faith, see Rohman v. N.Y. City Transit Auth., 215 F.3d 208, 218-19 (2d Cir. 2000) ("[T]hat it was objectively reasonable for [the individual defendant] to believe that he was not engaged in malicious prosecution does not necessarily foreclose a reasonable jury from concluding that he was [engaged in malicious prosecution, an element of which is malice]."), which is reflected by the fact that here, after finding that the conduct of the Investigative Defendants was objectively reasonable, the Second Circuit remanded for this court to decide the state law immunity question, Norton II, 378 F. App'x at 89. In short, under New York law a defendant's claim of qualified immunity is undone by her failure to disprove *either* unreasonableness *or* bad faith.

With these conclusions of law in mind, the court now recognizes that it erred in dismissing the state malicious prosecution claims against the Investigative Defendants and the Town solely because the Investigative Defendants' "investigative work had a 'reasonable basis.'" (Sept. Op. at 6.) As discussed above, the Investigative Defendants are entitled to qualified immunity only if they can satisfy their burden of proving good faith.

Defendants maintain that the court "specifically addressed the 'bad faith' element of New York qualified immunity." (Def. Reconsideration Opp'n Mem. at 3.) The court did mention bad faith when delineating the New York standard. (See Sept. Op. at 5 ("Qualified immunity 'shield[s] government [officials] except when there is bad faith or the action taken is without a reasonable basis' in law." (alterations in original) (quoting Arteaga, 72 N.Y.2d at 216)). But the court failed to *apply* the bad faith exception to the Investigative Defendants. It granted their motion for summary judgment solely on the ground that their investigatory conduct had a reasonable basis in law, and did not determine whether there was a factual issue of bad faith. (See id. ("Because [the Investigative Defendants'] investigative work had a 'reasonable basis,' they are entitled to qualified immunity from Norton's state-law malicious prosecution claims." (citing Mar. 27, 2009, Mem. & Order at 25-26, 27-29)).) For this reason, contrary to Defendants' assertions, Plaintiff is not attempting to "rehash claims already fully confronted and decided by the Court in its prior orders." (See Def. Reconsideration Opp'n Mem. at 3.) Rather, as described above, the court overlooked a matter of controlling law. This error is precisely the type that should be corrected through a motion for reconsideration or under Federal Rule of Civil Procedure 54(b), and the court therefore does so. See Murdaugh, 2011 WL 1991450, at *1.

## 2. Governmental Immunity

"Unlike cases brought under § 1983, municipalities may be liable for the common law torts, like false arrest and malicious prosecution, committed by their employees under the doctrine of *respondeat superior*." L.B. v. Town of Chester, 232 F. Supp. 2d 227, 239 (S.D.N.Y. 2002); see also Rodriguez v. N.Y. Transit Auth., 938 N.Y.S.2d 229, 229 (N.Y. Sup. Ct. 2011) (allowing claim of malicious prosecution to proceed to trial against both the employee and the municipality under a theory of respondeat superior). "No municipal custom or policy need be proven to establish the liability of [a c]ity for violation of . . . state law, for '[m]unicipalities surrendered their common-law tort immunity for the misfeasance of their officers and employees long ago.'" Lore, 670 F.3d at 168 (quoting Tango v. Tulevech, 61 N.Y.2d 34, 40 (1983)). If an employee is found to have violated state law, the municipality will also be liable. See id. at 168-69 ("[T]o the extent that the jury found that [the employee] violated the [Human Rights Law] . . . the City is liable for that violation."); see also Rosen, 667 F. Supp. 2d at 363 ("[Because] the Court cannot determine whether [the individual defendant] acted unreasonably or in bad faith, the Court cannot find as a matter of law that [the employee] *or the City* are entitled to immunity." (emphasis added)).

In its May Opinion, the court clarified that any remaining state law malicious prosecution claim against the Town was dismissed. (May Op. at 3 n.1.) Because the court had previously granted summary judgment to all of the individual defendants, the Town could not be held liable under state law. But as detailed above, the court erroneously granted summary judgment to the Investigative Defendants. This, in turn, requires that Plaintiff's state malicious prosecution claim be reinstated against the Town. See Lore, 670 F.3d at 168.

12

### C. Renewed Motion and Supplemental Briefing

The court could now proceed to decide the merits of Plaintiff's claim that the Investigative Defendants' have failed to prove that no reasonable jury could find that their investigative conduct was in bad faith. However, given the extensive history of this case and the voluminous discovery in Plaintiff's first § 1983 case, the court cannot adequately address the issue without additional briefing. Accordingly, the Investigative Defendants and the Town are granted leave to file a renewed motion for summary judgment addressing solely whether there is an issue of fact as to the good faith of the Investigative Defendants' conduct.

## IV. CONCLUSION

Plaintiff's motion for reconsideration under Local Civil Rule 6.3 and Federal Rule of Civil Procedure 54(b) is GRANTED. Insofar as the court's September and May Opinions granted the motion for summary judgment filed by the Investigative Defendants and the Town on the basis of qualified and governmental immunity under state law, those Orders are VACATED. The Investigative Defendants and the Town are GRANTED leave to file a renewed motion for summary judgment on the basis of qualified immunity as set forth above. The parties shall confer and submit a proposed briefing schedule to the court by January 25, 2013. In the event that the Investigative Defendants and the Town do not wish to file a renewed motion, they shall immediately inform the court so that it may set a trial date to resolve all remaining claims.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
January 7, 2013

NICHOLAS G. GARAUFIS
United States District Judge