UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
HOWARD NORTON,

                          Plaintiff,

             -against-

TOWN OF ISLIP, et al,

                        Defendants.
----------------------------------------------------------------X

Docket No.: 04 CV 3079

(PKC) (SIL)


**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF HIS OMNIBUS MOTION TO COMPEL PURSUANT
TO F.R.C.P. 37AND
IN OPPOSITION TO DEFENDANTS' MOTION
TO COMPEL A PRIVILEGE LOG**


LEEDS BROWN LAW, P.C.
*Attorneys for Plaintiff*
One Old Country Road, Suite 347
Carle Place, N.Y. 11514
(516) 873-9550

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ...................................................................... ii

PRELIMINARY STATEMENT ...................................................................1

I.      DEFENDANTS HAVE NOT COMPLIED WITH THIS COURT'S ORDER ..................4

II.     DEFENDANTS DID NOT MEET THEIR BURDEN TO DEMONSTRATE NON-WAIVER.............................................................................8

III.    OTHER PRIVILEGE LOG DEFECTS ...............................................13

IV.     JUDGE BOYLE'S DECISION ......................................................15

V.      PLAINTIFF'S DISCOVERY REQUESTS ARE RELEVANT TO HIS REMAINING MERITORIOUS CLAIMS ...............................................15

VI.     FURTHER DEPOSITIONS OF STABILE, HUML AND THE TOWN .........................18

VII.    PROPORTIONALITY OF DISCOVERY .............................................19

VIII.   GOOD FAITH WAIVER ..........................................................21

IX.     *IN CAMERA* REVIEW IS NOT WARRANTED...........................................22

X.      PLAINTIFF'S INTERROGATORRIES TO THE TOWN, HUML AND STABILE .......22

XI.     PLAINTIFF IS NOT REQUIRED TO PRODUCE A PRIVILEGE LOG ........................23

XII.    CONTENTION INTERROGATORIES ...............................................28

XIII.   THE COUNTY OF SUFFOLK ......................................................30

CONCLUSION..............................................................................32

# TABLE OF AUTHORITIES

Page

**CASE LAW**

Aiossa v Bank of Am., N.A.,
2011 U.S. Dist. LEXIS 102207 (E.D.N.Y. Sep. 12, 2011)............................................................11

Alaska Elec. Pension Fund v Bank of Am. Corp.,
2017 U.S. Dist. LEXIS 8141 (S.D.N.Y. Jan. 20, 2017) ...............................................................12

Annunziato v. Collecto, Inc.,
304 F.R.D. 360 (E.D.N.Y. 2015) ....................................................................................................30

Arista Records LLC,
2011 U.S. Dist. LEXIS 42881 (S.D.N.Y. Apr. 14, 2011)...............................................................21

Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.,
141 F. Supp. 2d 320 (E.D.N.Y. 2001) ............................................................................................15

Boose v. City of Rochester, 7
1 A.D.2d 59 (4th Dep't 1979)..........................................................................................................17

Calabro v. Stone,
225 F.R.D. 96 (E.D.N.Y. 2004)......................................................................................................11

Carl v. Edwards,
2017 U.S. Dist. LEXIS 156378 (E.D.N.Y. Sep. 25, 2017) ...................................................... 25-26

Cayemittes v. City of NY,
2015 U.S. Dist. LEXIS 172933 (E.D.N.Y. Dec. 29, 2015) ............................................................29

Celle v. Filipino Reporter Enters. Inc.,
209 F.3d 163 (2d Cir. 2000) ...........................................................................................................17

Certain Underwriters at Lloyd's v. Amtrak,
2017 U.S. Dist. LEXIS 23680 (E.D.N.Y. Feb. 17, 2017).........................................................8, 14

Foster v. City of NY,
2016 U.S. Dist. LEXIS 14594 (S.D.N.Y. Feb. 5, 2016) ...............................................................21

Gulf Is. Leasing, Inc. v Bombardier Capital, Inc.,
215 F.R.D. 466 (S.D.N.Y. 2003) ............................................................................................. 12-13

Heien v. North Carolina,
135 S. Ct. 530 (2014) ................................................................................................16, 17

Holmes v. McGuigan,
184 Fed. Appx' 149 (3rd Cir. 2006) ..........................................................................26

In re CIRCLE K Corp.,
199 B.R. 92, 98 (Bankr. S.D.N.Y. 1996) ...................................................................22

In re Grand Jury Investigation,
339 F.3d 527 (2nd Cir 2005)......................................................................................12

In re Leslie Fay Cos. Sec. Litig.
152 F.R.D. 42 (S.D.N.Y. 1993) ..................................................................................12

In re Methyl Tertiary Butyl Ether ("MTBE") Products Liab. Litig.
2014 WL 494522 (S.D.N.Y. February 6, 2014) ........................................................28

In re Natural Gas Commodity Litig.
2005 U.S. Dist. LEXIS 11950 (S.D.N.Y. June 21, 2005).........................................12

In re Rivastigmine Patent Litig.,
237 F.R.D. 69 (S.D.N.Y. 2006) ...........................................................................10, 14

In re Steinhardt Partners, L.P.,
9 F.3d 230 (2d Cir. 1993)...........................................................................................12

In re Vitamin C Antitrust Litig.,
2011 U.S. Dist. LEXIS 5466 (E.D.N.Y. Jan. 20, 2011) ...........................................12

Jackson v. Fed. Express,
766 F.3d 189 (2d Cir. 2014) .......................................................................................23

Johnson v. J. Walter Thompson U.S.A., LLC,
2017 U.S. Dist. LEXIS 126185 (S.D.N.Y. Aug. 9, 2017).........................................21

Kushner v. Buhta,
2017 U.S. Dist. LEXIS 155981 (D. Minn. Sept. 25, 2017) .......................................14

Lemonedes v. Kazlow & Kazlow (In re Coin Phones, Inc.),
1999 U.S. App. LEXIS 20942, at *7 (2d Cir 1999) ...................................................25

Lidle v. Cirrus Design Corp.,
2009 U.S. Dist. LEXIS 33514 (S.D.N.Y. Mar. 23, 2009) ...........................................4

NML Capital, Ltd. v. Banco Central de la Republica Argentina,
652 F.3d 172 (2d Cir. 2011)..................................................................................15

Norton II,
2015 U.S. Dist. LEXIS 125114 (E.D.N.Y. Sep. 18, 2015)..........................................1

Norton II,
378 Fed. Appx' 85 (2d Cir 2010)...........................................................................16

Norton,
2016 U.S. Dist. LEXIS 7004 (E.D.N.Y. Jan. 21, 2016) ............................................1

Pasternak v. Kim,
2011 U.S. Dist. LEXIS 113998 (S.D.N.Y. Sep. 28, 2011)........................................29

People v. Harris,
154 Misc. 2d 554 (1992) .......................................................................................13

Pierre v. Hilton Rose Hall Resort & Spa,
2016 U.S. Dist. LEXIS 62598 (E.D.N.Y. May 11, 2016) ...........................................9

Prasad v. George Wash. Univ.,
2017 U.S. Dist. LEXIS 168484 (D.D.C. Oct. 12, 2017) ...........................................14

Roth v. County of Nassau,
2017 U.S. Dist. LEXIS 2211(E.D.N.Y. Jan. 6, 2017) ...............................................27

Sarnowski v. Peters,
2017 U.S. Dist. LEXIS 166086 (D. Or. Oct. 6, 2017) ..............................................16

Schanfield v. Sojitz Corp. of Am.,
258 F.R.D. 211, 213, (S.D.N.Y. 2009) ...................................................................25

Scott v. City of Albuquerque,
2017 U.S. App. LEXIS 19423 (10th Cir. Oct 5, 2017) ..............................................16

SEC v. Merkin,
2012 U.S. Dist. LEXIS 108715 (S.D. Fla. Aug. 3, 2012)..........................................20

SEC v. Nadel,
2012 U.S. Dist. LEXIS 8225 (E.D.N.Y. Jan. 24, 2012) ...........................................13

SEC v. Yorkville Advisors, LLC,
300 F.R.D. 152 (S.D.N.Y. 2014) ......................................................................14-15

Simuro v. Shedd,
2017 U.S. Dist. LEXIS 31856 (D. Vt. Mar. 7, 2017) ...................................................17

Starkey v. Birritteri,
2013 WL 3984599 (D. Mass 1999) .............................................................................13

Thompson v. Spota,
2017 U.S. Dist. LEXIS 44572(E.D.N.Y. Mar. 27, 2017) ...........................................18

United States v. Adnan Ibrahim Harun A Hausa,
232 F. Supp. 3d 282 (E.D.N.Y. 2017) .........................................................................4

United States v. Diaz,
854 F.3d 197, 204 (2d Cir. 2017) ..............................................................................16

United States v. Loften,
507 F. Supp. 108 (S.D.N.Y. 1981) .............................................................................11

Vincent v. Mortman,
 2006 U.S. Dist. LEXIS 11213  (D. Conn. Mar. 17, 2006) .........................................18

Wechsler v. Hunt Health Sys.,
1999WL672902 (S.D.N.Y., August 27, 1999) ...................................................... 28-29

Zheng v. Sessions,
679 F. App'x 25 (2d Cir 2017) ...................................................................................18

**STATUTES**

FRCP Rule 26(b)(1)...................................................................................................27

FRCP 26(b)(5)(A).......................................................................................................25

FRCP 37.......................................................................................................................1

## PRELIMINARY STATEMENT

Plaintiff submits this memorandum in further support of his motion pursuant to FRCP 37 to compel discovery and in opposition to Defendants' motion to compel a privilege log.

