UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

HOWARD NORTON,

                              Plaintiff,                    **MEMORANDUM
     -against-                                              AND ORDER**

TOWN OF ISLIP, COUNTY OF SUFFOLK,                          04-CV-3079 (PKC)(SIL)
JOANNE HUML, *individually and in her*
*official capacity as a Town of Islip Assistant*
*Town Attorney and Director of the Division*
*of Law Enforcement of the Town of Islip*
*Office of the Town Attorney*, and RONALD
P. STABILE, JR., *individually*
*and in his official capacity as Investigator*
*for the Town of Islip Office of the*
*Town Attorney*,

                              Defendants.
-----------------------------------------------------------x

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court are Plaintiff Howard Norton's ("Plaintiff" or "Norton") and Defendants' Town of Islip (the "Town"), Joanne Huml ("Huml"), and Ronald P. Stabile, Jr. ("Stabile," and collectively with the Town and Huml, the "Town Defendants") supplemental cross-motions to compel compliance with this Court's October 16, 2018 Amended Memorandum and Order ("10/16/18 Mem. and Order") granting in part and denying in part both Plaintiff's omnibus motion to compel, Docket Entry ("DE") 267, and the Town Defendants' cross-motion to compel, DE [268]. *See* DE [279] (the "10/16/2018 Mem. and Order"). *See* DE [285] ("Pltf.'s Motion"); DE [286] ("Town Defs.' Motion"). For the reasons set forth below, both motions are granted and part and denied in part as detailed herein.

## I.    Background

This action (referred to herein as "*Norton II*") is one in a series of civil rights lawsuits commenced by Norton against the Town, various Town officials, and the County of Suffolk (the "County").  The Court assumes familiarity with the extensive history of the *Norton* litigations and, thus, only provides a summary of the facts and procedural history relevant to the disposition of the instant motions.

In 1997, the Town commenced a criminal action against Plaintiff relating to his use of certain real property within the Town as a two-family dwelling allegedly violating the last issued certificate of occupancy.  *See* Memorandum and Order ("3/27/2009 Mem. and Order"), DE [104], at 3-4.  One year later, Norton commenced an action under 42 U.S.C. § 1983 concerning that prosecution ("*Norton I*").  *Id.* at 5.  As part of discovery in *Norton I*, a privilege log was created for documents dated September 14, 1988 through February 26, 1999.  In 2000, the Honorable E. Thomas Boyle, United States Magistrate Judge, conducted an *in-camera* review of the documents listed on the aforementioned privilege log and found that all but a handful of the documents were protected by the attorney-client privilege and/or work-product doctrine.  *See* 98-cv-6745, August 22, 2000 Order ("8/22/2000 Order"), DE [42].  Judge Boyle's finding was subsequently affirmed by the then-assigned District Judge Nicholas G. Garaufis.  *See* 98-cv-6745, DE [67].

In January 2003, Judge Garaufis issued a judgment in *Norton I* for Plaintiff holding that the Town had denied him procedural due process, and that the certificate of occupancy that formed the basis of the criminal action was not the last validly issued certificate of occupancy.  *See* 3/27/2009 Mem. and Order at 6.  The Town,

however, did not initially withdraw the criminal action against Norton, and the criminal matter was not dismissed until April 23, 2003. *Id.*

In 2004, Plaintiff commenced this malicious prosecution action (*Norton II*), largely over the Town's continuance of the criminal case despite the Court's decision in *Norton I*. Discovery was halted early on and subsequently stayed until 2012. *See* DE [149]. After initial dispositive motion practice, Plaintiff's federal claims against the individual Town Defendants were dismissed on either absolute or qualified immunity grounds. But Norton's state-law malicious prosecution cause of action against the individual Town Defendants and his *Monell* claims against the Town and County remain.[1]

Discovery resumed, and in 2013 counsel for both parties entered into a Privilege Log Stipulation (the "Stipulation"), agreeing that documents subject to either work product protection or the attorney-client privilege need not be logged as it would be "unduly burdensome." *See* DE [249-2]. The Stipulation also states, however, that a privilege log is unnecessary for those documents "unless requested by either party in writing identifying the documents to be logged." *Id.*

On April 17, 2015, Plaintiff moved to compel the Town Defendants to disclose three documents, which had been previously deemed privileged by Judge Boyle. *See* Motion for Discovery re: Waiver or Loss of Privilege ("4/17/2015 Letter Motion"), DE [210]. The Court conducted an *in-camera* review of the three documents, and, although agreeing with Judge Boyle that the documents were privileged, found that

---

[1] On March 21, 2005, this action was reassigned from Magistrate Judge Boyle to Magistrate Judge William D. Wall. *See* Electronic Order dated March 21, 2005. On July 31, 2014, this action was then reassigned from Magistrate Judge Wall to this Court. *See* Electronic Order dated July 31, 2014.

