UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
HOWARD NORTON,

                          Plaintiff,

            - against -

TOWN OF ISLIP, COUNTY OF SUFFOLK,
JOANNE HUML, *individually and in her*
*official capacity as a Town of Islip Assistant*
*Town Attorney and Director of the Division of*
*Law Enforcement of the Town of Islip Office of*
*the Town Attorney*, and RONALD P.
STABILE, JR., *individually and in his official*
*capacity as Investigator for the Town of Islip*
*Office of the Town Attorney*,

                          Defendants.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
04-CV-3079 (PKC) (SIL)

PAMELA K. CHEN, United States District Judge:

        In 1990, Plaintiff Howard Norton's right to maintain a two-family home in an area zoned

for single-family use was revoked without notice or an opportunity to be heard.  In 1997, Plaintiff

was prosecuted for violating the single-family zoning law.  In a 2003 decision in a prior case in

this District, the Honorable Nicholas G. Garaufis, U.S.D.J., found that Plaintiff's due process rights

were violated when the legal non-conforming use status for his property was revoked in 1990.

Plaintiff then commenced this case in 2004, alleging that Investigator Ronald P. Stabile and

Assistant Town Attorney Joanne Huml (collectively, the "Individual Defendants") maliciously

prosecuted Norton for the non-conforming use, and that the Town of Islip (the "Town") and the

County of Suffolk (the "County") (collectively, the "Municipal Defendants") are liable for the

malicious prosecution of Norton by the Individual Defendants.[1]  Before the Court are the

_____

[1] Plaintiff originally brought numerous other claims, all of which have been dismissed.

1

Individual Defendants' and Municipal Defendants' motions for summary judgment, as well as a motion by Plaintiff for spoliation sanctions.

Lack of probable cause is a necessary element of any malicious prosecution claim. In 2014, while this case was pending, the Supreme Court held that probable cause may be based on a reasonable mistake of law. *Heien v. North Carolina*, 574 U.S. 54, 62 (2014). Based on the numerous prior decisions in this case and the earlier, related due process case, there can be no question that the prosecution of Plaintiff was based on a reasonable mistake of law under *Heien*. Nothing revealed in discovery since the last decision in this case, nor any of the arguments made by Plaintiff in his motion for spoliations sanctions, changes that probable cause analysis. For those reasons—as explained in greater detail below—Defendants' motions for summary judgment are granted, the remainder of Plaintiff's claims are dismissed, Plaintiff's motion for spoliation sanctions is dismissed as moot, and the Clerk of Court is directed to enter judgment accordingly and close this case.

## BACKGROUND

This is not an ordinary summary judgment motion. Numerous factual and legal matters related to the present motions have been discussed in prior decisions in this case and in the prior due process case, both by Judge Garaufis and by the Second Circuit. The following decisions are relevant here:

- *Norton v. Town of Islip*, 239 F. Supp. 2d 264 (E.D.N.Y. 2003) ("*Norton I*").

- *Norton v. Town of Islip,* 77 F. App'x 56 (2d Cir. 2003) (summary order) ("*Norton II*").

- *Norton v. Town of Islip*, No. 04-CV-3079 (NGG) (WDW), 2009 WL 804702, at *1 (E.D.N.Y. Mar. 27, 2009) ("*Norton III*").

- *Norton v. Town of Islip*, 378 F. App'x 85 (2d Cir. 2010) (summary order) ("*Norton IV*").

- *Norton v. Town of Islip*, No. 04-CV-3079 (NGG) (WDW), 2011 WL 3918220, at *1 (E.D.N.Y. Sept. 2, 2011) ("*Norton V*").

- *Norton v. Town of Islip*, No. 04-CV-3079 (NGG) (WDW), 2012 WL 1622996, at *2 (E.D.N.Y. May 9, 2012) ("*Norton VI*").

- *Norton v. Town of Islip*, No. 04-CV-3079 (NGG) (WDW), 2013 WL 84896, at *1 (E.D.N.Y. Jan. 7, 2013) ("*Norton VII*").

As discussed in greater detail below, all of the above district court decisions were issued in the context of summary judgment, after extensive discovery.  The first Second Circuit decision, *Norton II*, affirmed Judge Garaufis's decision in the prior due process case, and the second Second Circuit decision, *Norton IV*, was issued on an interlocutory appeal in this case, reversing Judge Garaufis's denial of qualified immunity to certain defendants on certain claims.

The discovery that has taken place since the prior decisions in this case has not changed the material facts relied on in those prior decisions.  Consistent with the law of the case doctrine and the mandate rule—both of which are discussed below—the Court thus relies on those prior decisions in the following factual background.  The Court will discuss the parties' Local Rule 56.1 Statements, disputes over the record, and arguments that discovery since the prior decisions should change the finding of those prior decisions in the Discussion section.

## I.   Factual and Procedural History

In 1986, Plaintiff purchased a house at 725 Ferndale Boulevard in the Town of Islip. *Norton IV*, 378 F. App'x at 86.  The house was in an area zoned for single-family houses, but had been converted into a two-family home, and the Certificate of Occupancy ("C/O") certified that the house was a "legally nonconforming two-family dwelling."  *Id.*  Plaintiff relied on that certification when he purchased the home.  *Id.*

In 1988, Plaintiff applied for a rental permit with the Town.  *Id.*  The Town denied the permit on the ground that the house had lost its "legal nonconforming" status as a matter of law

when it had been left vacant for a year after being damaged by a fire in 1984. *Id.*; *Norton I*, 239 F. Supp. 2d at 270. The town relied on § 68-15 of the Town Code, which stated:

> Discontinuance of any non-conforming use for a period [of] one (1) year or more terminates such non-conforming use of a structure or premises, and thereafter said structure or premises shall not be used, except in conformity with provisions of this ordinance.

*Norton I*, 239 F. Supp. 2d at 267.

Plaintiff brought an Article 78 petition in New York Supreme Court to challenge the City's denial of the permit. *Norton IV*, 378 F. App'x at 86. In 1989, the Supreme Court denied the petition but did not actually determine whether the house still maintained valid legal nonconforming status. *Id.*; *see Norton I*, 239 F. Supp. 2d at 267.