Defendants characterize their violations of Plaintiff's constitutional rights as "minor" (D's Br., p. 1), hoping to convince this Court that they will prevail on summary judgment, such that further discovery is unwarranted. (D's Br., pp. 12-17). To counter this contention, we provide a brief factual summary and otherwise refer the Court to Plaintiff's Second Circuit "Statement of Facts" ("Ex. 66").

In 1997, Investigator Stabile (under Huml's supervision) commenced a criminal prosecution ("Ex. 67") charging Plaintiff with violating Town Code § 68-40, falsely alleging he had personal knowledge Plaintiff was using his Ferndale premise as a two-family dwelling[1] in violation of its last issued Certificate of Occupancy ("C/O") (Ex. 67). The prosecution was based upon an unofficial, unsigned and undated building division certificate, despite the fact that (a) the Town had never issued a C/O for the Ferndale dwelling as it was constructed prior to 1938 (Pl. Br., p. 24), and (b) the document specifically said, "official copy must have original seal and signature." ("Ex. 68"). The certificate[2] was not stamped "Dept. Copy" and contained asterisked notations claiming that the property had lost its non-conforming use. (Exs. 68 and "69", pp. 24-25). Prior to initiating the prosecution, neither Stabile nor Huml ever reviewed an original or copy

---

[1] Defendants make much of the fact that Plaintiff was allegedly renting the dwelling without a rental permit. (D's Br., pp. 13-14). Such is irrelevant because Plaintiff was not charged with a failure to maintain a rental permit. Instead, he was charged with maintaining the property as a two-family dwelling in violation of the its C/O -- a violation of Town Code § 68-40.

[2] The operative document has been inartfully referred to by the parties, the Norton I court and the Second Circuit as a "C/O." That issue was not litigated by the parties and was not relevant to prior determinations. However, in Norton II discovery we have learned that the 1990 C/O held by the Norton I court to be the last validly issued C/O, is not a C/O. Rather, it is a Town building division certificate with various property related entries on it. (Pl. Br., p. 24).

of the last issued C/O. After Plaintiff's criminal counsel complained the C/O was defective, law enforcement supervisor Huml faxed another invalid, unsigned and unsealed certificate to Plaintiff's criminal counsel to justify the prosecution; this copy was stamped "Dept. Copy." ("Ex. 70, p. 2"). On October 21, 1997, recognizing the continued deficiencies, and to justify the continued maintenance of the prosecution, the Town created a new certificate, which was signed, stamped, dated and contained the revoking notations. ("Ex. 71").

On January 2, 2003, the Norton I court found the Town violated Plaintiff's due process rights by placing revoking notations on his building division certificate and that the last validly issued certificate did not contain revoking notations. 239 F. Supp. 264, 268, 272-76 (E.D.N.Y. 2003). Yet, Defendants still persisted with the prosecution. Finally, upon Norton's motion, the State criminal court dismissed the criminal prosecution. ("Ex. 72").

In 2004, after the Town unsuccessfully petitioned Norton I to SCOTUS (542 U.S. 903 (2004)), Plaintiff commenced Norton II, alleging, *inter-alia*, that the prosecution was initiated and maintained maliciously. Defendants claim this case is meritless because there was probable cause for the prosecution. But, Judge Garaufis already held there was no probable cause for the prosecution because the prosecution was premised on an invalid document. (ECF No., 104, p. 37). Further, the Second Circuit held that it was a "mistake" to initiate the prosecution based upon the unofficial notations, albeit an "objectively reasonable" mistake. 78 Fed. App'x. 85, 88-89 (2d Cir. 2010). In other words, it was a "mistake" to think probable cause existed. This decision was pre-discovery, without our argument that there could have never been probable cause for a C/O violation when no C/O existed. (Pl. Br., p. 24).

As to Monell liability, among other practices, Huml testified that the Town had a practice of relying on uncertified documents to commence all their prosecutions. ("Ex. 73" p. 184). The

additional discovery sought in this motion will help establish that the Town had a practice of prosecuting owners for C/O violations even when C/O's did not exist for pre-1938 construction.

Defendants attempt to make it appear that Plaintiff has sought unnecessary discovery and improperly expanded the scope of this litigation, saying that Plaintiff has "dragged" this case through 13 years of litigation and calling Plaintiff a "career plaintiff" (D's Br., p. 5). Defendants fail to recognize Plaintiff's "career" as a litigant was forced upon him because the Town violated his constitutional due process rights. Norton I, 239 F. Supp. at 272-76.

Further, Defendants are more responsible for the length of the litigation than Plaintiff. They made several motions for summary judgment, pre-discovery. They have repeatedly challenged Plaintiff's efforts to obtain needed discovery.  For example, Defendants complain we deposed Richard Sherman and Richard Hoffmann. (D's Br., pp. 4, 19-20). Defendants vigorously opposed Plaintiff's right to take these depositions and sought to prevent Plaintiff from obtaining a proper privilege log - although log deficiencies were "immediately glaring." (ECF No., 256, "Order," *9). In each example, over Defendants' opposition, this Court found Plaintiff was entitled to the discovery. (See e.g., "Ex. 74", p. 39-40; ECF No., 200, p. 1; "Ex. 75", p. 49; Order, *22). If Defendants did not oppose these proper discovery requests, this case would have proceeded more expeditiously. Defendants cite these as examples of discovery we did not need, using arguments they have already advanced and lost.

Plaintiff's instant motion is necessary because he was only recently alerted to privilege log inaccuracies and Defendants' waivers of privilege. (Ex. 20). Plaintiff moved for a proper privilege log because we observed significant defects when we compared the recently produced documents to the logs, which revealed defects that we were previously unable to detect. (ECF No., 248, pp. 2-4). Thus, our requests and the instant motion are timely.

Finally, Defendants' brief is rife with statements unsupported by affidavits based on personal knowledge,[3] devoid of competent evidence, and is riddled with factual and legal misstatements.[4] Defendants have not demonstrated compliance with this Court's March 9, 2017 Order, and have failed to meet their burden to show that their documents are protected by privileges and/or that privileges have not been waived, and they have not provided a sufficient privilege log.

## I.    DEFENDANTS HAVE NOT COMPLIED WITH THIS COURT'S ORDER

Defendants argue their logs fully identify all of the persons with access, claiming all the documents were always kept in the Town Attorney's office. Defendants' claim is demonstrably false and is not supported by competent evidence. To prove their claim, Defendants provide certifications from Ross, Walsh and Serfaty.[5] (D's Br., p. 11). These lawyers have no personal knowledge about document filing/storage/access during all relevant time-periods and cannot attest to same. (Pl. Br., pp. 1-4).

This Court's Order required Defendants to log all persons with access and when they had that access (Order, *14-15), but counsel's certifications evidence that new searches of Town departments were not performed, and that affidavits were not obtained from persons who sent, received and/or had access to documents despite this Court suggesting such affidavits could be

---

[3] "Assertions of fact set forth in memoranda of law that are unsupported by affidavit, affirmation, testimony or other material of evidentiary weight are insufficient as a matter of law to establish the elements of privilege. <u>Lidle v. Cirrus Design Corp.</u>, 2009 U.S. Dist. LEXIS 33514, at *2 (S.D.N.Y. Mar. 23, 2009).

[4] One example, Defendants repeatedly state Plaintiff's use of his property as a two-family dwelling was illegal (D's Br., p. 12-13), but such is incorrect as Judge Garaufis held there was no probable cause for the prosecution (ECF No. 104, p. 37), the Second Circuit found the initiation of the prosecution was a "mistake," 378 Fed. App'x. 85, 88-89, and the criminal prosecution was dismissed. (Ex. 72). As citizens are innocent until proven guilty, it is irresponsible for counsel to repeat its irrelevant illegal behavior claims.

[5] Courts in this Circuit have uniformly rejected attorney affidavits based on the absence of the attorney's personal knowledge. <u>See United States v. Adnan Ibrahim Harun A Hausa</u>, 232 F. Supp. 3d 282, 286 (E.D.N.Y. 2017) (citing cases).

submitted. (Pl. Br., p. 13, n 17). Defendants claim they spoke to Hertha Trotto (Ex. A, p. 5), yet no affidavit from her is provided. (D's Br., p. 4). Defense counsel's certifications lack evidentiary value and should be rejected.

Other than counsel certifications, Defendants rely on two letters and two affidavits from J. Timothy Shea. Defendants claim that each time a document was created, Shea and/or some unidentified person(s) removed all claimed privileged documents from circulation and stored them only in the Town Attorney's office since 1990 or earlier. But, Shea's statements do not support this and prove otherwise.