the privilege had been waived because the documents were shown to other Town officials who were not on a "need to know" basis, as well as potentially the public. *See* Memorandum and Order ("9/18/2015 Mem. and Order"), DE [221]. As a result, the Town Defendants were directed to produce the documents. *See* Electronic Order dated 3/3/2016. The Town Defendants moved for reconsideration, which was denied by this Court, *see* DEs [222], [227], and later filed Rule 72 Objections to this Court's decision to presently-assigned District Judge Pamela K. Chen. *See* DE [231]. Judge Chen adopted this Court's findings and directed the Town Defendants to produce the documents. *See* Electronic Order dated 3/3/2016. Norton subsequently demanded that documents subject to either work product protection or the attorney-client privilege be memorialized in a privilege log on December 9, 2015. *See* Declaration of Rick Ostrove, DE [248-1], at Ex. 6, at 9.

Plaintiff then moved to compel the Town Defendants to cure deficiencies in the *Norton I* privilege log for withheld documents dated September 14, 1988 through February 26, 1999 and produce a log for withheld documents dated February 27, 1999 through April 23, 2003 (the date that the criminal action was dismissed). *See* April 5, 2016 Letter Motion, DE [239]. Norton argued, in part, that he had "a number of reasons to believe waiver ha[d] occurred," including the Court's prior ruling that privilege on three documents had been waived. *Id.*

On March 9, 2017, the Court granted Norton's motion to compel. *See* Memorandum and Order ("3/9/2017 Mem. and Order"), DE [256]. The Court directed the Town Defendants to produce privilege logs for withheld documents for both periods. *See id.* The Court dictated that the revised logs should detail where

each document was kept, include all individuals who had access to the documents and when that access was provided. *See id.* Further, the Court instructed that the logs must outline for each document and handwritten note: (i) the date of creation; (ii) the identity of each person who created and received the document, including those copied on it, and the title of each individual; (iii) a more elaborate description, without revealing the substance of the communications, about the basis of the privilege(s); (iv) the subject matter of the document; (v) the privilege(s) being asserted; (vi) where each document was kept; and (vii) each person who has been given access to each of the document's locations and the date that access was provided. *See id.* On April 7, 2017, in response to the March 9, 2017 Order, the Town Defendants provided Norton with both a privilege log for withheld documents dated February 27, 1999 through April 23, 2003 (the "Town of Islip's Privilege Log") and a supplemental *Norton I* privilege log for withheld documents dated September 14, 1988 through February 26, 1999 (the "Town of Islip's Supplemental *Norton I* Privilege Log").

On November 27, 2017, Plaintiff filed another motion to compel. *See* Plaintiff's Omnibus Motion to Compel, DE [267]. Norton argued, *inter alia*, that the Town Defendants had violated the March 9, 2017 Order, thereby waiving privilege because:

(a) The logs failed to properly set forth which individuals had access to the privileged documents;
(b) Individuals lacking a need-to-know had access to the documents;
(c) The logs failed to identify the author, date of creation or subject matter of certain documents;
(d) The logs excluded certain documents from the Town's prosecution file; and
(e) The assertion of a good faith defense to Plaintiff's state-law malicious prosecution claims results in a waiver of privilege.

*See* Plaintiff's Memorandum of Law in Support of Omnibus Motion ("Pltf.'s Omnibus Mem."), DE [267-67].

Norton also requested further responses to, *inter alia*, the following requests to the County:

(a) **Document Request No. 39**:  Any Suffolk County District Attorney's Office criminal action training related documents for County or Town personnel, including, but not limited to manuals, policies, memorandum, guidance material, and the like.

(b) **Document Request No. 40**:  Any Suffolk County District Attorney's Office criminal action related documents for County or Town supervisory personnel, including, but not limited to manuals, Policies, memorandum, guidance material, and the like.

(c) **Interrogatory No. 7**:  State whether the County has a system for processing Complaints concerning State Court criminal prosecutions by Suffolk County towns and villages, and if so, describe the process in specific factual detail.

(d) **Interrogatory No. 14**:  State whether [the County has] know[ledge of] the process for the review of accusatory instruments issued in the Town or Islip Office of the Town Attorney and the Town Attorney's office Code Enforcement Division, and if so, include the names of any specific persons who would review such accusatory instruments, including the identity of any manuals, memorandum training and guidance material reflecting State Court Policies, State Policies, County Policies or Town Policies and any like material concerning the extent of State Court review of Accusatory instruments prior to arraignment of defendants.

(e) **Interrogatory No. 15**:  State and describe in specific factual details all actions [the County] took concerning Plaintiffs criminal prosecution.

(f) **Interrogatory No. 16**:  State whether [the County] know[s] the type of certificate of occupancy or certificate of compliance records which the Town of Islip used and uses to commence and to continue criminal court proceedings and the process and procedure the Town has used and uses in obtaining such records; and if so identify and describe the same.

(g) **Interrogatory No. 22**: Describe all manuals, State Law, County Code, Town Code, State Policy, State Court Policy, County Policy, Town Policy, process and procedure, memorandum, training and guidance material, and the like by which Suffolk County District Attorney's office personnel receive and record Complaints regarding private property.