On January 3, 1990, at Plaintiff's request, the Town issued a new version of the C/O, which continued to certify that the house had legal nonconforming use status. *Norton I*, 239 F. Supp. 2d at 267. Later in 1990, however, the Commissioner of the Town's Department of Building and Engineering made several notations on the department copy of the C/O. *Norton IV*, 378 F. App'x at 86; *Norton III*, 2009 WL 804702, at *2–3. The notations explained that the Article 78 proceeding had affirmed the Town's denial of the rental permit and asserted that the legal nonconforming use status had been lost due to non-use in excess of one year. *Norton IV*, 378 F. App'x at 86.

In or around early 1997, Defendant Huml furnished Defendant Stabile with the department copy of the C/O containing the Commissioner's notations, and asked him to investigate whether the property was being used as a two-family dwelling. *Id.* at 88; *Norton III*, 2009 WL 804702, at *2, 15. Defendant Stabile confirmed that the house was being used as a two-family dwelling. *Norton IV*, 378 F. App'x at 88; *Norton III*, 2009 WL 804702, at *15. Then, on March 20, 1997, the Town Attorney's Office brought a criminal action against Plaintiff, charging him with violating

§ 68-40 of the Town Code for allegedly using the house as a two-family dwelling in violation of the "last issued" C/O for the building. *Norton IV*, 378 F. App'x at 86; *Norton III*, 2009 WL 804702, at *2.   The last issued C/O relied on by the Town was the department copy containing the Commissioner's notations, which was unsigned and undated. *Norton IV*, 378 F. App'x at 87.   The same notations, however, appeared on subsequent signed and formally issued C/Os. *Id.*; *Norton I*, 239 F. Supp. 2d at 274 n.6.

While defending himself in the state criminal proceeding, Plaintiff filed the prior due process case in this Court. *Norton III*, 2009 WL 804702, at *3.   Despite the language of § 68-15 of the Town Code, Judge Garaufis found that non-use for more than one year did not revoke legal nonconforming use status as a matter of law. *Norton I*, 239 F. Supp. 2d at 270–71.   To reach that conclusion, Judge Garaufis contrasted the statute against another, somewhat related section of the Town Code, and also deployed the doctrine of constitutional avoidance. *Id.* at 270 ("[E]ven if the ordinance were somewhat ambiguous . . . , the court would be loath to interpret the Town Code as providing such an ephemeral property right, both because zoning restrictions affecting nonconforming uses are to be strictly construed in favor of the property owner, and because such an interpretation might render the Town Code unconstitutional" (internal citation omitted)).

Judge Garaufis also found that the Commissioner's notations on the department copy did not revoke the nonconforming use status, and that the revoking notations only carried legal effect after "they became part of a C/O that was signed and formally issued." *Id.* at 274 n.6.   Judge Garaufis found that the town had revoked Plaintiff's right to maintain the house as a two-family home when it formally issued a signed C/O containing the Commissioner's revoking notations, and that doing so violated Plaintiff's due process rights by not giving him notice and an opportunity to be heard. *Id.* at 270–74.

5

Judge Garaufis declared that the 1990 C/O without the Commissioner's notations was to be considered the "last filed" C/O. *Norton IV*, 378 F. App'x at 87. That decision was affirmed by the Second Circuit. *Norton II*, 77 F. App'x at 56–57. Because of Judge Garaufis's ruling, the last filed C/O explicitly granted Plaintiff the right to operate the house as a two-family unit. *Norton IV*, 378 F. App'x at 87. Accordingly, the Suffolk District Court dismissed the criminal charges against Plaintiff. *Id.* at 87.

Plaintiff then filed this case, alleging malicious prosecution. *Id.*

## II.   Procedural History[2]

In April 2008, the Individual Defendants moved for summary judgment on the ground that they were entitled to qualified immunity. *Norton III*, 2009 WL 804702, at *22–24. Judge Garaufis denied that motion. *Id.* Judge Garaufis found that Plaintiff had adequately alleged a malicious prosecution claim against Stabile. *Id.* at 21. The court found that there were triable issues of fact, at minimum, as to each element of a malicious prosecution claim, which are "(1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice." *Id.* (quoting *Kinzer v. Jackson,* 289 F.3d 188, 143 (2d Cir. 2003)).

With respect to probable cause, Judge Garaufis found that "[t]here was no probable cause for the proceeding because it was premised on an alleged violation of an invalid document"—the unsigned and undated 1990 C/O containing the Commissioner's revoking annotations. *Id.*

The surviving claim against Huml was premised on the allegations that Huml

---

[2] The Court recounts only the portions of the prior decisions relevant to this motion, and does not discuss all of the previously dismissed defendants and claims.

"furnished" Investigator Stabile with the File Copy C/O "with instructions that he investigate the Plaintiff's Premises in light of that document," despite her knowledge or reckless disregard of the fact that the File Copy C/O was invalid.  She then "condoned, encouraged and insisted that Defendant Stabile rely upon the invalid C/O, and make false statements" based on that invalid document; Investigator Stabile then signed the Accusatory Instrument and allegedly provided it to Huml for "further action."

*Id.* at *15 (internal record citations omitted).

On the issue of qualified immunity, Judge Garaufis held that

[t]here was no probable cause to support the Criminal Action.  The Individual Defendants put forth no testimony or other evidence to justify the reasonableness of any particular defendant's actions.  They offer only an erroneous legal argument that it was categorically "reasonable" to rely upon the C/O on file with the Building Department since 1990, and such reliance provided probable cause" when the prosecution was ultimately initiated in 1997.

*Id.* at *23.

Defendants filed an interlocutory appeal on the issue of qualified immunity and the Second

Circuit reversed in part and remanded.  *Norton IV*, 378 F. App'x at 86.  The Circuit panel noted

that

it is undisputed that the individual defendants [including Huml and Stabile] were confronted with two items of information at the time they chose to prosecute plaintiff.  First, the individual defendants had the Department Copy Certificate— the unsigned and undated certificate of occupancy marked "DEPT. COPY"—that contained notations explaining that the house's legal nonconforming use had been "lost."  Second, a Town investigator had visited the house to confirm that it was being used as a two-family dwelling.

*Id.* at 88 (internal citation omitted).