Shea's unsworn January 21, 2000 letter identified seven files (Building Dept, Zoning Board of Appeals, Dept Law Enforcement, Dept Code Enforcement, Town Attorney, Tax Assessor and Tax Receiver) (Ex. E). But, the letter does not state those Town files were diligently searched or that privileged documents were retrieved therefrom and relocated to the Town Attorney's office. (Ex. E). The letter does not address access or storage at all, and does not mention any individual Town employee files.

Shea's unsworn March 3, 2000 letter purports to provide RCB with a copy of a tax bill, the contents of the Building Department and Tax Assessor's files. (Ex. F, p. 1). The March 2000 letter provides documents only from two of the seven locations identified in Shea's January 21, 2000 letter. Also, the March 2000 letter does not say that anyone diligently searched for documents or that the sending included any other Building Department file other than a copy of the Building Department's common files - likely the same files provided by an unidentified clerk to Bryan Arbeit during the August 30, 2013 on-site inspection. (D's Br., p. 2). This letter also does not explain what happened to documents sent to/from any individuals in the various departments, nor does it discuss access, either before or after the date of the letter.

5

Also, the copy of the Building Department file Shea sent to RCB in March 2000[6] includes only two of three claimed privilege documents.[7] (Ex. 20, pp. 2-3; Ex. F, pp. 3, 5). The missing document, dated August 21, 1990 (Ex. 20, p. 1), was found in the Building Department in August 2013 (D's Br., p. 6). Thus, Shea's search of the Building Department's files was incomplete or the missing document was elsewhere and later returned to the Building Department file. Regardless, the existence of that document in the Building Department file in 2013 proves that all documents were not removed from circulation or stored only in the Town Attorney's office.

Shea's affidavits (Ex. 8; Ex. B) do not demonstrate documents were kept solely in the Town Attorney's office. (D's Br., pp. 6-7). All the 1999 affidavit says is that attorney-client privileged documents exist and that they were not being provided to Norton. (Ex. B, ¶ 14(C)). The affidavits say nothing about access or removal to the Town Attorney's office.

The 2000 affidavit says all non-privileged documents were compiled and photocopied. It did not say that all privileged documents were compiled. This does not satisfy Defendants burden or prove that the privileged documents were secured. To the contrary, this implies that privileged documents remained in the "various files, maintained by the Town's various departments" (Ex. 8, ¶ 11), commingled with the non-privileged originals, while copies of the non-privileged originals were given to counsel.

Further, Shea's 2000 affidavit says that privileged documents were stored in the "Town Attorney's files and/or Division of Law Enforcement files" (Ex. 76, ¶ 24) (emphasis added). In

---

[6] At the time, the Building Department was subdivided into (among other) Housing, Permits and Fire Prevention. (Ex. 4).

[7] Based on this letter, RCB knew that claimed privileged documents were present in a Building Department file in 2000, but did not advise anyone to remove the original privileged documents from the files, which remained in the Building Department through 2013.

another location in the affidavit, it says that documents were allegedly kept privileged in the "Town <u>and</u> the Town Attorney's Office" (Ex. 76, ¶ 14) (emphasis added). Thus, contrary to Defendants' current claim, Shea's affidavit confirms that not all documents were only stored in the Town Attorney's office.

Shea's affidavits do not discuss removal, access and storage during all relevant time periods. Instead, they confirm that everyone had access, stating that the purpose of all their purported privileged "internal memoranda" were to:

> ensure frank communications between and among the Town Attorney's office, the Towns Division for Law Enforcement, and the **various Town's various departments and Town officials, employees and staff concerning actual or potential legal disputes.**

(Ex. 76, ¶ 17) (emphasis added). Thus, Defendants admit these documents were circulated to low level "employees and staff" and there is no competent evidence that these "employees and staff" needed claimed privileged communications to perform their jobs. (<u>infra</u>., pp. 9-11). Indeed, this explains why Shea left the privileged documents in the various files, when he compiled the non-privileged documents for RCB.

Additionally, documents logged on Defendants' <u>Norton I</u> log range in date from 1988 to 1999. (Ex. 4). These documents were sent, created and/or shared by/amongst persons in various departments including but not limited to the Building Department, Law Enforcement, the Town Attorney's Office, Planning, Permits and Fire Prevention.[8] Defendants have not submitted proper affidavits stating that any (let alone all) documents were removed from general circulation and/or always delivered by each sender/recipient (including outside of the Building Department) to the Town Attorney's Office. Defendants' "New Log" shows RCB sent claimed privileged documents to the Building Department after 1998, to Law Enforcement in 2001 and to Shea at a Melville law

---

[8] Pl. Br., pp. 4-5; Pl. Ex. 4, Doc. Nos. 010, 011, 014, 017, 33-34, 44-45, 56 and 69.

firm. (Ex. 5, pp. 3, 13, 15; Pl. Br., p. 7). Neither Giedraitis, Maltese nor any other person(s) have provided an affidavit stating who had access to their documents, or where individual Town employee documents were filed/stored.

Finally, Defendants misleadingly imply that in 2013, Bryan Arbeit performed a physical on-site inspection of all documents contained within the various Town departments and divisions outside of the Town Attorney's Office. Defendants then argue that he found no privileged documents in the search which proves that privileged documents were not interspersed among the various Town files. (D's Br., p. 2). Their factual premise is incorrect. (See Dec. Arbeit, "Ex. 98", ¶¶ 1-9). Arbeit did not search all Town files and only searched a limited number of files that were moved and vetted by counsel. (Id.). Regardless, whatever Arbeit saw in 2013 or 2014, as curated by counsel, does not meet Defendants' burden to establish who had access during all relevant time periods, or why those persons with access had a need to know legal advice.

In sum, Ross, Serfaty and Walsh do not have personal knowledge concerning access/filing/storage for all relevant time periods. (Pl. Br., pp. 1-8). Defendants' logs do not establish a chain of custody or system of protection. Shea's letters/affidavits do not support Defendants claim that documents were removed from general circulation, from each Town department, each sender, recipient, on each occasion. Defendants were required to provide competent evidence regarding all persons with access and when, but have not and cannot do so. Thus, Defendants have failed to comply with the Order.

## II.    DEFENDANTS DID NOT MEET THEIR BURDEN TO DEMONSTRATE NON-WAIVER

Defendants failed to meet their burden to demonstrate their logged/unlogged documents were "in fact kept confidential" and that waiver did not occur by granting access to low-ranking personnel with no "need to know" the contents of the documents to perform their jobs. Certain

Underwriters at Lloyd's v. Amtrak, 2017 U.S. Dist. LEXIS 23680, at *69 (E.D.N.Y. Feb. 17, 2017) ("elements of privilege are typically established through sworn statements").[9]

### A. Defendants Position is That Everyone Needed to Know Privileged Information

Defendants are bound by their admissions that all privileged documents concerning Plaintiff's Ferndale property were accessible by low-ranking Town personnel (in various Town departments), as they needed to know the "history" of the property. (Pl. Br., p. 4).[10] Defendants statements to Judge Chen are consistent with Shea's affidavit that all "officials, employees and staff" had a need to know. ("Ex. 76," ¶ 17). Yet, Defendants argue their admissions to Judge Chen concerned only three claimed privileged documents. (D's Br. pp. 6-7). The transcript speaks for itself. Defendants' statements evidence a Town-wide practice and policy. Judge Chen understood counsel to be referencing all documents:

> your position then is everybody in the building department who has access has some reason to know any attorney generated privileged document and that can't be so

(Ex. 7, pp. 10-11) (emphasis added). Judge Chen recognized the Town's record keeping was insufficient to maintain privileges, stating:

> the reason I am sure that your clients are upset about it because it has ramifications for the rest of how you keep the rest of your file keeping for the department.

("Ex. 75", p. 32). Serfaty discussed other Town Departments, stating:

> I'm in a -- we're in a difficult situation because I, if -- I can't list every single Town department and say, and say, well, this is what they, this is what they relate to, relate to the property. . .

(Ex. 7, p. 13). Also, Walsh admitted that the intent of the memoranda and privileged documents

---

[9] The party opposing disclosure has the burden to establish the elements of privilege, including that the documents were "in fact kept confidential" and that the privilege has not been waived. Norton II, 2015 U.S. Dist. LEXIS 125114, at *4-5 (E.D.N.Y. Sep. 18, 2015).

[10] Pierre v. Hilton Rose Hall Resort & Spa, 2016 U.S. Dist. LEXIS 62598, at *9 (E.D.N.Y. May 11, 2016) ("tactical discovery decisions").

"was to inform anybody," ("Ex. 75", p. 31), as did Shea (Ex. 76, ¶ 17) ("officials, employees and staff") and many other documents listed on the <u>Norton I</u> log were prepared in the same manner, and sent to various departments. (Ex. 4). This was confirmed when Judge Chen stated:

> so the problem you're having here is that your Town attorneys have commingled their actual analysis and strategy and discussions that are sent to the building department heads into this general file, very much as referenced in <u>Horowitz</u> where they talk about the indiscriminate mingling with other routine documents of the corporation . . .