*See* Pltf.'s Omnibus Mem. at 30-38. Norton further demanded "all Town, Town Code § 68-40 prosecution/court related documents."[2] *See id.* at 32. The County had responded to the above by alternately: (i) objecting based on the requests being overbroad, unduly burdensome, not relevant, and because the relevant timeframe was not sufficiently defined; or (ii) claiming that the documents were not in their possession. *See id.* at 30-38. Finally, Plaintiff demanded a further deposition of the County's Rule 30(b)(6) witness. *See id.* at 34-35.

The Town Defendants opposed Norton's motion and cross-moved seeking, *inter alia*, a log of documents in Norton's possession that had been withheld based on privilege. *See* the Town Defendants' Memorandum of Opposition and Notice of Joint Cross Motion, DE [268].

In its October 16, 2018 Amended Memorandum and Order, the Court first held that the Town's revised privileged logs failed to adequately provide details of who was provided access to the subject documents and when this access was granted, but that the logs otherwise satisfied the March 9, 2017 Order. *See* 10/16/18 Mem. and Order at 16-18. Thus, the Court directed the Town Defendants to "serve revised privilege logs accompanied with affidavits from an individual or individuals with knowledge

---

[2] This demand originally consisted of Document Requests 3, 4, and 24 (seeking various documents identified by the Town in its interrogatory responses), but was subsequently narrowed to a single inquiry. *See* Pltf.'s Omnibus Mem. at 32.

setting forth where each document was kept, including all individuals who had access to the documents and when that access was provided," but declined to find that privilege had been waived. *See id.* at 20. In accordance with the Court's directive, the Town served a declaration (the "Graham Decl.") from assistant town attorney William Graham ("Mr. Graham"). *See* DE [281-1]. The Graham Declaration details the investigation he performed to determine both where the at-issue documents were stored as well has who had access to them. *See generally id.* This "investigation included a review of a lengthy documentary record and interviews with various current and former Town Attorneys and personnel."[3] *Id.* ¶ 3. According to Mr. Graham, *all* logged documents (dating back as far as Norton's 1988 Article 78 proceeding, and also including his criminal prosecution file and the *Norton I* files) were kept securely either in the Town Attorney's office or, briefly, with the law firm of Rosenberg Calica & Birney LLP ("RCB"). *Id.* ¶ 6-7.[4] In addition, Mr. Graham details the measures taken to ensure the security of the documents and describes who had access to each category of relevant files. *See id.* ¶ 14-22. Finally, in response to Plaintiff's instant motion, Mr. Graham submitted a supplemental declaration clarifying some issues raised by Norton in his current motion. *See* DE [286-1] at 1-2 ("Graham Supp. Decl.").

With respect to the County, the Court concluded that Norton was entitled to, *inter alia*, supplementary responses to Interrogatories Nos. 7, 14, 15, 16 and 22, and

---

[3] Mr. Graham conferred with Town personnel dating back to 1988, including discussions with six former and current Town attorneys. *See* Graham Decl. ¶ 18.

[4] This determination was made after "multiple and repeated searches by Town officials." Graham Decl. ¶¶ 7-8.

Document Demands Nos. 39 and 40, along with the narrowed document request previously consisting of Demands Nos. 3, 4, and 24. *See id*. at 25. In addition, the Court permitted Plaintiff to continue the County's 30(b)(6) witness's deposition for a period of five hours, with questions limited to: (i) the County's policies and practices during the period of 1990 to 2001; and (ii) documents exchanged after the initial examination. *See id*. Accordingly, the County served supplemental responses to the relevant interrogatories and document requests on December 13 and 14, 2018. *See* DE [285-8] (the "County's Supplemental Interrogatory Responses"); DE [285-9] (the "County's Supplemental Document Responses," and together with the County's Supplemental Interrogatory Responses, the "County's Supplemental Responses").

Finally, the Court directed Plaintiff to produce a privilege log – conforming to the same requirements of the Town Defendants' log – of all withheld documents in Norton's possession that had been withheld based on privilege. *See id*. at 26.[5] Thus, on December 14, 2018 – after a review of approximately 65,000 pages of documents, supervised by attorney Jonathan Messina ("Mr. Messina") – Plaintiff produced a privilege log that included six responsive documents consisting of 21 pages, some of which were also shown to Norton's brothers. *See* DE [286-1] at 16-22 ("Plaintiff's Log"). Plaintiff's did not produce any additional documents. *See* the Town Defs.' Motion.