Based on that, the Circuit held:

We *have no trouble concluding* that it would have been "objectively reasonable" to believe, based on those two items of information, that there was probable cause to commence a criminal prosecution against plaintiff.  Although the notations on the Department Copy Certificate were, after several years of litigation in the District Court, eventually held to violate the Due Process Clause, it was *by no means clear* that those notations suffered from any constitutional defect at the time the individual plaintiffs commenced the criminal proceeding.  Therefore, although it would have been a mistake for the individual defendants to rely on those notations

as a basis for probable cause, it would, at the time, have been a "reasonable mistake."

Furthermore, even though the Department Copy Certificate was unsigned and undated, it is undisputed that the Department Copy Certificate was an "unofficial copy" of the certificate that would have "appeared exactly as the original appeared." Therefore, *the individual defendants would have had no reason to doubt* that the Department Copy Certificate was an accurate facsimile of the operative certificate of occupancy located in the Town's files.

It was, therefore, objectively reasonable for the individual defendants to believe (1) that the house's legal nonconforming use had been "lost," (2) that plaintiff was nonetheless using the house as a two-family dwelling, and thus (3) that there was probable cause to prosecute plaintiff for a violation of the Town Code.

. . .

Here, examining the undisputed facts about what "information" the individual defendants "possessed," it is clear, as a matter of law, that their decision to prosecute plaintiff was objectively reasonable.

*Id.* at 88–89 (emphases added) (internal citations and brackets omitted).

The Second Circuit thus granted qualified immunity to the Individual Defendants on the federal malicious prosecution claims. *Id.* at 89. The panel noted, however, that Judge Garaufis did not rule on whether the Individual Defendants had qualified immunity as to Plaintiff's state law malicious prosecution claims, and thus "intimate[d] no view on the issue." *Id.*

Finally, the Circuit panel briefly addressed the argument that, since all of the remaining claims against the Town "were premised on [P]laintiff's federal and state malicious prosecution claims," then if qualified immunity were granted to the Individual Defendants, the remaining claims against the Town should be dismissed. *Id.* at 90. The panel noted that this argument occupied only two paragraphs of the Individual Defendants' 61-page brief, and that, on an interlocutory appeal based on qualified immunity, the panel could address this argument only if it were "inextricably intertwined" with the question of qualified immunity. *Id.*

Accordingly, rather than risk a decision on an issue that is poorly briefed and that may exceed our jurisdiction, we remand the cause to the District Court to reassess

8

> the claims against the Town in light of our holding that the individual defendants
> are entitled to qualified immunity with respect to plaintiff's federal-law claims.

*Id.*

On remand, Judge Garaufis first found that the Individual Defendants were entitled to qualified immunity on Plaintiff's state-law malicious prosecution claims. *Norton V*, 2011 WL 3918220, at *3. Even in that posture, however, with all claims against the Individual Defendants dismissed based on qualified immunity, Judge Garaufis allowed the claims against the Municipal Defendants to proceed. *Id.* at 4–5. The Municipal Defendants argued that "the Circuit [had] held that probable cause[] existed to prosecute Plaintiff," and that, if there were probable cause to prosecute Plaintiff, there was no malicious prosecution, and thus there could be no municipal liability for malicious prosecution. *Norton VI*, 2012 WL 1622996, at *2. Judge Garaufis, however, noted that the Circuit had only found "*arguable* probable cause," and also "explicitly stated that 'it would have been a mistake for the individual defendants to rely on those notations as a basis for probable cause.'" *Id.* (quoting *Norton IV*, 378 Fed. App'x at 89). Judge Garaufis thus concluded that there was "no logical inconsistency" with the finding that the Individual Defendants were entitled to qualified immunity, but that a constitutional violation had, in fact, occurred, for which the Municipal Defendants could be held liable—*if* Plaintiff could establish municipal liability under governing law. *Id.*

On a first motion for reconsideration, however, Judge Garaufis dismissed the state law claims against the Town, holding that, under state law, if summary judgment is granted to all individual defendants—even based on qualified immunity—then all claims against municipalities must be dismissed, as well. *Norton VII*, 2013 WL 84896, at *7 (discussing *Norton VI*, 2012 WL 1622996, at *1 n.1).

Then, on a second motion for reconsideration, Judge Garaufis revived the state law malicious prosecution claims against the Individual Defendants, and thus reinstated the state law claims against the Town. *Id.* Judge Garaufis noted that he had granted the Individual Defendants qualified immunity on an incorrect standard—the federal, rather than New York standard. *Id.* at *5. Under the federal standard, a defendant can be granted qualified immunity by demonstrating only that there is no material issue of fact as to arguable probable cause, but under the New York standard, a defendant can be granted qualified immunity only by demonstrating that there is no material issue of fact as to arguable probable cause *and* bad faith or malice.[3] *Id.* Rather than determine whether "no reasonable jury could find that their investigative conduct was in bad faith," the court granted the Individual Defendants and the Town "leave to file a renewed motion for summary judgment addressing solely whether there is an issue of fact as to the good faith of the [Individual] Defendants' conduct." *Id.* *7.[4]

Shortly after that ruling, this case was reassigned to the undersigned. (04/18/2013 Docket Order.) This Court gave Defendants the option of filing another summary judgment motion either before or after additional discovery. (*See* April 23, 2020 Transcript ("Tr."), Dkt. 315, at 8:17–9:10 (discussing May 15, 2013 hearing).) Defendants opted to wait until additional discovery was

---

[3] This is not to be confused with the fact that under both federal and New York law, the probable cause inquiry is based exclusively on objective reasonableness, not the subjective bad faith or malice of the state actor, as discussed below.

[4] *Norton VII* also purported to allow a malicious prosecution claim to proceed against a third individual defendant, Richard C. Sherman. *Norton VII*, 2013 WL 84896, at *1. That appears to have been an error, however, because Judge Garaufis held that Sherman was immune from state law malicious prosecution claims in *Norton III*. 2009 WL 804702, at *17. Based on that history, this Court confirmed, in a May 15, 2013 Docket Order, that those claims were dismissed. (05/15/2013 Minute Entry ("Sherman is entitled to absolute immunity from the State malicious prosecution claim, consistent with Judge Nicholas G. Garaufis's finding in his Memorandum & Order dated 3/27/09.").) Later, the parties also stipulated to dismissal of the remaining declaratory judgment claims. (*See* Dkt. 206; 12/16/2014 Docket Order.)

taken.  Seven years of contentious discovery ensued, largely—for some reason—based on the deposition of non-party Richard C. Sherman, and frequently resulting in the parties bringing their disputes before the magistrate judge, moving to compel, moving for sanctions, appealing decisions by the magistrate judge, and orally arguing their motions before this Court.  (*See, e.g.*, 07/09/2013 Docket Order; 07/10/2023 Docket Order; Dkts. 181, 186, 188; 07/11/2014 Docket Order; Dkts. 191, 194, 196, 199, 202, 208, 212, 216, 221, 222, 227, 229, 231, 237; 03/03/2016 Docket Order; Dkts. 239, 244, 251, 253, 256, 257, 259, 261, 267, 268, 270, 271, 276, 279, 282, 284, 285–88, 292–94; 09/23/2019 Docket Order; 10/30/2019 Docket Order.)