(Ex. 75, p. 12). Thus, legal advice was used to keep <u>everyone</u> informed, as explicitly confirmed by Shea's affidavit. (Ex. 76, ¶ 17). Serfaty would not have mentioned other departments if it was not a concern. Thereby, admitting he could not log and/or provide affidavits regarding all the persons in each department with access to documents. But, this is what is necessary to maintain claims of privilege, and if Defendants do not know and cannot demonstrate who had access to the documents, privileges are waived.[11] Moreover, Defendants can identify no system of protection because none existed.

### B. Documents Were Accessible by Personnel that Did Not Need to Know

Defendants argue that persons identified on the face of <u>Norton I</u> documents (Ex. 4) were defendants in the Article 78 proceeding and/or monitoring the litigation. (D's Br., p. 7). Yet, there are no affidavits explaining why clerk Joan Ely; T. Greene of Fire Prevention; Marilyn Stienly of the Permits Bureau and other low-ranking "employees and staff" needed claimed privileged communications to perform their job. Defendants continue to claim that all Town "officials" needed to know the contents of all privileged documents. But, Judge Chen already informed Defendants you "can't claim that all the people in the department who are officials, whatever that

---

[11] <u>In re Rivastigmine Patent Litig.</u>, 237 F.R.D. 69, 83 (S.D.N.Y. 2006) (requiring demonstration of applicability of a privilege claim "when a dispute aro[se] two decades after the communication."); (Pl. Ex. 7, pp. 13-14) (explaining this is the "essence" of a privilege claim.

means, have a need to know." (Ex. 7, p. 13). Defendants have not defined job titles and do not explain why named and/or unidentified "officials" (including outside the Building Department) needed privileged information, as opposed to a separate memo, to perform their jobs (if that was even needed in all instances here). Further, it was more than just "officials" as Shea confirmed that it was "officials, employees and staff" (i.e. everyone) (Ex. 76, ¶ 17).

Defendants blanketly claim that everyone working for the Town in any capacity is their "client," or an "official" and that privilege applies because some of the Town personnel employed in different departments were attorneys. (D's Br., p. 9). Just because a person is an attorney does not render privileged everything she says or does. United States v. Loften, 507 F. Supp. 108, 112 (S.D.N.Y. 1981). Without affidavits, we do not know who was spoken to as a "client" and in what capacity they received claimed privileged documents.

For example, Defendants have not provided an affidavit from attorney DeSalvo[12] or anyone else explaining why a law enforcement employee needed to know the contents of claimed privileged documents to do his job, as opposed to (if anything) a separate property status memo. Defendants refer to Doc. 016 (Ex. 4, p. 11) stating that DeSalvo had a "need to know" because it concerned the outcome of the Article 78 proceeding. Such could have and should have been provided in a separate memo *sans* legal advice. (Ex. 7, p. 30). Also, "outcome" information and/or "follow up enforcement" is not work product prepared in aid of imminent litigation.[13] Without competent sworn affidavits, Defendants have not met their burden to demonstrate that every person (all "officials, employees and staff") who received, sent and/or had access to documents was a

---

[12] The need to apply privilege cautiously and narrowly is heightened in the case of corporate staff counsel. Aiossa v Bank of Am., N.A., 2011 U.S. Dist. LEXIS 102207, at *9 (E.D.N.Y. Sep. 12, 2011). There is no evidence documents were sent to DeSalvo to give or procure legal advice.

[13] The mere contingency that litigation could result is not sufficient to trigger protection under the work product doctrine. Calabro v. Stone, 225 F.R.D. 96, 99 (E.D.N.Y. 2004).

"client," that they "needed to know" and/or that the documents are privileged.

Defendants claim they were always careful to advise their clients to keep communications confidential, and were careful to mark communications as privileged. (D's Br., pp. 5-6). The record is devoid of an affidavit stating who gave this purported advice, when or how it was communicated, and Defendants have not shown that a litigation hold was ever sent. Judge Chen found that Defendants articulated no system of protection for privileged documents and merely marking documents is insufficient. Some documents were not even marked confidential. (Pl. Br., p. 11; see also Ex. 76, ¶ 16 (saying "many" not "all" privileged documents were marked privileged).

### C. Defendants Have Failed to Prove Joint Defense/Common Interest Privilege

Defendants state Plaintiff's waiver argument based on documents exchanged between the Town Attorney's Office, individual defendants (and/or their counsel) and/or other Town departments is "conclusory." (D's Br., p. 9). But, Defendants have waived claimed privileges for all documents as they have failed to meet their burden to establish a joint defense/common interest agreement. In re Vitamin C Antitrust Litig., 2011 U.S. Dist. LEXIS 5466, at *19 (E.D.N.Y. Jan. 20, 2011) (Pl. Br., p. 8). Any such showing must be based on competent evidence[14], usually through affidavits. Defendants do not address this argument at all.

Regarding documents shared with prosecutors, Defendants do not address In re Natural Gas Commodity Litig. or In re Steinhardt Partners, L.P.; see also Alaska Elec. Pension Fund v Bank of Am. Corp., 2017 U.S. Dist. LEXIS 8141, at *9 (S.D.N.Y. Jan. 20, 2017) ("[v]oluntary production of such materials to the government is inconsistent with the purposes behind the attorney work product doctrine"); In re Leslie Fay Cos. Sec. Litig. 152 F.R.D. 42, 44 (S.D.N.Y.

---

[14] Gulf Is. Leasing, Inc. v Bombardier Capital, Inc., 215 F.R.D. 466, 472 (S.D.N.Y. 2003) ("The burden cannot be met by mere conclusory or *ipse dixit* assertions in unsworn motion papers authored by attorneys").

1993). Instead, Defendants cite In re Grand Jury Investigation (which concerns the nature/scope of a privilege claimed in proceedings before a federal grand jury) arguing the traditional rationale for privilege applies with special force in the government context. 399 F.3d 527, 534 (2d Cir. 2005). Here, the Town exchanged municipal, investigation, complaint-related, and prior litigation documents with prosecutors[15] who have no client and no attorney-client relationship could attach.[16] Privilege in this context is more appropriately reviewed under In re Steinhardt Partners, L.P. and its progeny. Defendants have not provided an explicit confidentiality agreement and/or proper affidavits and no special protection (or privilege powers) should be afforded just because the Town provided personnel to act as prosecutors in Plaintiff's prosecution for the benefit of the County DA. (ECF No., 143, pp. 6-7). Waiver is warranted.

## III.   OTHER PRIVILEGE LOG DEFECTS

Defendants' privilege logs also remain defective as follows:

**A. Dates -** Defendants claim approximate dates satisfy their log obligations. (D's Br., p. 8). Defendants speculate that certain documents were prepared within a five-year span (Doc. 185), possibly after Norton lost the Article 78 (Doc. 013) and some documents and handwritten notes are undated. (e.g. Doc. 379-382, 506). Absent proper dates, we cannot assess if the material is work product, as we cannot tell if Defendants met their burden to demonstrate they reasonably believed they were threatened with litigation. See Gulf Is. Leasing, Inc. 215 F.R.D. at 476 ("a party asserting work product protection will generally submit affidavits or similar evidence establishing that it held such a belief"); SEC v. Nadel, 2012 U.S. Dist. LEXIS 8225, at *6 (E.D.N.Y. Jan. 24,

---

[15] Defendants cite, *inter alia*, Starkey v. Birritteri, 2013 WL 3984599, *1 (D. Mass 1999), cases that presuppose: the proper party (here the County) is claiming privilege; no waiver had already taken place via the sharing of documents.

[16] E.g. People v. Harris, 154 Misc. 2d 554, 558 (1992) (prosecutor has no client).

2012) (SEC did not meet its burden absent "affidavits of persons with first-hand knowledge.").

**B. Authors/Recipients -** Defendants incorrectly claim they identify all authors/recipients on all privilege log entries. (D's Br., p. 8). All entries identified as "comments"[17] do not identify the author/recipient and/or subject matter. The logs are rife with speculation and claims that notes were written by unidentified "administrative staff," "personnel of the Town Attorney's office"[18] and "an official of the Planning Department". (See Doc. Nos. 001-03, 013, 041, 050-53, 077-79, 080-81, 185, 246, 379-82, 506, 548-50, 794-795, 1212 (Ex. 4); and 4-17–509-539 (Ex. 5, p. 12). Attorney-client privilege is unavailable if the author is unknown. In re Rivastigmine Patent Litig. 237 F.R.D. at 83. Defendants lack affidavits stating who authored notes and/or comments, or that they were to further legal advice or prepared in anticipation of litigation.

**C. Note Transcriptions -** At minimum, Plaintiff should be provided with Defendants transcriptions of the Documents he has received or will receive via this motion. (E.g. Ex. 20).

**D. Other Log Defects -** Based on Defendants' brief, we have these additional issues:

- Document 4-17-289: Defendants admit "[t]he first fax cover sheet was apparently not kept" (D's Br., p. 10).[19]

- Documents accompanying 4-17-893: Defendants argue the unproduced documents consist of a February 14, 2003 order, but it is one page long ("Ex. 77") and the fax is 28 pages long. Defendants must produce the entire sent/received fax.