Consistent with this action's litigious history, both Norton and the Town Defendants now argue that the October 16, 2018 Amended Memorandum and Order

---

[5] The remaining directives contained in the October 16, 2018 Amended Memorandum and Order are not relevant for the purpose of the instant motions.

has not been complied with. Specifically, Plaintiff contends that the Graham Declaration fails to satisfy the Court's directives because he lacked the requisite knowledge concerning the documents, contradicts previous representations by the Town Defendants, and fails to account for the entirety of the applicable period. *See* Pltf.'s Motion. Norton further asserts that the County's Supplemental Responses remain deficient and that the County's Supplemental Interrogatory Responses are unverified. *See id.*

In their cross-motion, the Town Defendants argue that it is implausible that a review of 65,000 pages of documents could result in a log consisting of only six documents and no further production, and that privilege has likely been waived with respect to any documents that were shown to Norton's brothers. *See* the Town Defs.' Motion. However, in an effort to mitigate the risk of infringing on the privilege between Norton and his lawyers, the Town Defendants do not seek a ruling that a waiver occurred with respect to documents shown to Plaintiff's brothers, and instead request an opportunity to continue Norton's deposition solely to question him with respect to the items listed on Plaintiff's Log in addition to the nearly 65,000 pages of unlogged and purportedly unresponsive documents. *See id.* Norton counters that the documents shown to his brothers remain protected by virtue of the joint defense and/or common interest doctrines. *See* DE [288] ("Pltf.'s Opp."). Plaintiff further objects to another deposition, contending that there has been "more than an ample opportunity to question [Norton] about any relevant questions or concerns." *See id.* n. 1.

## II.    Legal Standards for Discovery Requests

### A.    <u>General Discovery Standards</u>

Pursuant to Federal Rule of Civil Procedure 26:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

Information "is relevant if:  (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." *Vaigasi v. Solow Mgmt. Corp.*, No. 11-cv-5088, 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016) (quoting Fed. R. Evid. 401).

### B.    <u>Document Demands</u>

Rule 34 requires a party to produce all responsive documents within the scope of Rule 26 that are in its possession, custody or control.  *See* Fed. R. Civ. P. 34(a) ("A party may serve on any other party a request within the scope of Rule 26(b) … to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession custody or control: (A) any designated documents or electronically stored information ….").  However, "courts should not grant discovery requests based on pure speculation that amount to nothing more than a fishing expedition …." *Collens v. City of New York*, 222 F.R.D. 249, 253 (S.D.N.Y. 2004) (internal quotation and citation omitted); *see also Tottenham*

*v. Trans World Gaming Corp.*, No. 00-cv-7697, 2002 WL 1967023, at *2 (S.D.N.Y. June 21, 2002) ("Discovery requests cannot be based on pure speculation or conjecture") (internal citation omitted).  Finally, it is well-established that "[m]otions to compel are left to the court's sound discretion." *Mirra v. Jordan*, No. 13-cv-5519, 2016 WL 889683, at *2 (S.D.N.Y. Feb. 23, 2016); *see also Liberty Mut. Ins. Co. v. Kohler Co.*, No. 08-CV-867, 2010 WL 1930270, at *2 (E.D.N.Y. May 11, 2010) ("a motion to compel is entrusted to the sound discretion of the district court").

## C.  Interrogatories

Federal Rule of Civil Procedure 33 permits a party to serve no more than 25 written interrogatories, including discrete subparts.  Fed. R. Civ. P. 33(a)(1).  An interrogatory may relate to any matter that may be inquired into under Rule 26(b)(1).  The general aim of this discovery device is to "expeditiously narrow the scope of the litigation, reduce the element of surprise, serve as admissions for trial, and in a significant matter avoid unnecessary discovery and minimize expense." *Trueman v. New York State Canal Corp.*, No. 09-cv-049, 2010 WL 681341, at *2 (N.D.N.Y. Feb. 24, 2010).  To that end, the responding party is required to answer each interrogatory "separately and fully under oath."  Fed. R. Civ. P. 33(b)(3).  Thus, the Rule explicitly requires the responding parties to "provide the best answer they can based upon information within their possession." *Trueman*, 2010 WL 681341, at *2 (citing Fed. R. Civ. P. 33(b)(3)).

To ensure that each interrogatory is answered "separately" and "fully," *see* Fed. R. Civ. P. 33(b)(3), the responding party is required "to make an inquiry and obtain information to answer the interrogatories … fully and completely …." *Edebali v.*

*Bankers Standard Ins. Co.*, No. 14-cv-7095, 2016 WL 4621077, at *2 (E.D.N.Y. Sept. 6, 2016) (internal quotation and citations omitted). Where a party, despite conducting a diligent inquiry, is nevertheless unable to provide a responsive answer, any efforts used should be set forth in detail to ensure a sufficient response is interposed. *Id.* Further, "an answer to an interrogatory must be completed within itself and, it should be in a form that may be used at trial." *Id.* As a result, "[r]eference to depositions, other answers to the interrogatories, other document production, the complaint itself, or any other documents are improper and thus unresponsive." *Trueman*, 2010 WL 681341, at *3.

## III. Discussion

Applying the standards listed above, and for the reasons set forth below, both Plaintiff's and the Town's Motions are granted in part and denied in part. The Court considers each motion in turn.