At the end of all of that, starting in January 2020, Defendants filed requests for a pre-motion conference on a contemplated motion for summary judgment, primarily arguing that the Second Circuit's 2003 decision, coupled with the Supreme Court's subsequent decision in *Heien*, establish that the Individual Defendants had probable cause to prosecute Plaintiff as a matter of law, and thus all of Plaintiff's remaining claims must be dismissed.  (*See* Dkt. 299 at 2.)  The Court held a conference on the contemplated motions on April 23, 2020.  (Tr., Dkt. 315.)  At the conference, Plaintiff's counsel maintained that extensive Local Rule 56.1 statements were not necessary, because the Court would largely just be assessing whether *Heien* had changed the law with respect to the prior decisions issued in this case.  (*Id.* at 20:12–21:4.)  Plaintiff's counsel conceded that if the Court determined that the Individual Defendants had probable cause to prosecute Plaintiff, all of Plaintiff's remaining claims would necessarily need to be dismissed.  (*Id.* at 29:11–30:5.)  The Court, however, permitted the parties to set forth all of the facts they deemed relevant through Local Rule 56.1 statements.  (*Id.* at 30:6–24.)  The Court and the parties also discussed Plaintiff's proposition to make a related motion for spoliation sanctions.  (*Id.* at 82:7–87:10.)

11

The Court permitted the parties to file their motions, "remind[ing] the parties that they should only present new arguments that were not previously decided by [Judge Garaufis] on a full record or that stem from intervening case law." (04/23/2020 Minute Entry.) The parties' motions—Defendants' motions seeking summary judgment and Plaintiff's motion seeking spoliation sanctions—are now fully briefed.

## SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is appropriate where the submissions of the parties, taken together, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (The summary judgment inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 13 F.4th 247, 259 (2d Cir. 2021) (quoting *Anderson*, 477 U.S. at 248). "To present a 'genuine' issue of material fact sufficient to defeat a motion for summary judgment, the record must contain contradictory evidence 'such that a reasonable jury could return a verdict for the nonmoving party.'" *Horror Inc. v. Miller*, 15 F.4th 232, 241 (2d Cir. 2021) (quoting *Anderson*, 477 U.S. at 248).

"The moving party bears the burden to demonstrate the absence of any genuine issues of material fact . . . ." *New York v. Mountain Tobacco Co.*, 942 F.3d 536, 541 (2d Cir. 2019). Once this burden is met, the burden shifts to the nonmoving party to proffer some evidence establishing the existence of a question of material fact that must be resolved at trial. *See Spinelli v. City of New York*, 579 F.3d 160, 166–67 (2d Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A mere "scintilla of evidence" in support of the nonmoving party is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Marvel*

12

*Characters, Inc. v. Kirby*, 726 F.3d 119, 143 (2d Cir. 2013) (quoting *Anderson*, 477 U.S. at 252). That is, "[t]he nonmoving party must come forward with specific facts showing that there is a *genuine issue* for trial." *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

"[A]t the summary judgment stage, the district court is not permitted to make credibility determinations or weigh the evidence . . . ." *Kee v. City of New York*, 12 F.4th 150, 166 (2d Cir. 2021). It must "consider the record in the light most favorable to the non-movant" and "resolve all ambiguities and draw all factual inferences in favor of the non-movant 'if there is a "genuine" dispute as to those facts.'" *Loreley*, 13 F.4th at 259 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). "[T]he district court may not properly consider the record in piecemeal fashion; rather, it must 'review all of the evidence in the record.'" *S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021) (quoting *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000)).

## DISCUSSION

After a thorough review of the extensive record in this case, it is clear that the remaining claims must be dismissed as a matter of law based on prior findings by the Second Circuit and the Supreme Court's decision in *Heien v. North Carolina*. Under the Second Circuit's prior decision in this case, *Norton IV*, and the Supreme Court's decision in *Heien*, the Individual Defendants had probable cause to prosecute Plaintiff, and thus Plaintiff's malicious prosecution claims fail as a matter of law. None of the discovery that has occurred since the Second Circuit's 2010 decision, or Plaintiff's spoliation arguments, change that conclusion. Because this decision rests on the Second Circuit's prior decision in this case and on *Heien*, the Court will review the law of the case doctrine, the related mandate rule, and the Supreme Court's 2014 decision in *Heien*, then apply them to this case. Finally, the Court will discuss Plaintiff's motion for spoliation sanctions.

## I.     Law of the Case Doctrine and Mandate Rule

The law of the case doctrine and the mandate rule are two distinct but interrelated doctrines. *In re Coudert Bros. LLP*, 809 F.3d 94, 101 (2d Cir. 2015).  The law of the case doctrine dictates how courts must apply prior decisions in a case issued by courts of the same level (*e.g.*, how a district court must apply prior decisions issued by a district court in the case), while the mandate rule dictates how courts must apply prior decisions in a case issued by higher courts (*e.g.*, how a district court must apply prior decisions issued by a circuit court in the case).  *United States v. Carr*, 557 F.3d 93, 102 (2d Cir. 2009).

"The law of the case doctrine forecloses reconsideration of issues that were decided—or that could have been decided—during prior proceedings."  *Choi v. Tower Rsch. Cap. LLC*, 2 F.4th 10, 21 (2d Cir. 2021) (internal quotation marks omitted).  "It applies both to that which is expressly decided as well as to everything decided by necessary implication."  *Id.* (internal quotation marks omitted).  "While the doctrine does not rigidly bind [a court to its] former decisions, [courts should] generally adhere to prior decisions in subsequent stages of the same case unless cogent and compelling reasons militate otherwise."  *Id.* (internal quotation marks, alterations, and citations omitted).  "Cogent and compelling reasons justifying a departure from the law of the case may include an intervening change in law, availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Id.* (internal quotation marks omitted).