**E. Continued Corrections -** Defendants continue to make changes via their brief,

---

[17] "[C]omments can mean anything from a formal exposition or commentary to a mere remark." Prasad v. George Wash. Univ., 2017 U.S. Dist. LEXIS 168484, *23-24 (D.D.C. Oct. 12, 2017).

[18] Identifying persons on a log as an employee is insufficient to show that the circulation of the withheld documents was limited to those of its employees with a need to know. Certain Underwriters at Lloyd's, 2017 U.S. Dist. LEXIS 23680, at *69, n 5. (E.D.N.Y. Feb. 17, 2017).

[19] Absent the "fax cover," we do not know how many copies were made, who else received the documents and whether the fax contained personal commentary. See Kushner v. Buhta, 2017 U.S. Dist. LEXIS 155981, at *10-11 (D. Minn. Sept. 25, 2017) (personal opinions do not reflect legal strategies and/or legal opinions).

including amending one log certification, but not both. (D's Br., p. 11, n. 5). [20] Defendants do not justify their untimely changes and should not be given special consideration. [21] Defendants were not "looking for a chance to redo the privilege log". (Pl. Br., p. 1, n 2). Defendants privilege claims are a moving target. Given the number of deficiencies, erroneous descriptions, omissions, re-engineering, untimely corrections[22] and absence of proper affidavit evidence, waiver is appropriate.

## IV.    JUDGE BOYLE'S DECISION

Defendants cite Judge Boyle's 2000 Norton I decisions, finding certain Norton I documents privileged by applying a then minority of district decisions that placed the burden on the movant to demonstrate waiver. However, it is now beyond question that the burden is on Defendants. (Order, *4-5). Regardless, Judge Boyle's decisions are not binding. Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris, Inc., 141 F. Supp. 2d 320, 323 (E.D.N.Y. 2001) ("Judicial findings in other cases proffered as evidence are generally characterized as inadmissible hearsay"). Also, Norton I discovery decisions lack preclusive effect in Norton II. See NML Capital, Ltd. v. Banco Cent. de la Republica Arg., 652 F.3d 172, 185 (2d Cir. 2011).

## V.    PLAINTIFF'S DISCOVERY REQUESTS ARE RELEVANT
    TO HIS REMAINING MERITORIOUS CLAIMS

Defendants improperly re-brief their prior failed summary judgment arguments, attempting

---

[20] To the extent that Defendants post Pl. Exs. 4 and 5 offer new details pertaining to the subject matter, authors and recipients of certain documents, they are untimely. SEC v. Yorkville Advisors, LLC, 300 F.R.D. 152, 165 (S.D.N.Y. 2014).

[21] The SEC, "[l]ike any ordinary litigant, [] must abide by the [FRCP][and] is not entitled to special consideration [in] discovery." Yorkville Advisors, LLC, 300 F.R.D. at 166.

[22] Plaintiff was alerted to log inaccuracies after receiving the three claimed privilege documents, ordered produced by Judge Chen. (Pl. Ex. 20). Plaintiff asked for a proper log on this basis. In connection with the most recent log productions, Defendants produced 699 documents, many with redactions. (Pl. Ex. 5). Defendants production accuracy claims lack credibility.

to show Plaintiff's case is meritless and that the requested discovery is not relevant/proportional. (D's Br., pp. 12-27).[23] Yet, this case has survived multiple pre-discovery summary judgment motions (e.g. ECF 104, 143) and a Second Circuit appeal. In discovery, we learned additional facts supporting our claims, including that Plaintiff was prosecuted for purportedly violating a C/O when the Ferndale premises never had a C/O. (Pl. Br., p. 24). We do not set forth the entire merits of our case. Rather, we briefly address Defendants' arguments.

**A. Qualified Immunity Under New York State Law** - Defendants argue the Second Circuit's ruling in <u>Norton II</u> "easily show[s]" Stabile and Huml possess qualified immunity on Plaintiff's New York State malicious prosecution claims, however, the Circuit explicitly expressed no view on the state law issue. (D's Br., pp. 2, 13) (citing <u>Norton II</u>, 378 Fed. Appx' 85 (2d Cir 2010)). Under Huml's supervision/direction, Stabile signed an accusatory instrument under oath on personal knowledge falsely claiming Plaintiff violated the last issued C/O, when he lacked personal knowledge and the Ferndale premises did not even have a C/O. As both Huml and Stabile submitted documents containing false information - discovery related to malice and lack of good faith (solely in Defendants' possession) is relevant and needed.

**B. <u>Heien v. North Carolina</u>** - Defendants cite <u>Heien v. North Carolina</u>, 135 S. Ct. 530, 533 (2014). In <u>Heien</u>, the court discussed the applicability of a reasonable mistake of law, as it applies to officers in the field [who] must make factual assessments on the fly[24]. <u>Id.</u> at 539; <u>United States v. Diaz</u>, 854 F.3d 197, 204, n. 10 (2d Cir. 2017) (quick decision). <u>Heien</u> stressed:

> qualified immunity [] depends on an inquiry distinct from whether an officer has

---

[23] <u>Sarnowski v. Peters</u>, 2017 U.S. Dist. LEXIS 166086, at *11 (D. Or. Oct. 6, 2017) (it is "improper" to argue the merits of a summary judgment motion in response to a discovery request.)

[24] Following Justice Kagan's concurrence, the analysis of a reasonableness mistake of law or fact should only be applied when it involves a "really difficult" or "very hard question of statutory [or factual] interpretation." 135 S. Ct. 530, 541. (Kagan, J concurring), which is not present here.

committed a constitutional violation and that the [constitutional-violation] inquiry is not as forgiving as the one employed in the distinct context of deciding whether an officer is entitled to qualified immunity for a constitutional or statutory violation.

Scott v. City of Albuquerque 2017 U.S. App. LEXIS 19423 (10th Cir. Oct 5, 2017). Heien did not involve probable cause for a prosecution, or New York state qualified immunity. The Second Circuit has yet to apply an "arguable probable cause" concept beyond actual probable cause to arrest. Simuro v. Shedd, 2017 U.S. Dist. LEXIS 31856, at *16 (D. Vt. Mar. 7, 2017) ("it has mentioned this concept in the context of malicious prosecution only in passing"). The Second Circuit implicitly rejected Defendants' argument by remanding the case to decide whether the individuals could meet their burden to demonstrate good faith. 378 Fed. Appx' 85. [25]

Neither Stabile nor Huml had to make difficult assessments of statutory law or facts, let alone "on the fly". Heien, 135 S. Ct. at 533. They had unfettered access to building department records (Ex. 13, pp. 45-46) and ample time to secure a valid document prior to commencing and continuing the six-year long criminal prosecution. In Norton I the Town admitted that Giedraitis' notations on Plaintiff's Ferndale certificate had no legal effect and is estopped from arguing the contrary. ("Ex. 95", pp. 14-20). Therefore, Heien is inapplicable. Regardless, a jury is free to infer malice[26] from an absence of probable cause, both Judge Garaufis and the Second Circuit (by implication) found there was no actual probable cause and absent probable cause it is "difficult to conceive how a prosecution [] could be initiated with any other than bad motives".[27]

---

[25] Also, if a court in the Second Circuit was even to assess whether a prosecution was conducted with "arguable probable cause" it would look at a corrected document to determine if the inaccuracies are material to the actual probable cause determination. (Simuro, 2017 U.S. Dist. LEXIS 31856 at *27-28). Here, the correct 1990 certificate ("Ex. 78") shows Plaintiff had a legal non-conforming use.

[26] See Celle v. Filipino Reporter Enters. Inc., 209 F.3d 163, 183 (2d Cir. 2000) ("Malice may be proved inferentially because it is a matter of the defendant's subjective mental state, revolves around facts usually within the defendant's knowledge and control, and rarely is admitted").

[27] Boose v. City of Rochester, 71 A.D.2d 59, 70 (4th Dep't 1979).

C. **Norton III** - Defendants argue Norton III demonstrates Plaintiff's federal malicious prosecution claim cannot survive. (D's Br., p. 18) (678 Fed. Appx. 17 (2d Cir. 2017)).  Judge Chen recognized that Norton II and Norton III seem "very distinct factually." (Ex. 74, p. 13). Norton III was dismissed pre-discovery because no practice or policy was found. In Norton II, Huml testified that the Town had a practice of relying on uncertified documents to commence prosecutions. (Ex. 73, p. 184). We will show it was Town policy/practice to prosecute pre-1938 constructed dwellings that did not have a C/O for C/O violations. Further, we will prove that Huml, not Vincent Messina, was the final policy maker. The Second Circuit's Norton III holding does not impair Norton II claims.

## VI.    FURTHER DEPOSITIONS OF STABILE, HUML AND THE TOWN

"Courts will typically re-open a deposition where there is new information on which a witness should be questioned." Thompson v. Spota, 2017 U.S. Dist. LEXIS 44572, at *6 (E.D.N.Y. Mar. 27, 2017); Vincent v. Mortman, 2006 U.S. Dist. LEXIS 11213 *4-5 (D. Conn. Mar. 17, 2006) Here, the facts demonstrate "good cause" for further depositions.