### A. Norton's Motion

Plaintiff's Motion – seeking a ruling that both the Graham Declaration and County's Supplemental Responses are insufficient – rests on his argument that neither the Town Defendants nor the County adequately complied with the October 16, 2018 Amended Memorandum and Order. The Court disagrees.

#### i. The Town's Privilege Logs

The Court first concludes that Mr. Graham's investigation and resulting declarations satisfy the requirements of the Court's October 16, 2018 Amended Memorandum and Order, directing the Town Defendants to "serve revised privilege logs accompanied with affidavits from an individual or individuals with knowledge

setting forth where each document was kept, including all individuals who had access to the documents and when that access was provided." 10/16/18 Mem. and Order at 20. As an initial matter, the Court is satisfied that Mr. Graham's investigation renders him competent to describe the storage and access of the documents at issue. Mr. Graham attests that he conducted an investigation that included a review of a lengthy documentary record, and interviews with various former and current Town Attorneys and personnel, including Vincent Messina, Hon. Robert Quinlan, Robert Cimino, Alicia O'Connor, Mea Knapp, and John DiCioccio. *See* Graham Decl. ¶¶ 3, 18. It would present an undue burden to require the Town Defendants to wrangle every employee who has been involved in the decades-long dispute with Plaintiff, especially when Mr. Graham avers that he engaged in an extensive inquiry to garner the information required to assess the validity of the privilege assertions. Thus, the Court rejects Norton's contention that Mr. Graham cannot speak to the Town's procedures because he has only been in his position for two years, *see* Pltf.'s Motion at 1-2, in light of his sworn statement demonstrating his knowledge of not only the Town's general practices and policies with respect to securing documents, but also in regard to how the *Norton* litigation files have been maintained.

Turning to the substance of the declaration, Mr. Graham asserts that "multiple and repeated searches" establish that *all* of the logged documents were kept at the Town Attorney's office for the entire relevant period, aside from briefly being securely transferred to RCB's office to be logged in response to the March 9, 2017

Memorandum and Order. *See* Graham Decl. ¶¶ 6-8, 13.[6] Mr. Graham continues to describe the layout of the Town Attorney's office, states that no visitors are given access to the files without being accompanied by authorized personnel, and states that the door to the back office is locked if there is nobody present at the front desk. *See id.* ¶¶ 10, 20. Moreover, Graham specifies by name which town personnel had access to each of the Article 78, criminal prosecution, and *Norton I* files. *See id.* ¶¶ 14, 16, 17. In short, Mr. Graham has described in detail where the logged documents were stored and who had access to them.

Norton also argues that the Graham Declaration conflicts with prior representations and sworn testimony concerning the storage of the documents. *See* Pltf.'s Motion at 2. Again, the Court disagrees. Plaintiff first claims that Mr. Graham's assertion that the documents were always kept at the Town Attorney's office is belied by Huml's and Stabile's previous deposition testimony that the relevant criminal prosecution files were maintained by the Division of Law Enforcement ("DLE") in a separate building. *See* Pltf.'s Motion at 2. The testimony relied on by Norton, however, discusses the general practices of the DLE, and does not speak to the *Norton* files specifically, which Mr. Graham explicitly states were continuously stored in the Town Attorney's office. *See* Pltf.'s Motion, Exs. 4-5; *see also* Graham Decl. ¶ 6 ("All of the documents logged … were contained in, and only

---

[6] Insofar as Norton contends that documents were sent to Reisman Perez Reisman ("RPR"), a second law firm, in addition to RCB, undermining Mr. Graham's assertion that he has the requisite knowledge of how the files were maintained, *see* Pltf.'s Motion at 3, the Court is satisfied with the Town Defendants' representation that the RCB attorneys who represented the Town in *Norton I* were previously with RPR (such that the Graham Declaration refers collectively to the two firms as RCB), thus explaining the discrepancy.

in, the secure files of the Town Attorney's Office"). Moreover, Mr. Graham states that in 1996-97 (Norton's criminal prosecution was pending from 1997-2003), the DLE moved to the same location as the Town Attorney, and that even before the move, prosecutors were stationed in the same building. *See* Graham Supp. Decl. ¶ 3.

Norton next claims that Mr. Graham's assertions with respect to who had access to the logged documents conflicts with prior representations made at oral argument before Judge Chen on March 3, 2016. *See* Pltf.'s Motion at 2; Exhibit 7 (the "Hearing Transcript"). This argument is similarly misplaced. The discussion before Judge Chen concerned the Building Department's files (in addition to the three documents, for which privilege was preciously deemed waived, that have already been produced pursuant to the March 3, 2016 Electronic Order), and the fact that a broad array of building department officials had access thereto. *See* Hearing Transcript. The Hearing Transcript does not discuss the logged documents addressed in the Graham Declaration (*i.e.*, the Town Attorney's litigation files on Norton's Article 78 proceeding, his criminal prosecution, or the *Norton I* documents), for which Mr. Graham describes the secure method in which they are stored as well as who had access to them.