The mandate rule, on the other hand, "requires district courts to comply with [a higher court's] holdings regarding that case."  *United States v. Sawyer*, 907 F.3d 121, 125 (2d Cir. 2018).  "The mandate rule prevents re-litigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate."  *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010).  "A mandate, therefore, may expressly dispose of certain issues raised on appeal, or if the disposition of an issue

14

is 'necessarily implied' by [a higher court's] decision, a mandate may also foreclose such an issue from being considered by the lower court." *In re Coudert Bros. LLP*, 809 at 99.  Furthermore, when applying the mandate rule, "a district court should look to both the specific dictates of the remand order as well as the broader spirit of the mandate." *Yick Man Mui*, 614 F.3d at 53.

## II.   *Heien*

Since the prior decisions by both the Second Circuit and District Court in this case, there has been a significant change in the relevant law.  In *Heien v. North Carolina*, 574 U.S. 54, 62 (2014), the Supreme Court held that probable cause may be based on a reasonable mistake of law, just as it had always been understood that reasonable suspicion could be based on a reasonable mistake of fact.  In *Heien*, "an officer stopped a vehicle because one of its two brake lights was out, but a court later determined that a single working brake light was all the law required." *Id.* at 57 (discussing the state's "stop-lamp" ordinance).  The question presented was "whether such a mistake of law can nonetheless give rise to the reasonable suspicion[5] necessary to uphold the seizure under the Fourth Amendment." *Id.*  The Supreme Court held that it could, and that, "[b]ecause the officer's mistake about the brake-light law was reasonable, the stop in th[e] case was lawful under the Fourth Amendment." *Id.*

The Supreme Court noted that one of its prior decisions—*Michigan v. DeFillippo*, 443 U.S. 31 (1979)—had already rested on that holding, even though it did not articulate the rule.  *Heien*, 574 U.S. at 63.  In *DeFillippo*, the Court "addressed the validity of an arrest made under a criminal

---

[5] While Plaintiff does not argue otherwise, the Court notes that *Heien* applies equally to reasonable suspicion and probable cause.  *United States v. Diaz*, 122 F. Supp. 3d 165, 175 n.6 (S.D.N.Y. 2015), *aff'd*, 854 F.3d 197 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 981 (2018).  Indeed, the majority, concurrence, and dissent in *Heien* use the terms somewhat interchangeably throughout their opinions.  *See* 574 U.S. at 54.  In this Court's discussion of *Heien*, references to "probable cause" generally refer to the opinions using that specific term rather than "reasonable suspicion."

law later declared unconstitutional." *Id.* "Accepting the unconstitutionality of the ordinance as a given," the Court nevertheless found that the arresting officers had probable cause because, since "there was no controlling precedent [at the time of the arrest] that th[e] ordinance was or was not constitutional, . . . the conduct observed violated a presumptively valid ordinance." *Id.* at 64. "Acknowledging that the outcome might have been different had the ordinance been grossly and flagrantly unconstitutional, [the Court] concluded that under the circumstances there was abundant probable cause to satisfy the constitutional prerequisite for an arrest." *Id.* (internal quotation marks omitted).

> The officers were wrong in concluding that [Defendant] DeFillippo was guilty of a criminal offense when he declined to identify himself.  That a court only *later* declared the ordinance unconstitutional does not change the fact that DeFillippo's conduct was lawful when the officers observed it.  But the officers' assumption that the law was valid was reasonable, and their observations gave them "abundant probable cause" to arrest DeFillippo.  Although DeFillippo could not be prosecuted under the identification ordinance, the search that turned up the drugs was constitutional.

*Id.* (internal citations omitted).

Under the facts of *Heien*, the Court noted that the stop-lamp ordinance "had never been previously construed by North Carolina's appellate courts," and "[i]t was thus objectively reasonable for an officer in [the arresting officer's] position to think that Heien's faulty right brake light was a violation of North Carolina Law." *Id.* at 68.  The Court noted that the limiting principle to when a mistake of law can constitute probable cause is that the mistakes of law must be "*objectively* reasonable." *Id.* at 66; *see also id.* at 61 ("[T]he mistakes must be those of reasonable [people].").  The Supreme Court also observed, without further explanation, that "the inquiry is not as forgiving as the one employed in the distinct context of deciding whether an officer is entitled to qualified immunity for a constitutional or statutory violation." *Id.* at 67.

Helpfully, a concurrence by Justice Kagan, joined by Justice Ginsburg, elaborated on how the inquiry of whether a reasonable mistake of law constitutes probable cause is "more demanding" than the qualified immunity inquiry.  *Id.* at 69 (Kagan, J., concurring).  Justice Kagan explained that "[o]ur modern qualified immunity doctrine protects all but the plainly incompetent or those who knowingly violate the law."  *Id.*  By contrast, "the appropriate standard for deciding when a legal error can support a seizure" is to determine if reasonable minds could hold opposite opinions on the same legal question.  *Id.* at 69–70.  "If the statute is genuinely ambiguous, such that overturning the officer's judgment requires hard interpretive work, then the officer has made a reasonable mistake.  But if not, not."  *Id.* at 70.

## III.    Application

The question of whether the Individual Defendants had probable cause to prosecute Plaintiff in this case boils down to whether § 68-40 of the Town Code was "genuinely ambiguous, such that overturning the officer's judgment requires hard interpretive work."  *Id.* at 70 (Kagan, J., concurring).  There is no question that it was.  Furthermore, that question was firmly resolved by the spirit and necessary implications of the Second Circuit's decision in *Norton IV*.

In prosecuting Plaintiff for using the house as a two-family dwelling in violation of the "last issued" C/O for the building, the Individual Defendants relied on their understanding that non-use of a building for more than a year revoked nonconforming use status as a matter of law under § 68-15 of the Town Code, and that the unsigned and undated department copy of the C/O containing the Commissioner's revoking notations was the "last issued" C/O.  *Norton I*, 239 F. Supp. 2d at 267; *Norton III*, 2009 WL 804702, at *2, 15; *Norton IV*, 378 F. App'x at 86–87.