A. **Huml and Stabile**- Defendants argue that Huml does not recall reviewing documents in Plaintiff's case (D's Br., p. 28), but showing a witness privileged documents may refresh a recollection such witness saw such documents.[28] Defendants admit it is possible Huml accessed a file (perhaps even the prosecution file) in an "investigatory" capacity (D's Br., p. 29) when she was asked to provide a copy of the last issued C/O. (D's Br., p. 17). Defendants do not refute that Huml received a claimed privileged communication from then Town Attorney Cimino (Pl. Br., pp. 6). We also know that privileged documents were stored in Law Enforcement. (Ex. 76, ¶ 24) where

---

[28] See Zheng v. Sessions, 679 F. App'x 25, 26 (2d Cir 2017) ("Zheng testified that she could not remember if she had made a copy, not that she had never done so").

both Stabile and Huml worked and that Law Enforcement was located in a separate building from the Town Attorney's Office. (Pl. Br., p. 7 n 11). Further, Stabile was involved in more than merely charging the Plaintiff. (D's Br., p. 32, n 13). Stabile's interrogatory response merely stated that he does "not recall any [] meetings." (Ex. 27). Stabile conferred with prosecutor Sherman about criminal discovery ("Ex. 79", pp. 58-59) and testified that when he received a more than a year old case that his "protocol" was to go to the Building Department and review the C/O (Ex. 13, pp. 46-47), where he would have seen the privileged documents, despite his testimony that he did not recall seeing any such documents and did not remember "exactly" the scope of his investigation. (Ex. 81, p. 47). His testimony does not preclude that he saw and/or reviewed other documents. Plaintiff has received approximately 2,500 documents since the individuals' depositions, including the three claimed privileged documents found in the Building Department and anticipates receiving additional documents via this motion. Plaintiff hopes showing Huml and Stabile such newly received documents may refresh their memories/will provide further insight into their good faith claims. (Pl. Br., p. 30).

     **B. 30(b)(6) Witness** – in addition to our moving arguments (Pl. Br., pp. 26-29), Olmeda's recent testimony reveals more regarding Giedraitis' involvement ("Ex. 82" p. 79)).[29] A 30(b)(6) exam is required to further explore the Town's policy decisions, document filing/storage (including spoliation) and why the Town so intensely for so long pursued Plaintiff.

---

[29] Defendants criticize Plaintiff for deposing Olmeda in 2016. In response to Plaintiff's discovery request about handwriting on a Notice of Violation, Defendants produced an affidavit from Olmeda in May 2016. (Ex. P), which largely motivated the decision to depose him. Defendants trivialize Olmeda's 2016 testimony that when he retired, he threw out the notes. (D's Br., p 35). The notes belong to the Town and should have been disclosed. Olmeda testified that Commissioner Giedraitis (the boss of his boss, Maltese) post his Ferndale inspection told him to add a 68-40 charge to the notice because it is non-conforming use. (Ex. 82, p. 79). Olmeda did not know "one way or another and [had] no basis to conclude that there was a violation at the premises," claiming the owner "is supposed to call me and show me whether the complaint is right or wrong". (Id. pp. 58-59). This may evidence policy maker Giedraitis' desire to extinguish Plaintiff's non-conforming use and malice.

VII.    **PROPORTIONALITY OF DISCOVERY**

Plaintiff's requests are proportional:

**A. Not Privileged:** Defendants have not met their burden to demonstrate the documents are privileged and/or that waiver did not occur. (Supra, pp. 4-14)**.**

**B. Relevance:** Defendants' argument that the privileged documents are irrelevant is conclusory and they conceded the documents are relevant and "otherwise discoverable" by placing them on their privilege log. SEC v. Merkin, 2012 U.S. Dist. LEXIS 108715, at *12-13 (S.D. Fla. Aug. 3, 2012).

In addition, Defendants' opposition brief provides evidence of malice and demonstrates a heightened need for the documents. Giedraitis testified in Norton I that his policy decision to place notations on plaintiff's certificate was merely to "refer prospective home buyers to statements concerning the nonconforming use made in the state court opinion dismissing Plaintiff's Article 78 proceeding." Norton I, 239 F. Supp. 2d 264, 274, n 6. This testimony was adopted by the Town in Norton II. ("Ex. 83," pp. 352-53). Defendants now claim (presumably from claimed privileged document information) the Building Department placed the notations on the certificate because they were "concerned that a property owner could lose an Article 78 challenge but nevertheless continue to illegally use the property" (D's Br., p. 14). So, while Norton still had a legal non-conforming use, the Town maneuvered around the 1990 certificate to create an improper basis upon which to charge Norton for a violation he never committed. Documents related to Giedraitis' policy decision, malice and Ex. 20 are relevant.

**C. Access/Costs/Burdens:** Plaintiff is a citizen who was denied a proper privilege log and underlying documents by a municipality with unlimited taxing power/substantial resources. When compared to the Town, Plaintiff's resources are relatively limited. The documents are in

Defendants' sole possession and claimed to be privileged, such that Plaintiff has no access to this information. The burden on Defendants is miniscule. If waiver is found all that would be required by Defendants is to produce documents, which they have presumably compiled for the *in camera* review. Conversely, the benefits to be conferred on Plaintiff include a proper understanding of policy, reasons for implementing Town policies, why Defendants pursued Plaintiff for so long, and other relevant information in the documents that is unknown to Plaintiff. The benefits to Plaintiff outweigh the proper burden placed upon Defendants.

## VIII.   GOOD FAITH WAIVER

Defendants argue Plaintiff's "good faith" waiver argument is meritless because Stabile and Huml did not see, know about, or rely on any of the privileged documents and never claimed to have relied on them in good faith. (D's Br., pp. 33-34). First, the individual may or may have not seen them, not remembering is not denying. (Supra, pp. 1-20). Second, Defendants fail to address Arista Records LLC and Foster (Pl. Br., p. 21); see also Johnson v. J. Walter Thompson U.S.A., LLC, 2017 U.S. Dist. LEXIS 126185, at *26 (S.D.N.Y. Aug. 9, 2017).

In Johnson, corporate defendants claimed that Proskauer Rose conducted an investigation and that they took certain actions based on same in good faith. Id. at *26. The Court held the extent to which the Johnson corporate defendants acted in good faith on the basis of the Proskauer report is dependent upon the totality of the legal advice they received. Id. Similarly, here, the Town, Stabile and Huml relied on and/or ratified the Town's policy decision which was formulated in communication with counsel. (Pl. Br., p. 21). The Town can be held liable under state law *respondeat superior* and therefore Stabile and Huml's "good faith" defense is the Town's defense. Plaintiff is entitled to discover the totality of the legal advice available and received by all defendants. Id., p. 26. Fairness requires Plaintiff be able to understand the totality of Defendants'

claim that they were acting in "good faith." If Defendants rely upon a good faith defense, privileges are waived. If Defendants can move for summary judgment on the limited issue of state law qualified immunity, documents delivered to Plaintiff through waiver would necessarily impact that issue. Thus, this Court should decide the issue and not Judge Chen after close of discovery.

## IX.   *IN CAMERA* REVIEW IS NOT WARRANTED

Defendants have not met their burden to demonstrate privilege and are attempting to disgorge the burden onto the Court. See In re CIRCLE K Corp., 199 B.R. 92, 98 (Bankr. S.D.N.Y. 1996) (*In camera* review is neither appropriate nor preferable as a substitute for the proponent's submission of an adequate record to support a privilege claim) and Local 3 Intern. Broth. of Elec. Workers, AFL-CIO v. N.L.R.B., 845 F.2d 1177, 1180 (2d Cir. 1988) (i*n camera* review is the exception, not the rule); their requests should be rejected.

## X.   PLAINTIFF'S INTERROGATORRIES TO THE TOWN, HUML AND STABILE

Defendants state that Plaintiff is not entitled to answers to his interrogatories because he deposed certain witnesses on topics related to C/C's. (D's Br., p. 34). Plaintiff's interrogatories 16, 17, 20, 21-23, and 25 to the Town, and 9 to Stabile ask if the interrogatory answers equally apply to a C/C (Exs. 28-29) and have not been responded to. The Town's 30(b)(6) witness, Kerry Bassett,[30] merely testified about her belief about the difference between a C/C and a C/O, and that she believed that both could "constitute a building division certificate" (Ex. X., pp. 81-82). Huml and Stabile testified similarly about what they believe (Ex. S, pp. 46-53; Ex. L, pp. 81-85), but we are entitled to know the Defendants' official position regarding same.

Defendants claim that Huml's response to interrogatory 14 is complete, and continue to

---

[30] While the Town has fired Bassett, such is of no-moment. (D's Br., p. 26). "Fired by Islip's Carpenter, Bassett lands in judge's office," available at https://www.newsday.com/long-island/politics/spin-cycle/fired-by-islip-s-carpenter-bassett-lands-in-judge-s-office-1.11523864.

refer to her deposition testimony. Huml's testimony merely indicates that no one from the County DA's office would "come [to the Town] and check" her work and that she did not report directly to the DA. (Ex. S, pp. 206-07). This does not mean that someone from the County was not responsible for supervising and/or assigning Huml's work. The interrogatory is incomplete and should be answered.