The Court further rejects Norton's argument that Mr. Graham fails to account for the storage of his criminal prosecution files from 2003-2013, as he explicitly states that *all* of the logged documents were securely maintained in the Town Attorney's office. *See* Graham Decl. ¶ 6; *see also* Graham Supp. Decl. ¶ 2 ("To be clear, after the criminal prosecution was completed in 2003 [the documents] were kept in the Town Attorney's Office"). To the extent Norton argues that Mr. Graham "fails to confront

the Town's subject matter waiver," Pltf.'s Motion at 3, that issue is unrelated to the complained-of Graham Declaration, and the Court declines to rehash the waiver issues addressed in its October 16, 2018 Amended Memorandum and Order. *See* 10/16/18 Mem. and Order at 16 (Concluding that despite the logs' failure to provide sufficient detail regarding access to the subject documents, they "otherwise satisfy the March 9, 2017 Order and waiver based on the assertion of a good faith defense or various purported deficiencies within the logs is inappropriate").[7]  Accordingly, the Court concludes that Mr. Graham's declarations, which are based upon a detailed investigation into the preservation of the litany of files concerning Norton's various proceedings, sufficiently satisfy this Court's directives set forth in the October 16, 2018 Amended Memorandum and Order.

ii.    The County's Supplemental Responses

Turning next to Norton's assertion that the County's Supplemental Responses remain deficient, the Court concludes that the County has answered the interrogatories to the best of its ability and produced all of the responsive documents in its possession, custody, or control.  Plaintiff essentially appears to be seeking documents and information concerning the *County's* participation in the *Town's* criminal prosecution of Norton – to which the County repeatedly represents it had effectively no involvement.  To that end, the Court is satisfied that the County has

---

[7] To that end, the Court notes that it is in receipt of Plaintiff's July 25, 2019 letter, DE [290], asserting that a recent decision from the Southern District of New York should guide the Court's decision herein. *See In re Keurig Green Mountain Single Serve Coffee Antitrust Litig.*, No. 14-md-2542, 2019 WL 2724269 (S.D.N.Y. July 1, 2019).  In *In re Keurig*, the court held that the defendants' assertion of a good faith defense rendered their communication with counsel waived. *See id.* at *4.  Here, the Court has already explicitly declined to find a waiver on this ground.  *See* 10/16/18 Mem. and Order at 16. Accordingly, Plaintiff's reliance on *In re Keurig* is misplaced.

provided Plaintiff with the extent of its discoverable information, save one set of documents identified below.

### a.    *Interrogatories*

With respect to Interrogatory 7, relating to the County's system for processing Complaints concerning State Court criminal prosecutions by Suffolk County towns and villages, the County responded that "complaints" may be made to the District Attorney's Office, at which point they are evaluated and sent to the appropriate bureau. *See* County's Supplemental Interrogatory Responses. Plaintiff now argues that this response fails to adequately describe the entire process. *See* Pltf.'s Motion at 4. If Norton wanted to further understand the details of the County's procedures in this regard, he should have inquired during the 30(b)(6) deposition, as the Court agrees with the County that such minutia is difficult to relay through an interrogatory response.

As for Interrogatory 14, inquiring whether the County has knowledge of the process for the review of accusatory instruments issued by the Town, the response indicating that the District Attorney's office is aware that such a process exists, but that the County relies on the Town's attorneys for their expertise concerning local codes and ordinances, is adequate. *See* County's Supplemental Interrogatory Responses. Plaintiff contends that the response is deficient because it names no individuals and fails to identify any documents. *See* Pltf.'s Motion at 4. In light of the County's representation that the *Town* handles the accusatory instruments at issue, however, it is logical that the County is unaware of any persons or documents that might be identified in this regard.

With respect to Interrogatory 15, asking for details of what actions the County took with respect to Norton's criminal prosecution, the County states that "the District Attorney's Office did not directly supervise matters filed and prosecuted by the Town Attorney's Office, including the prosecution of the plaintiff." *See* County's Supplemental Interrogatory Responses. Norton argues that this response does not answer the question posed. *See* Pltf.'s Motion at 4. The County's answer is sufficient. The response effectively states that the County took *no actions* concerning Plaintiff's criminal prosecution, as such matters are within the Town's purview. Similarly, the County's response to Interrogatory 16 – inquiring as to the type of certificate of occupancy compliance records that the Town uses to commence and continue criminal court proceedings, and the process the Town uses in obtaining such records – sufficiently establishes that the Town alone could provide details in this regard. To the extent Plaintiff had further questions concerning the County's past practice (discontinued as of 2006) of occasionally designating municipal attorneys as Special Assistant District Attorneys, *see* County's Supplemental Interrogatory Responses, that inquiry also should have been pressed at the 30(b)(6) depositions.