In *Norton I*, Judge Garaufis put in "hard interpretive work," *Heien*, 574 U.S. at 70 (Kagan, J., concurring), to determine that § 68-15 of the Town Code did not revoke non-conforming use status as a matter of law, comparing it to another, somewhat related statute, and deploying the

17

doctrine of constitutional avoidance.  239 F. Supp. 2d at 270  ("[E]ven if the ordinance were somewhat ambiguous in this regard, the court would be loath to interpret the Town Code as providing such an ephemeral property right, both because zoning restrictions affecting nonconforming uses are to be strictly construed in favor of the property owner, and because such an interpretation might render the Town Code unconstitutional" (internal citation omitted)).

By contrast, in *Norton IV*, the Second Circuit unequivocally found that it was objectively reasonable for the Individual Defendants to rely on the unsigned and undated department copy of the C/O and Stabile's observations of Plaintiff's property.  *Norton IV*, 378 F. App'x at 88.  As the Second Circuit put it, "[a]lthough the notations on the Department Copy Certificate were, after several years of litigation in the District Court, eventually held to violate the Due Process Clause, *it was by no means clear* that those notations suffered from any constitutional defect at the time the individual plaintiffs commenced the criminal proceeding." *Id.* (emphasis added).[6]

When the case returned to Judge Garaufis, he rejected Defendants' argument that all of the remaining claims had to be dismissed because the Second Circuit had found that the prosecution was supported by probable cause.  Judge Garaufis noted that the Second Circuit had held that "it would have been a mistake for the individual defendants to rely on those notations as a basis for

---

[6] The bulk of Defendants' last seven years of discovery, and a significant portion of their motion papers, appear to have been aimed at establishing that utilizing unsigned and undated department copy C/Os for similar prosecutions was the Town policy and that no one had ever questioned it.  Based on this Court's assessment of the record as whole, no reasonable jury could find otherwise.  *See Horror Inc.*, 15 F.4th at 241.  However, this point is ultimately irrelevant under *Heien*.  In *Heien*, the Supreme Court did not ask if the arresting officer was operating under a unique interpretation of the stop-lamp code or following department policy, only whether the interpretation relied on by the arresting officer was objectively reasonable.  *See Heien*, 574 U.S. at 63, 66.  Here too, the Second Circuit found that the Individual Defendants' prosecution of Plaintiff was "objectively reasonable" without asking if it was the Town's common practice or policy to prosecute based on unsigned and undated department copies of C/Os.  *See Norton IV*, 378 F. App'x at 88.

probable cause." *Norton VI*, 2012 WL 1622996, at *2 (quoting *Norton IV*, 378 Fed. App'x at 89).

While that is true, the Second Circuit also explicitly stated that that mistake "would have been a

reasonable mistake." *Norton IV*, 378 Fed. App'x at 89 (internal quotation marks omitted)

("[A]lthough it would have been a mistake for the individual defendants to rely on those notations

as a basis for probable cause, it would, at the time, have been a 'reasonable mistake.'").

This Court views the Individual Defendants' reliance on the hand notations on Plaintiff's

C/O as a reasonable mistake of law, namely, that the legal non-conforming use status for Plaintiff's

property had been properly revoked pursuant to § 68-15 of the Town Code.  It was not a mistake

of fact, which the Supreme Court had held could support probable cause long before *Heien*, 574

U.S. at 61.  Because both the Second Circuit's decision in *Norton IV* and Judge Garaufis's decision

in *Norton VI* came down before *Heien* was decided, neither Judge Garaufis nor the Circuit would

have had a basis to find that a reasonable mistake of law could support a finding of probable cause.

Indeed, prior to *Heien*, the Second Circuit had never held that a reasonable mistake of law could

support probable cause.  *Heien*, 574 U.S. at 74 (Sotomayor, J., dissenting) (observing that, before

*Heien*, the only circuit to hold that a reasonable mistake of law could support probable cause was

the Eighth Circuit).

In light of *Heien*, it is appropriate for this Court to revisit Judge Garaufis's finding in

*Norton VI* that the Individual Defendants did not have probable cause to prosecute Plaintiff

because of a mistake of law.  (*Norton VI*, 2012 WL 1622996, at *2); *see Choi*, 2 F.4th at 21 (district

court not bound by prior district court rulings where "[c]ogent and compelling reasons justify[] a

departure from the law of the case . . . includ[ing] an intervening change in law." (internal quotation

marks omitted)).  In *Heien*, the Supreme Court held that only "objectively reasonable" mistakes of

law support probable cause.  *Heien*, 574 U.S. at 66.  Thus, after *Heien*, the question that remains

is whether the Individual Defendants' mistake of law was "*objectively* reasonable." *Id.* If so, Plaintiff's prosecution was based on probable cause, and all of his remaining claims must be dismissed. That question, however, is clearly answered by the "spirit" and necessary implications of the Second Circuit's decision in *Norton IV*, also decided before *Heien*. *See In re Coudert Bros. LLP*, 809 F.3d at 99; *Yick Man Mui*, 614 F.3d at 53.

The Second Circuit panel that decided *Norton IV* stated that "[w]e have *no trouble* concluding that it would have been "objectively reasonable" to believe . . . that there was probable cause to commence a criminal prosecution against plaintiff," and that "it is clear, as a matter of law, that [the Individual Defendants'] decision to prosecute plaintiff was objectively reasonable." 378 F. App'x at 88–89 (emphasis added). *Norton IV* was clearly not a case where the Second Circuit was applying qualified immunity broadly to "protect[] all but the plainly incompetent or those who knowingly violate the law," but a case where the mistake of law was "*objectively* reasonable." *Norton IV*, 378 F. App'x at 88; *see Heien*, 574 U.S. at 69 (Kagan, J., concurring). Accordingly, given the objective reasonableness of the mistake of law by the Individual Defendants, the prosecution of Plaintiff was based on probable cause, and all of Plaintiff's remaining claims must be dismissed.[7] To find otherwise would contravene the mandate rule. *In re Coudert Bros. LLP*, 809 F.3d at 99; *Yick Man Mui*, 614 F.3d at 53.