## XI.    PLAINTIFF IS NOT REQUIRED TO PRODUCE A PRIVILEGE LOG

Plaintiff need not produce a privilege log because Defendants' demand: (A) is untimely and intended to harass; (B) does not identify "otherwise discoverable" documents; and (C) speculates about privilege waivers based on facts known to Defendants for years.

**A.  Defendants' Demand is Untimely** - A district court should limit discovery if the moving party "has had ample opportunity to obtain the information by discovery in the action." Jackson v. Fed. Express, 766 F.3d 189, 199 (2d Cir. 2014). Defendants never sought this discovery and repeatedly told the Court that they had all the discovery they needed to prevail:

- On June 3, 2013, Judge Chen so-ordered a discovery schedule, where the last date for initial document disclosure would be August 31, 2013 (September 3, 2013 due to the then holiday weekend) (ECF No., 176, p. 1).

- On July 5, 2013, Defendants served their First Joint Request for Production of Documents. (Ex. Z5). On August 13, 2013, Plaintiff responded. ("Ex. 80"). Defendants did not seek a privilege log.

- On September 3, 2013, Defendants did not request a log and signed onto what they considered a "more efficient way" to proceed - a Privilege Log Stipulation.

- On June 13, 2014, Plaintiff served revised responses to Defendants' document requests. ("Ex. 84"). Defendants did not request a privilege log.

- On February 13, 2015, Defendants wrote to Plaintiff claiming, "document discovery has already been completed." ("Ex. 85", p. 2).

- On March 4, 2015, Defendants again claimed "document discovery is closed" ("Ex. 86", p. 2).

- On May 18, 2015 Defendants stated we "don't plan to do any more depositions" ("Ex. 87", p.

39).

- On December 11, 2015, Defendants represented to this Court they were "ready to move for summary judgment and [] looking [to put an] end to this [discovery] process" and "all [their] depositions are completed" ("Ex. 88", pp. 9-10).

- On January 15, 2016, Defendants wrote that Judge Chen had given them a choice, move for summary judgment or complete "targeted discovery"; that they had "heeded Judge Chen's suggest[ion] to complete targeted discovery, and are now prepared to move for summary judgment . . ." ("Ex. 89", p. 8)

- On January 28, 2016, Defendants moved for a scheduling order under FRCP 16(b)(3)(A), asking this Court to "deem [] discovery in this 2004 action completed." (ECF No., 235).

- On February 12, 2016, this Court asked about what's generally outstanding from Plaintiff to the Defendants. Defendants responded, "[n]othing" ("Ex. 90", p. 15). Judge Locke ordered the parties to provide letters identifying all discovery the parties believed was outstanding by March 21, 2016. Defendants' did not provide Plaintiff with any such letter(s) and did <u>not</u> identify additional discovery.

- On April 4, 2016, Defendants objected to Plaintiff's plan to move in Court for a new privilege log as "another effort to delay the close of discovery" (ECF No., 239-3, p. 2)

-  On April 14, 2016, Defendants wrote to the Court, seeking to deny Plaintiff an opportunity to move for a revised and proper privilege log, prior to making this motion. (ECF No., 242)

Yet, on March 26, 2017, Defendants demanded a log for the first time. (Ex. Z2). The demand is retaliation for Plaintiff putting them to the task of producing a log. This should not be viewed as a "good for the goose" situation. Defendants repeatedly proclaimed and more they were done with discovery and had enough information to win the case. In contrast, Plaintiff sought the log only when (a) he received privileged documents that when matched with the then log, revealed that the log was deficient, and (b) it became apparent that Defendants gave access to all employees and likely waived privilege. Defendants explain their delay by claiming that they misinterpreted the Stipulation, but the Stipulation's unambiguous language belies Defendants' pretextual excuse. (Order, *14). Even if counsel misinterpreted the Stipulation (a disingenuous, impossible to believe argument worthy of this Court's *sua sponte* imposition of sanctions), this does not establish "good

cause" for the untimely request.[31] Defendants never mentioned a log until after Plaintiff won the right to a proper log.

**B. Not Otherwise Discoverable** - Defendants do not identify documents held by Plaintiff that are "otherwise discoverable." FRCP 26(b)(5)(A) (Notes of Advisory Committee on 1993 amendments, Par. 5(A)), nor do they identify document responses that are deficient. The FRCP requires no log of non-responsive/irrelevant documents. Schanfield v. Sojitz Corp. of Am., 258 F.R.D. 211, 213, n. 2 (S.D.N.Y. 2009). Defendants do not address Plaintiff's other objections.

**1. Unduly Burdensome** - Defendants' request to log is unduly burdensome. (Dec. Norton, "Ex. 97", ¶¶ 1-5; Dec. Messina; ¶¶ 3-13). A diligent and proper search of Plaintiff's entire litigation files for any documents possibly responsive to the Town's prior Norton II document requests, would require approximately 65,000 documents be re-reviewed. (Ex. 97, ¶¶ 1-5; Dec. Messina; ¶¶ 3-13). Defendants question the sheer number of documents, but may have misunderstood as that number includes documents generated since this litigation's inception, all copies thereof including for example, appellate briefs and appendices, etc. Defendants have not asked that post-inception documents be logged, but they still would have to be reviewed and sorted. (Ex. 97, ¶¶ 1-5; Dec. Messina; ¶¶ 3-13). Defendants argue that since this Court rejected their undue burden claim, Plaintiff's argument should be rejected. But unlike Plaintiff, Defendants' undue burden claim was not supported by affidavits on personal knowledge nor was the scope of the burden otherwise detailed. (ECF 249-1).

**2. Not Relevant** - Defendants failed to make a *prima facie* showing the discovery sought is more than merely a fishing expedition. Carl v. Edwards, 2017 U.S. Dist. LEXIS 156378, at *8

---

[31] Lemonedes v. Kazlow & Kazlow (In re Coin Phones, Inc.), 1999 U.S. App. LEXIS 20942, at *7 (2d Cir. 1999) ("prior mistake of law" does not come close to meeting the standard for demonstrating excusable neglect for the delay).

(E.D.N.Y. Sep. 25, 2017). Defendants speculate that Plaintiff *might* be withholding documents that "could" be relevant for the reasons discussed below. If even these issues are minimally relevant, which they are not, none were significant enough for Defendants to bother to inquire about during depositions, or otherwise, for the last 10 years of this case's existence. Document requests seeking documents evidencing these issues were not interposed, nor were interrogatories related to these issues. To the extent there is any relevance, it is certainly not proportional to the massive burden that Defendants are attempting to force Plaintiff to undertake.

   ***a. Plaintiff's Awareness of Notations and Notices*** -- is irrelevant to any element, defense, or damages. Even if Plaintiff discussed a notice with his counsel prior to the prosecution, such is of no consequence in determining whether Defendants acted with malice or without probable cause, nor does it have any bearing on Town practices. A jury could find Defendants were acting maliciously no matter what Plaintiff knew. Conversely, Defendants are in sole possession of the only relevant discovery (their own state of mind concerning malice/good faith). Similarly, Plaintiff's alleged knowledge of the notations does not affect the probable cause analysis or damages. Moreover, there is no evidence to indicate that Plaintiff had such notice. To the contrary, all the evidence shows that he did not know -- every time he asked the Town for a certificate he was provided one without notations. (<u>E.g.</u>, "Ex. 94", p. 1). There is nothing underpinning Defendants request other than pure speculation and the information could have been obtained from a non-privileged source; specifically, asking Plaintiff.

   ***b. Assurances of No Jail Time***- even if Plaintiff was somehow assured of no jail time (and there is no evidence that he was), Plaintiff need not be jailed to be "seized" within the meaning of the Fourth Amendment.[32] And while fear of jail may be minimally relevant to Plaintiff's garden

---

[32] Defendants cite <u>Holmes v. McGuigan</u>, 184 Fed. Appx' 149, 151-52 (3rd Cir. 2006) for the proposition that charges not subject to incarceration do not amount to a seizure. This is not the law

variety emotional damages claim - to the extent it bears such minimal relevance, it was not significant enough for Defendants to question anyone about, to interpose an interrogatory or document request. Again, this information could have been ascertained from a non-privileged source. All they had to do was ask Plaintiff whether he believed that he could be jailed and if so whether it caused him stress. Also, this is a garden variety emotional damages claim and his belief regarding jail time will have minimal significance in the case.

   ***c. Dealings with Stabile and Huml*** - Defendants also speculate about documents concerning Plaintiff's dealings with Stabile, Huml and others, but this is so overbroad, as is the claim that he could be withholding documents on "any number of highly relevant matters." (D's Br., p. 39). Regardless, neither Stabile nor Huml testified that they even think they may have had any direct dealings with Plaintiff. This is a fishing expedition based upon unbridled speculation that is not even supported by the testimony of the individual defendants.  In sum, Defendants are straining to find any argument of minimal relevance, using pure speculation. They are creating these excuses to put Plaintiff to massive expense for no legitimate reason.