As for Interrogatory 22, asking for a description of manuals and other training materials by which the District Attorney's office receives and records complaints regarding private property, the Court initially agrees with the County that this request is largely indecipherable as it appears to ask whether "complaints are recorded through a manual." In any event, the County's reference to its supplemental response to Interrogatory 7, indicating that complaints received by the District Attorney are sent to the appropriate bureau, *see* County's Supplemental

Interrogatory Responses, should have provided Norton with a foundation for which he could have expanded his inquiry during the 30(b)(6) depositions.[8]

Finally, the Court rejects Plaintiff's argument that the County has failed to verify its interrogatory responses. *See* Pltf.'s Motion at 5. Attached to Norton's own Motion are the County's verifications of both its original responses and its supplemental responses to the interrogatories at issue. *See* DE [285-10]. Accordingly, based on a review of the relevant demands, the Court concludes that the County has adequately answered Plaintiff's interrogatories, and at the very least provided sufficient guidance for inquiries that should have been further addressed through depositions. *See Trueman*, 2010 WL 681341, at *2.

### b. Documents

Turning to the outstanding document requests, the Court accepts the County's representation that it has produced all relevant documents in its possession or control. With respect to Requests 3, 4, and 24 – ultimately seeking "all Town, Town Code § 68-40 prosecution/court related documents" – the County has unequivocally stated that it "is not in possession of the requested documents." *See* County's Supplemental Document Responses. Further, the County claims that these documents are not under its control and posits that Plaintiff should seek these documents from the Town considering it is the party who might possess them. *See* DE [287] (the "County's Opp.") at 4. Norton argues that he "should not be required to go to the Town for documents that he has been requesting from the County for

---

[8] In addition, the lack of a definition for "Complaint" in this context renders the inquiry vague.

years." *See* Pltf.'s Motion at 5. This contention misses the mark. Initially, the Court notes that Plaintiff does not dispute the County's assertion that the "documents sought, if they exist[], are … public records." *See* County's Supplemental Document Responses. Thus, coupled with the County's representation that it does not possess or control the documents, Norton can just as easily obtain the documents on his own absent production by the County. *See Krause v. Buffalo & Erie Cty. Workforce Dev. Consortium, Inc.*, 426 F. Supp. 2d 68, 90 (W.D.N.Y. 2005), *aff'd,* 425 F. Supp. 2d 352 (W.D.N.Y. 2006) ("[it] is well-established that discovery need not be required of documents of public record which are equally accessible to all parties") (quoting *Securities and Exchange Commission v. Samuel H. Sloan & Co.,* 369 F. Supp. 994, 995 (S.D.N.Y. 1973)). Moreover, Plaintiff provides no explanation for why he insists on procuring these documents from the County instead of the Town, which is also a party to this action. Accordingly, in light of the County's representations that it neither possesses nor controls the requested documents, and because the documents are purportedly a matter of public record, the Court concludes that the County has met its burden.

As to Document Requests 39 and 40 – seeking "criminal action-related documents" including manuals, Policies, memorandum [sic], guidance material, etc. for County or Town personnel and supervisors – the County states that no District Attorney "personnel were involved in the prosecution of the plaintiff, and no training materials or manuals were ever provided to the Islip Town Attorney's Office at any time." *See* County's Supplemental Document Responses. Norton asserts that even if the foregoing response is true, that his request is not concerned with what was

*provided* to the Town, but rather what *existed* and, thus, was potentially not shared with the Town when it should have been. *See* Pltf.'s Motion at 5. Although the County disputes the relevance of these materials, it does not object to producing the District Attorney's Office Operations and Procedures Manual (the "Manuals") for the years 1997 through 2003, should they exist. *See* the County's Opp. The County's Supplemental Document Responses, which are dated December 14, 2018, indicate that the District Attorney's office was searching for such Manuals, but it appears that nothing has been produced to date. Thus, the Court directs the County to produce the Manuals on or before **September 20, 2019** or represent in writing by that date that no such documents exist.[9]

Accordingly, Plaintiff's Motion seeking to compel compliance with the Court's October 16, 2018 Memorandum and Order is denied in all respects, save the production of the Manuals by the County as set forth above.

### B.    The Town Defendants' Motion

Turning to the Town Defendants' arguments concerning purported inadequacies with Plaintiff's Log, the Court concludes that although there is no evidence to support a finding that Norton – under the supervision of Mr. Messina – failed to include any privileged but otherwise responsive documents in his log, the Town Defendants shall be permitted to reopen Norton's deposition for up to two

---

[9] Norton argues that limiting the request from 1997-2003 is insufficient because he has a pending declaratory judgment claim that involves continuing violations. *See* Pltf.'s Motion at 5. The County correctly asserts, however, that the Amended Complaint only seeks declaratory relief with respect to past conduct, and requests no prospective relief in this regard. *See* County's Opp. at 4-5; Amended Complaint, DE [5], Sixth Cause of Action, ¶¶ 172 -174. Accordingly, producing the Manuals, should they exist, for the period of 1997-2003, will suffice.