---

[7] The existence of probable cause to prosecute defeats a malicious prosecution claim under both federal and New York law. *Kee*, 12 F.4th at 166. Without an underlying constitutional violation, the Municipal Defendants cannot be held liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). *Anilao v. Spota*, 27 F.4th 855, 874 (2d Cir. 2022). Likewise, without an underlying state law violation, the Municipal Defendants cannot be held liable under a theory of *respondeat superior*. *Karaduman v. Newsday*, Inc., 51 N.Y.2d 531, 546 (N.Y. 1980) ("[T]here can be no vicarious liability on the part of the employer if the employee himself is not liable . . . ."); *Nunez v. Vill. of Rockville Ctr.*, No. 18-CV-4249 (DRH) (SIL), 2022 WL 523753, at *7 (E.D.N.Y. Feb. 22, 2022) ("[T]here is no basis for a claim of municipal liability against Nassau County because Plaintiff has not alleged a viable malicious prosecution claim against its employee . . . ." (internal quotation marks and brackets omitted)).

Plaintiff makes several arguments to the contrary. (Memorandum of Law In Opposition to the Summary Judgment Motion of the Individual Defendants ("Pl. Opp."), Dkt. 324, at 31–38.) None are availing.

First, Plaintiff argues that *Heien* applies only to "close calls made under [s]udden [c]ircumstances." (*Id.* at 32–34.) Nothing in *Heien*, the concurrence, the dissent, or any subsequent decisions applying *Heien* identified by Plaintiff or this Court suggests any such limiting principle, and the Court sees no justification for reading one into *Heien*.

Second, Plaintiff argues that *Heien* does not apply to Plaintiff's state law malicious prosecution claims. (*Id.* at 34–35.) That is incorrect. The New York Court of Appeals has squarely held that New York law follows *Heien* for purposes of determining whether probable cause exists. *People v. Guthrie*, 25 N.Y.3d 130, 136–37 (2015). Plaintiff also argues that *Heien* is limited to traffic stops under New York law. (*Id.* at 34–35.) Like Plaintiff's argument about "close calls made under sudden circumstances," nothing in the *Guthrie* majority or dissent, or any subsequent cases identified by Plaintiff or this Court, suggests any such limiting principle, and this Court sees no principled reason for reading one into *Guthrie*.

Third, Plaintiff argues that the Second Circuit's decision in *Norton IV* is not applicable because it dealt with qualified immunity and not probable cause. (Pl. Opp., Dkt. 324, at 35–36.) As discussed above, while the Second Circuit's decision in *Norton IV* was, indeed, about qualified immunity, the spirit and necessary implications of *Norton IV* are that the Individual Defendants' prosecution of Plaintiff was based on an objectively reasonable mistake of law. Therefore, after *Heien*, the Second Circuit's decision in *Norton IV* is absolutely relevant to this Court's probable cause analysis.

Fourth, Plaintiff argues that the facts underlying the Second Circuit's decision in *Norton IV* have changed.  (*Id.* at 36–37.)  Specifically, Plaintiff asserts that the fact that Stabile "visited the house to confirm that it was being used as a two-family dwelling" is contradicted by Stabile's deposition testimony that he "'didn't care who was living there' and only charged Norton because 'the house was arranged and designed as a two-family.'" (*Id.* quoting T1081–82.[8])  Plaintiff wildly mischaracterizes Stabile's testimony.  In reality, Stabile confirmed the facts underlying the Second Circuit's holding—testifying that he visited the house and confirmed that it was being used as a two-family home.  (T1074–75.)  He saw that the left side had a full kitchen, electric stove, four bedrooms, and one bathroom, and the other side had a full kitchen, electric stove, two bedrooms, and two bathrooms.  (*Id.*)  A woman named Irma even let him into the right side.  (*Id.*)  Stabile's testimony is entirely consistent with the record that was before the Second Circuit in 2010, which included Stabile's notes stating that the home "contain[ed] two separate kitchens, baths, sleeping areas[,] and entrances."  (A-200.[9])  That Stabile also testified that, he "didn't care who was living there," is an irrelevant non-sequitur and does not contradict or undermine the relevant portions of Stabile's testimony, which were the same as the factual record relied on by the Second Circuit in *Norton IV*.  Accordingly, there is no reason to believe that Stabile's 2014 deposition would have changed the Second Circuit's holding that it was "objectively reasonable" to prosecute Plaintiff based on the department copy C/O and Stabile's observations when he visited the house to confirm that it was being used as a two-family dwelling.  *See Norton IV*, 378 F. App'x at 88.  Furthermore,

---

[8] "T." refers to a compilation of transcripts of depositions of Town officials submitted by the Town and relied on by all parties, available at Dkts. 323-7 to 323-8.  The pages cited in this section are pages from the July 1, 2014 Deposition of Ronald P. Stabile.

[9] "A" refers to the voluminous record that was before the Second Circuit in 2010, parts of which are available at Dkts. 323-3 to 323-6.

based on the complete record in this case, the Court finds that no reasonable jury could find otherwise. *See Horror Inc.*, 15 F.4th at 241.

Fifth, Plaintiff argues that "if *Heien* applies, the [b]ackgrounds of Stabile and Huml [s]hould [f]actor into the Court's [a]nalysis." (Pl. Opp., Dkt. 324, at 37–38.) That argument is plainly meritless. The probable cause analysis is objective, not subjective, under both federal and New York law. *Berg v. Kelly*, 897 F.3d 99, 110 (2d Cir. 2018); *People v. Edwards*, 14 N.Y.3d 741, 742, (N.Y. 2010).

## IV.    Plaintiff's Motion for Spoliation Sanctions

Plaintiff alleges that Defendants spoliated four documents, which the Court discusses below, and seeks adverse inferences as a sanction. (Memorandum of Law in Support of Plaintiff's Motion for Spoliation Sanctions ("Pl. Mem."), Dkt. 320-1.) The Court denies this motion because the requested adverse interferences will not defeat summary judgment in this case and because the motion is meritless.