   **3. Not Proportional** - FRCP Rule 26(b)(1) requires that discovery be "proportional to the needs of the case." Roth v. County of Nassau, 2017 U.S. Dist. LEXIS 2211, at *7 (E.D.N.Y. Jan. 6, 2017). Defendants continue to argue they have all the discovery they need to defeat Plaintiff's claims. Thus, no benefit would be conferred on Defendants by putting Plaintiff to the massive burden of searching files hoping such might require a log, to prove speculative theories that have minimal relevance if any relevance.

   **4. Meant Solely to Harass -** We do not believe Defendants declined to previously ask for

---

in New York or the Second Circuit. Norton, 2016 U.S. Dist. LEXIS 7004, at *13 (E.D.N.Y. Jan. 21, 2016) (finding seizure because "what the Second Circuit found most salient in Rohman and Swartz was the applicability of Section CPL § 510.40—*i.e.*, the obligation to return to court whenever an appearance is requested, with its attendant travel restrictions. . .").

a privilege log based upon a Stipulation misinterpretation. Having professed extensive legal experience ("Ex. 91", p. 4), we believe the real reason the log has been demanded is that Defendants are angry about Plaintiff's meritorious privilege log motion and are unable meet their burden to demonstrate privilege. Their Stipulation excuse does not even pass the straight face test. Defendants do not explain why they did not request the log prior to signing the Stipulation. As a retaliatory "*quid pro quo*," Defendants seek to put Plaintiff to significant expense to obtain information Defendants do not need, and never before thought significant.

**5. Defendants Have No Competent Evidence of a Waiver** - Defendants argue Plaintiff should produce a log based on speculated waivers effected between the Norton brothers. (D's Br., p. 39). Defendants cite an agreement between Plaintiff and his brothers agreeing to fund Plaintiff's criminal defense, "recall" a similar agreement in this litigation and state that one of Plaintiff's brothers has been present at many court conferences (Id.), but Defendants have no evidence documents were shared or that waiver occurred. Only now are they articulating this never before mentioned argument. The funding agreement was produced by Plaintiff on August 13, 2013 (prior to the time Defendants executed Stipulation) and Defendants have known that a brother has accompanied Plaintiff to conferences for years. Yet, they never previously raised this issue. They are scraping the bottom of the barrel to put forward any argument to put Plaintiff to the great burden of producing a log that they never saw a need for. In sum, Defendants have articulated no new evidence justifying the untimely log request.

## XII.   CONTENTION INTERROGATORIES

Defendants' cases do not support the proposition that Plaintiff should answer contention interrogatories on issues where he has no affirmative burden of proof. In re Methyl Tertiary Butyl Ether ("MTBE") Products Liab. Litig., relates to interrogatory supplementation. Wechsler v. Hunt

<u>Health Sys.</u>, holds a party must respond truthfully and completely.[33] Both cases presuppose answers are required -- neither discusses burdens of proof.

Second, Defendants' attempt to distinguish <u>Facebook</u> is misplaced. While Local Rule 33.3 is limited to the SDNY, it merely defers contention interrogatories until the conclusion of discovery, whereas the EDNY has no *per se* rule prohibiting contention interrogatories at early stages of discovery. <u>Cayemittes v. City of NY</u>, 2015 U.S. Dist. LEXIS 172933, at *6 (E.D.N.Y. Dec. 29, 2015). <u>Facebook</u> was not decided based on the local rule. Rather, the court found it "would be inappropriate to require Plaintiffs to devise a theory for an element which is not required for their *prima facie* case." 2016 U.S. Dist. LEXIS 89890, at *12-13. Defendants' good faith is not a part of Plaintiff's *prima facie* case.

Third, Defendants argue interrogatories may relate to any matter that may be inquired into under Rule 26(b). (D's Br., p. 37). But, courts have found that contention interrogatories are improper when they seek all facts attempting to elicit a detailed narrative. <u>Pasternak v. Kim</u>, 2011 U.S. Dist. LEXIS 113998, at *6 (S.D.N.Y. Sep. 28, 2011). Defendants' contention interrogatories Nos. 2, 3 and 4, request in detail "<u>all of the bases</u>" on which plaintiff claims the Town, Stabile and Huml engaged in bad faith or acted with malice against plaintiff and for <u>all actions</u> undertaken personally by such defendants. (Ex. Z5) (emphasis added). These interrogatories are overly broad on their face and should be stricken.[34]

---

[33] Ironically, Defendants have failed to completely respond to Plaintiff's interrogatories. <u>Supra.</u>

[34] Plaintiff accepts Defendants' withdrawal of Interrogatory No. 6, but objects to Defendants' mischaracterization of Plaintiff's argument re: Contention Interrogatory No. 5. Plaintiff argues that other "Town officers were acting with malice," but as stated in his moving brief, he has no bad faith <u>claims</u> against any defendant and no malice <u>claims</u> against any defendants other than Stabile, Huml and the Town. As such claims are no longer in the case, Contention Interrogatory No. 5 duplicates Contention Interrogatories Nos. 2, 3 and 4 and is no longer proportional.

## XIII.   THE COUNTY OF SUFFOLK

**A. The County Has Custody and Control Over § 68-40 Prosecution Documents**- the County does not deny and therefore admits it has custody and control over Town Code § 68-40 prosecution documents, including Plaintiff's prosecution documents. (Pl. Br., p. 33).[35] The County does not refute that documents are in a party's custody and control where that party has the "legal right or the practical ability to obtain the documents," even if in the physical possession of a third-party. (Pl. Br., p. 33); Annunziato v. Collecto, Inc., 304 F.R.D. 360, 363 (E.D.N.Y. 2015) ("principal-agent relationship"). The County does not deny that those prosecutions were filed in a court where the County DA had plenary prosecutorial power. (Pl. Br., p. 33). In Annunziato, Judge Tomlinson rejected the same argument advanced by the County here -- that it does not have physical "possession". 304 F.R.D. at 361. Here, the County agreed and abdicated to the Town (its agent) the prosecution of all local Town ordinances, some of which were prosecuted by County SADAs, thus, establishing a principal-agent relationship and legal control. The County claims that favorably terminated prosecutions would require a stipulation to unseal the records. (Cnty Br., p. 3). But, this puts the "cart before the horse" as the County fails to identify if (how many) favorable termination cases exist.

**B. Operations and Procedures Manual from 2010**- in response to our motion, the County produced a copy of the Operations and Procedural Manual updated in March 2010. ("Ex. 92", p. 3). Having admitted this is discoverable, Plaintiff is entitled to the prior versions.

**C. 30(b)(6) Witness** - The County admits that on March 15, 2015, its 30(b)(6) witness, Edward Heilig, was only prepared to discuss the time-period after January 2002 and lacked pre-

---

[35] Also, the County does not argue that the requested documents are irrelevant, non-proportional, immaterial to Plaintiff's claim, nor do they deny that they have not asserted attorney-client privilege or work-product privileges for the requested documents.

30

2002 prosecutorial decisions knowledge. (Cnty Br., p. 1). Heilig did not review the 30(b)(6) topics provided by Plaintiff. (Pl. Br., p. 31). On February 12, 2016, Plaintiff was advised by this Court to move by Omnibus motion for all outstanding discovery - not in piecemeal. (Ex. 90, p. 35). Thus, the County's argument that Plaintiff waived his right to complain about its defects is meritless. Recognizing the deficiencies, the County does not object to producing Heilig for two additional hours. (Cnty. Br., p. 4). However, given the nearly 600 pages of SADA related documents produced in August 2016, additional Town documents/information, the 2010 County Operations Manual just produced, Plaintiff is entitled to the deposition as requested.

     **D. County Interrogatory Responses -** Response to *Interrogatory No. 7* does not indicate which complaints were sent to which bureaus. Response to *Interrogatory 14* does not discuss if the County knows the process for the review of accusatory instruments issued by the Town Attorney's Code Enforcement Division. (Ex. 56). The response to *Interrogatory No. 15* does not answer if the County took any action concerning Plaintiffs prosecution. The County argues that *Interrogatory No. 16* fails to assert a proper time frame. The time frame is defined in the Interrogatory instructions. (Ex. 93, p. 4). The County also argues that Interrogatory 22 does not define "complaint." But, the definition section defines "Complaints" (Ex. 93, p. 5).

     **E. Request for Admissions** - *As to No. 26*, the County does not admit whether the Town's Town Attorney delegated the authority to prosecute local codes to the then Director of Law Enforcement. *As to No. 31*, the County does not admit or deny whether it relied on Town personnel (whether SADA or other) in relation to New York State Statutes and Regulations. The County must admit or deny whether it did so, as this is directly relevant to whether the County, which provided supervision to its County sited prosecutors on these issues, should have provided the same training to its SADAs/Town Attorneys acting as prosecutors on its behalf.

**CONCLUSION**

For the foregoing, this Court should find Defendants have waived any claims of attorney-client and work product privilege. Plaintiff's omnibus motion to compel should be granted in full.

Dated: Carle Place, New York
      November 9, 2017

                              Respectfully submitted,
                              LEEDS BROWN LAW, P.C.
                              _____/s/_____
                              RICK OSTROVE
                              JONATHAN C. MESSINA

cc: All Counsel of Record (via ECF)