hours, but only to inquire about the 65,000 pages of documents at issue – both logged and unlogged.[10] The Town Defendants contend that it "strains credulity" that Plaintiff's review of these files resulted in no further production and only six responsive documents being logged. *See* Town Defs.' Motion at 4-5. The Town Defendants find it particularly troubling that no letters between Norton and his counsel were produced or logged, when they would certainly be covered by the various document requests. *See id.* at 5. In response, Plaintiff reiterates that Mr. Messina certified that he oversaw the lengthy search for responsive documents and vetted the collection and production process. *See* Plft.'s Opp. at 1-2; *see also* DE [286-1] at 22 (Mr. Messina's certification accompanying Plaintiff's Log). Norton further asserts that the documents consisted largely of "pleadings, appeal filings, copies of printed cases, Bates-stamped documents already produced, and irrelevant documents related to *Norton III*." *See* Plft.'s Opp. at 2. Finally, Plaintiff affirms that the "review produced no letters … during the period relevant to the privilege log." *Id.*

Here, although the Court is sympathetic to the Town Defendants' doubts that a review of 65,000 pages of documents could result in no responsive documents being produced, with only six being logged as privileged, such concerns are speculative. Indeed, the Town Defendants present no evidence substantiating their belief that additional responsive documents have been withheld. As a result, the Court concludes that it is inappropriate to compel Plaintiff to produce documents that his

---

[10] Because the Town Defendants do not seek a privilege waiver with respect to documents shown to Norton's brothers, the Court need not address whether the common interest doctrine is applicable herein. *See* Town Defs.' Motion at 5 ("the Town Defendants … respectfully request a less drastic remedy [than a ruling that privilege has been waiver for documents shown to Plaintiff's brothers]").

counsel certifies do not exist. *See Alvarado v. GC Dealer Servs. Inc.*, No. 18-cv-2915, 2018 WL 6322188, at *2 (E.D.N.Y. Dec. 3, 2018) (denying motion to compel because, *inter alia* "Plaintiff has repeatedly stated … that the Requested Documents do not exist"); *Carling v. Peters*, No. 10-cv-4573, 2011 WL 3678839, at *4 (S.D.N.Y. Aug. 19, 2011) ("Other than speculation … [the defendant] offers no evidence that [the plaintiff] possesses [the requested] documents"); *Madden v. Abate*, No. 09-cv-145, 2010 WL 11610365, at *2 (D. Vt. Dec. 22, 2010) (denying motion to compel because the plaintiff "insofar as she represents that she has already produced all responsive documents, should be taken at her word"); *Moll v. Telesector Res. Grp., Inc.*, No. 04-cv-805S, 2010 WL 4642931, at *3 (W.D.N.Y. Nov. 17, 2010), *vacated in part*, 760 F.3d 198 (2d Cir. 2014) (denying the plaintiff's motion to compel despite the argument that "there must have been" responsive documents, relying on the defendant's representation that a reasonable search found no responsive documents).

Notwithstanding the foregoing, the Court concludes that an additional deposition of Norton is appropriate. "Pursuant to Rule 30(a)(2)(A)(ii), leave of Court is required to conduct a deposition when 'the deponent has already been deposed in the case ….'" *Ganci v. U.S. Limousine Serv., Ltd.*, No. 10-cv-3027, 2011 WL 4407461, at *2 (E.D.N.Y. Sept. 21, 2011). To that end, "[c]ourts will typically reopen a deposition where there is new information on which a witness should be questioned…. Where the deposition is reopened because of newly discovered information, the questioning of the witness is limited to those questions relating to the newly produced information." *Id.* (internal citations omitted). Here, in light of the extensive volume of purportedly unresponsive documents consisting of 65,000

pages reviewed by Norton and his counsel, and because some of the items logged were shown to Plaintiff's brothers – purportedly due to their need to protect their interest in the subject property – the Court will permit the Town Defendants to depose Plaintiff for up to two additional hours, but solely to question him on the contents and handling of the 65,000 pages reviewed and six documents logged. This deposition must occur on or before **October 4, 2019**.

## IV.      Conclusion

For the reasons set forth above, Norton's and the Town Defendants' motions are granted in part and denied in part. Specifically, Plaintiff's Motion is denied in all respects aside from the directive that the County produce the Manuals, or state in writing that they do not exist, on or before **September 20, 2019**. The Town Defendants' Motion is granted insofar as they are permitted to reopen Plaintiff's deposition for up to two hours, solely to question him on the contents and handling of the 65,000 pages of documents reviewed and the six items logged. This deposition must occur on or before **October 4, 2019**. Finally, a status conference is set for **October 10, 2019 at 10:30 a.m.** in courtroom 820 of the Central Islip courthouse, at which point the Court intends to either: (i) set a briefing schedule for summary judgment motions; or (ii) direct the parties to file a joint pretrial order in anticipation of trial.

Dated:      Central Islip, New York
            September 4, 2019          /s/ Steven I. Locke
                                       STEVEN I. LOCKE
                                       United States Magistrate Judge