An adverse inference alone cannot defeat a motion for summary judgment. *Kronisch v. United States*, 150 F.3d 112, 128 (2d Cir. 1998). Only in "borderline cases," and in combination with some "not insubstantial" evidence, may an adverse inference defeat summary judgment. *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 107 (2d Cir. 2001), *superseded in part on other grounds by* Fed. R. Civ. P. 37(e) (regarding electronic discovery). *Valenti v. Penn Mut. Life Ins. Co.*, 850 F. Supp. 2d 445, 454 (S.D.N.Y. 2012) ("[A]n adverse inference standing alone may not defeat a motion for summary judgment in the absence of some other, 'not insubstantial' evidence of a triable issue of fact."), *aff'd*, 511 F. App'x 57 (2d Cir. 2013) (summary order). As the late Honorable Jack B. Weinstein, U.S.D.J., explained in 2012:

> Like an inference based on disbelief of a witness, any adverse inference based on a party's failure to produce documents (or spoliation) does not alone satisfy a party's burden to produce facts necessary to defeat a motion for summary judgment. Some

> quota of evidence is needed to assign probative force to withheld documents. Only in borderline cases—and in combination with "not insubstantial evidence"—can an inference of spoliation alone "allow the plaintiff to survive summary judgment." In sum, an adverse inference, without more, cannot satisfy a non-moving party's burden on summary judgment "to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

*Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 542, 553 (E.D.N.Y. 2012) (internal citations omitted) (first quoting *Byrnie*, 243 F.3d at 107, then quoting *Celotex Corp.*, 477 U.S. at 323)).

Here, Plaintiff has utterly failed to produce any substantial evidence to contradict the fact that, in light of *Heien*, the Individual Defendants had probable cause to prosecute him. Accordingly, even if Plaintiff's spoliations sanctions motion were meritorious, it would have no impact on the Court's grant of summary judgment to Defendants. Plaintiff's motion for spoliation sanctions therefore is denied as moot. *Matteo v. Kohl's Dep't Stores, Inc.*, 533 F. App'x 1, 4 (2d Cir. 2013) (summary order) (affirming district court's grant of summary judgment and finding the district court's denial of a request for an adverse inference instruction moot); *Ferrara v. Transform KM LLC*, No. 20-CV-236 (MAD) (ML), 2021 WL 3188389, at *4 (N.D.N.Y. July 28, 2021) ("In light of the Court's decision granting Defendant's motion for summary judgment, Plaintiffs' cross-motion for sanctions is denied as moot."); *Frasco v. Mastic Beach Prop. Owners' Ass'n*, No. 12-CV-2756 (JFB) (WDW), 2014 WL 3735870, at *6 n.11 (E.D.N.Y. July 29, 2014) (dismissing plaintiff's sanctions motion as moot after granting defendants' summary judgment motion); *Gordon Partners v. Blumenthal*, No. 02-CV-7377 (LAK), 2007 WL 1518632, at *1 (S.D.N.Y. May 17, 2007) (same).

Nevertheless, the Court explains why Plaintiff's spoliation motion would be meritless, even if it were not moot. First, Plaintiff alleges that a Town Inspector named Creglin Olmeda destroyed notes of an inspection of the subject two-family house two years before Stabile's inspection. (*See* Pl. Mem., Dkt. 320-1, at 2–10.) This argument is based on a deposition of Olmeda

in which Olmeda stated that, in violation of Town policy, he took all of his inspection notes with him upon his retirement and destroyed them.  (*See id.*)  This is immaterial.  No matter what was in Olmeda's notes, they could not conceivably change the fact that Stabile's inspection—two years later—made prosecution of Plaintiff objectively reasonable, as found by the Second Circuit.  *See Norton IV*, 378 F. App'x at 88.

Second, Plaintiff argues that the original of the C/O containing the Commissioner's revoking notations was spoliated.  (Pl. Mem., Dkt. 320-1, at 10–15.[10])  This argument is nonsensical.  A copy of that C/O was in the record in the prior due process case and has been in the record of this case since its inception.  Indeed, Plaintiff's *victory* in the prior due process case was based on the copy of the C/O that he now contests—for that reason alone, Plaintiff's current argument is patently frivolous.  Nevertheless, Plaintiff now argues in his spoliation motion that the *back* of the C/O *may have* contained additional notations that would be helpful to Plaintiff at this juncture.  (*Id.* at 12 n.3.)  In addition to being inappropriate at this juncture, this argument is not supported by any "quota of evidence . . . needed to assign probative force to [the purportedly] withheld document[]." *Gill*, 893 F. Supp. 2d at 553.  Plaintiff's sheer speculation, raised years after the C/O was produced, clearly would not warrant a finding of spoliation.

Third, Plaintiff argues that the Town's copy of a letter sent to Plaintiff in 1995 about largely unrelated Town Code violations was spoliated.  (Pl. Mem., Dkt. 320-1, at 15–17.)  Plaintiff concedes that he still has his copy of this letter, but argues that "[a] a reasonable trier of facts could

---

[10] It is actually not clear from Plaintiff's motion what copy of the C/O he is referring to. Defendants' opposition, however, clarifies (Town Defendants' Joint Memorandum of Law in Opposition to Plaintiff's Spoliation Motion, Dkt. 321, at 13–15), and in reply, Plaintiff does not contest Defendants' clarification—or, for that matter, address any of Defendants' arguments about this document (Plaintiff's Reply Memorandum of Law in Support of Motion for Spoliation Sanctions, Dkt. 326).

conclude that the Town's unproduced copy of the letter contained notations that would reflect bad faith and/or animus toward Norton." (*Id.* at 16.) The Court again rejects Plaintiff's attempt to create an issue based on rank speculation. In any event, subjective bad faith and animus would be irrelevant to the probable cause analysis on which the Court's summary judgment decision rests. *See Berg*, 897 F.3d at 110; *Edwards*, 14 N.Y.3d at 742.

Fourth and finally, Plaintiff argues that the Town's copy of a 1995 Notice of Violation was spoliated. (Pl. Mem., Dkt. 320-1, at 17–19.) Again, Plaintiff concedes that he "received the Notice of Violation by mail, and subsequently produced it in discovery," but argues that handwritten notes on the Town copy "could evidence animus toward Norton." (*Id.* at 17.) Again, this is meaningless speculation, and all of Plaintiff's arguments about this document are irrelevant to the Court's finding of probable cause.

For the reasons explained above, Plaintiff's motion for spoliation is denied as moot. Because the Court has denied the motion based on mootness, rather than on the merits, the Court denies both parties' motions for attorneys' fees related to the motion.

## CONCLUSION

For the reasons explained above, Defendants' motions for summary judgment are granted; all of Plaintiff's remaining claims are dismissed; Plaintiff's motion for spoliation sanctions is dismissed as moot; and both parties' motions for attorneys' fees related to the spoliation motion are denied. The Clerk of Court is respectfully directed to enter judgment accordingly and close this case.

SO ORDERED.


*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated:  September 28, 2022
        Brooklyn, New York